**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| WILLIAM E. UNDERLAND, on behalf of himself and all other similarly situated persons,<br><br>Plaintiff,<br><br>v.<br><br>DENNIS ALTER, WILLIAM A. ROSOFF, PHILIP M. BROWNE, DAVID B. WEINSTOCK, ROBERT S. BLANK, MAX BOTEL, THOMAS COSTELLO, DANA BECKER DUNN, ROBERT LUBNER, OLAF OLAFSSON, MICHAEL STOLPER, and KPMG LLP,<br><br>Defendants. | Case No. 10-cv-3621 (CMR) |

**KPMG LLP'S MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**

Defendant KPMG LLP hereby moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), for an Order dismissing the Amended Class Action Complaint. In support of its Motion, KPMG incorporates herein the accompanying Memorandum of Law.

WHEREFORE, KPMG LLP respectfully requests that the Court dismiss the Amended Class Action Complaint and enter judgment in its favor.

Dated: February 28, 2011

*/s/ Edward D. Rogers*
Geoffrey A. Kahn, Esquire
Edward D. Rogers, Esquire
Ruth S. Uselton, Esquire
kahn@ballardspahr.com
rogerse@ballardspahr.com
useltonr@ballardspahr.com
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Phone: (215) 665-8500

Stanley J. Parzen, Esquire
James C. Schroeder
Justin A. McCarthy
sparzen@mayerbrown.com
jschroeder@mayerbrown.com
jmccarty@mayerbrown.com
MAYER BROWN LLP
71 S. Wacker Dr.
Chicago, IL 60606
Phone: (312) 701-7326
*Admitted Pro Hac Vice*

*Attorneys for Defendant KPMG LLP*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| WILLIAM E. UNDERLAND and MARK SCHALLER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>DENNIS ALTER, WILLIAM A. ROSOFF, PHILIP M. BROWNE, DAVID B. WEINSTOCK, ROBERT S. BLANK, MAX BOTEL, THOMAS COSTELLO, DANA BECKER DUNN, ROBERT LUBNER, OLAF OLAFSSON, MICHAEL STOLPER, and KPMG LLP,<br><br>Defendants. | Case No. 10-cv-3621 (CMR) |

**MEMORANDUM OF LAW IN SUPPORT OF**
**KPMG LLP'S MOTION TO DISMISS**

Geoffrey A. Kahn
Edward D. Rogers
Ruth S. Uselton
BALLARD SPAHR LLP
1735 Market St., 51st Floor
Philadelphia, PA 19103
215-665-8500

Stanley J. Parzen
James C. Schroeder
Justin A. McCarty
MAYER BROWN LLP
71 S. Wacker Dr.
Chicago, IL 60606
312-782-0600

*Attorneys for Defendant KMPG LLP*

February 28, 2011

## TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................ 1
FACTUAL BACKGROUND ........................................ 2
ARGUMENT ........................................ 5
I. KPMG Cannot Be Liable For Statements It Did Not Prepare Or Certify ........................................ 5
II. To State A Claim Against KPMG, The Complaint Must—But Does Not—Allege Subjective Falsity ........................................ 5
A. Statements Concerning Loss Reserves Are Opinions ........................................ 5
B. Subjective Falsity Allegations Are Required For Section 11 Claims Based On Statements Of Opinion ........................................ 8
1. Virginia Bankshares requires subjective falsity to establish a federal securities claim based on an opinion ........................................ 8
2. Virginia Bankshares' subjective falsity requirement applies to Section 11 claims based on opinions ........................................ 10
III. The Complaint Does Not State A Plausible Claim Against KPMG ........................................ 11
A. An Auditor Has No Duty To Warn Of Business Trends And Is Not Responsible For The Company's Business Decisions. ........................................ 12
B. The Claim Against KPMG Is Based On Hindsight ........................................ 12
C. The Complaint Does Not Allege A Violation Of Accounting Principles ........................................ 14
CONCLUSION ........................................ 15

# TABLE OF AUTHORITIES

**Page**

CASES

*Adams Golf Sec. Litig.*, *In re,*
176 F. Supp. 2d 216 (D. Del. 2001),
*aff'd in part and rev'd in part on other grounds*,
381 F.3d 267 (3d Cir. 2004).....13

*AOL Time Warner, Inc. Sec. Litig.*, *In re,*
381 F. Supp. 2d 192 (S.D.N.Y. 2004).....10

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009).....12, 15

*Barclays Bank Sec. Litig.*, *In re,*
2011 WL 31548 (S.D.N.Y. Jan. 5, 2011).....10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).....11, 12, 15

*Belmont Holdings v. SunTrust Banks*,
2010 WL 3545389 (N.D. Ga. Sept. 10, 2010).....6, 10, 15

*Bily v. Arthur Young & Co.*,
834 P.2d 745 (Cal. 1992).....7

*Bond Opportunity Fund v. Unilab Corp.*,
2003 WL 21058251 (S.D.N.Y. May 9, 2003),
*aff'd*, 87 F. App'x 772 (2d Cir. 2004).....11

*Christidis v. First Pa. Mortg. Trust*,
717 F.2d 96 (3d Cir. 1983).....6

*Ciresi v. Citicorp*,
782 F. Supp. 819 (S.D.N.Y. 1991),
*aff'd*, 956 F.2d 1161 (2d Cir. 1992).....11

*CIT Group Sec. Litig.*, *In re,*
349 F. Supp. 2d 685 (S.D.N.Y. 2004).....14

*CITX Corp.*, *In re,*
448 F.3d 672 (3d Cir. 2006).....12

*City of St. Clair v. Inland Western*,
635 F. Supp. 2d 783 (N.D. Ill. 2009).....11

*Countrywide Fin. Deriv. Litig.*, *In re,*
554 F. Supp. 2d 1044 (C.D. Cal. 2008).....6

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Credit Suisse First Boston*, *In re,*
431 F.3d 36 (1st Cir. 2005) ....................9

*Denny v. Barber*,
576 F.2d 465 (2d Cir. 1978)....................13, 15

*DiLeo v. Ernst & Young*,
901 F.2d 624 (7th Cir. 1990) ....................15

*Donald J. Trump Casino Sec. Litig.*, *In re,*
7 F.3d 357 372 ....................8, 10

*Dutton v. Harris Stratex Networks*,
270 F.R.D. 171 (D. Del. 2010) ....................5, 15

*Fait v. Regions Fin. Corp.*,
712 F. Supp. 2d 117 (S.D.N.Y. 2010),
*appeal pending*, No. 10-2311 (2d Cir.)....................6, 10

*Fannie Mae 2008 Sec. Litig.*, *In re,*
2010 WL 3825713 (S.D.N.Y. Sept. 30, 2010)....................14

*Fehribach v. Ernst & Young LLP*,
493 F.3d 905 (7th Cir. 2007) ....................12

*First Nationwide Bank v. Gelt Funding*,
820 F. Supp. 89 (S.D.N.Y. 1993),
*aff'd*, 27 F.3d 763 (2d Cir. 1994)....................6

*Freedman v. Value Health*,
958 F. Supp. 745 (D. Conn. 1997)....................10

*Global Crossing Sec. Litig.*, *In re,*
313 F. Supp. 2d 189 (S.D.N.Y. 2003)....................10

*Herman & MacLean v. Huddleston*,
459 U.S. 375 (1983)....................5

*Hinerfeld v. United Auto Group*,
1998 WL 397852 (S.D.N.Y. July 15, 1998) ....................15

*Lane v. Page*,
581 F. Supp. 2d 1094 (D.N.M. 2008) ....................11

*Lum v. Bank of America*,
361 F.3d 217 (3d Cir. 2004)....................2

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Maxwell v. KPMG LLP*,
520 F.3d 713 (7th Cir. 2008) ....................12

*McKesson HBOC Sec. Litig., In re*,
126 F. Supp. 2d 1248 (N.D. Cal. 2000) ....................11

*NACH, Inc. Sec. Litig., In re*,
306 F.3d 1314 (3d Cir. 2002)....................13

*Olkey v. Hyperion 1999 Term Trust*,
98 F.3d 2 (2d Cir. 1996)....................13

*Panther Partners v. Ikanos Commc'ns*,
538 F. Supp. 2d 662 (S.D.N.Y. 2008),
*aff'd in part and rev'd in part on other grounds*,
347 F. App'x 617 (2d Cir. 2009) ....................13

*Pension Benefit Guar. Corp. v. White Consol. Indus.*,
998 F.2d 1192 (3d Cir. 1993)....................2

*Plumbers' Union v. Nomura Asset Accept. Corp.*,
___ F.3d ___, 2011 WL 183971 (1st Cir. Jan. 20, 2011) ....................10

*Podany v. Robertson Stephens, Inc.*,
318 F. Supp. 2d 146, *motion to amend denied*,
350 F. Supp. 2d 375 (S.D.N.Y. 2004)....................9

*Rubke v. Capitol Bancorp*,
551 F.3d 1156 (9th Cir. 2009) ....................10, 12

*Sands v. McCormick*,
502 F.3d 263 (3d Cir. 2007)....................2

*Scibelli v. Roth*,
2000 WL 122193 (S.D.N.Y. Jan. 31, 2000) ....................14

*Shaffer v. South State Mach.*,
995 F. Supp. 584 (W.D. Pa. 1998)....................2

*Shalala v. Guernsey Mem. Hosp.*,
514 U.S. 87 (1995)....................7

*Shapiro v. UJB Fin.*,
964 F.2d 272 (3d Cir. 1992)....................1, 6, 9, 11, 13

*United States v. Morris*,
80 F.3d 1151 (7th Cir. 1996) ....................6

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Virginia Bankshares v. Sandberg*,
501 U.S. 1083 (1991)....................1, 8, 9, 10, 11

*Westinghouse Sec. Litig.*, *In re,*
90 F.3d 696 (3d Cir. 1996)....................6

*Zirkin v. Quanta Cap.*,
2009 WL 185940 (S.D.N.Y. Jan. 23, 2009) ....................14

**STATUTES, RULES AND REGULATIONS**

15 U.S.C. § 77k(a) ....................1, 4, 5, 8, 10, 11, 12, 14, 15

15 U.S.C. § 77k(a)(4)....................5

17 C.F.R. § 240.14a-9....................11

17 C.F.R. § 240.14a-9(a) ....................8

**OTHER AUTHORITIES**

AICPA, *Codification of Statements on Auditing Standards*, AU § 110.01 ....................7

AICPA, *Codification of Statements on Auditing Standards*, AU § 110.03 ....................7

EITF Topic No. D-80, Board of Governors, Fed. Reserve Sys., *Recent Developments Regarding Loan Loss Allowances*....................7

EITF Topic No. D-80, *Applic. of FASB Stmnts. 5 and 114 to a Loan Portfolio* ....................7

## INTRODUCTION

Plaintiffs allegedly bought securities of Advanta Corporation (RediReserve notes) in 2008 and 2009. The offering documents included the Form 10-Ks that Advanta filed with the SEC; the 10-Ks included Advanta's financial statements for the years ended December 31, 2007 and December 31, 2008, which KPMG LLP audited. The claim against KPMG—under Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k(a)—is based solely on KPMG's audit reports on those 2007 and 2008 financial statements. Many of the complaint's allegations are not about KPMG—they allege that Advanta ran its business poorly, which cannot be the basis of a claim against an auditor. As to KPMG, the complaint alleges that its statement that Advanta's financial statements complied with generally accepted accounting principles (GAAP) was false because Advanta's provision for loan loss reserves was understated—*i.e.*, KPMG should have known that Advanta's future loan losses would be much greater than Advanta anticipated at the time.

The complaint alleges a Section 11 claim based on strict liability or negligence, but those standards do not apply here. It is well settled that setting loan loss reserves (which is done by an auditor's client) is a matter of opinion because it depends on predictions about future business events and requires complex judgments involving a host of factors—there is no one correct answer, but rather a range of possibilities from which an informed opinion must be made. Under *Virginia Bankshares v. Sandberg*, 501 U.S. 1083 (1991), *Shapiro v. UJB Fin.*, 964 F.2d 272 (3d Cir. 1992) (which involved loss reserves), and other decisions, a securities claim based on an opinion must be dismissed unless the plaintiff alleges subjective falsity—namely, that the defendant did not genuinely believe its opinion at the time. There are no such allegations here.

Even if subjective falsity were not required, plaintiffs' claim against KPMG fails because it is a classic exercise in hindsight pleading that does not allege a plausible claim of material misstatements of fact at the time the registration statements became effective. The 10-Ks state

that Advanta increased its loss provision by 50% during 2007 and more than doubled that amount in 2008. Plaintiffs assert that the reserves should have been increased by even more.

The federal securities laws, however, do not require clairvoyance. Yet that is what the complaint asserts—that KPMG should have foreseen that Advanta would suffer even greater losses in 2009 and thus the already steep rise in reserves would not be enough. That theory is inconsistent with longstanding precedent that rejects hindsight pleading in securities cases. Moreover, an auditor has no duty to tell its client about or disclose in its audit report trends in the client's business, much less to accurately forecast the course of the economy. The complaint alleges no facts stating a plausible claim that KPMG should have known in advance that Advanta's large increases in loss reserves in 2007 and 2008 would turn out to be insufficient.

## FACTUAL BACKGROUND[1]

In 2008 and 2009, plaintiffs allegedly acquired RediReserve notes issued by Advanta. Cmplt. ¶¶ 13-14; Dkt. Nos. 20-4, 20-5. Payment of the notes' obligations depended on Advanta's revenues from its business operations. Cmplt. ¶ 40.

Advanta's primary business was issuing credit cards to small businesses. *Id.* ¶ 2. To obtain funding for its operations, Advanta packaged its credit card receivables into securities sold to investors through a securitization trust; those securities were designed so that if the cash flow from the credit card loan repayments decreased, investors could require Advanta to return their

---

[1] On a motion to dismiss, this Court may consider, in addition to the complaint's allegations, "matters of public record, and documents that form the basis of a claim"—*i.e.*, documents "'integral to or explicitly relied upon in the complaint.'" *Lum v. Bank of America*, 361 F.3d 217, 221 n.3 (3d Cir. 2004). Matters of public record include "letter decisions of government agencies," *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1197 (3d Cir. 1993), and "judicial proceedings," *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007), including bankruptcy court filings, *Shaffer v. South State Mach.*, 995 F. Supp. 584, 586 n.3 (W.D. Pa. 1998). This brief cites Advanta's Form 10-K filings with the SEC and two FDIC orders to Advanta—all of which are cited in the complaint, *e.g.*, ¶¶ 5-6, 35, 37, 49-55, 60-66—as well as an Advanta 10-Q filing with the SEC and two documents from Advanta's bankruptcy case. Pertinent excerpts from these documents are collected as exhibits in KPMG's Appendix.

principal—this was called early amortization. 3/13/09 10-K at 19, 48 (Ex. 1).

The complaint alleges that Advanta engaged in a number of "unsafe, unsound and illegal business practices" that were falsely described in or omitted from the registration statements for the RediReserve notes. Cmplt. ¶¶ 2, 5. Advanta allegedly "operated with inadequate capital for its risk profile"; "did not sustain satisfactory earnings performance to maintain sufficient capital for its risk profile"; "engaged in illegal and unfair business practices, including unjustifiably and unreasonably increasing the rates it charged its credit card holders"; and "failed to develop an adequate contingency plan for responding to an early amortization of the bank's credit card securitizations." *Id.* ¶ 5; see also *id.* ¶¶ 6, 46-47, 49-51, 57-58, 60-61, 63. Among other things, Advanta sharply increased the interest rates on its credit cards "based on criteria that were neither known nor communicated to customers," "did not adequately notify customers" that their rates had increased (thus violating the Equal Credit Opportunity Act), and "did not provide customers with sufficient time to exercise their right to opt-out" of the rate increases. *Id.* ¶ 49. There is no allegation that KPMG was involved in any of this conduct or that the allegedly falsely described information in the registration statements was in KPMG's audit report, the only portion of the registration statements for which KPMG is responsible.

Advanta's financial statements show that the company's loan loss provision was $38.6 million for 2006, jumped more than 50% to $58 million for 2007, and then more than doubled for 2008, to $123 million.[2] 3/13/09 10-K at 78 (Ex. 1). As the complaint alleges, Advanta's "'allowance for receivable losses represents management's estimate of probable losses inherent in the on-balance sheet receivable portfolio'"—"'[t]he allowance evaluation is inherently subjective as it requires estimates that are susceptible to significant revision as more information

---

[2] These amounts are listed in the financial statements as "provision for credit losses." See 2/28/08 10-K at 56, 70 (Ex. 2); 3/13/09 10-K at 64, 78 (Ex. 1). The complaint refers to the same amounts as the "provision for loan losses" (¶ 52) and "reserve for credit losses" (¶ 64).

becomes available.'" Cmplt. ¶ 53 (quoting Advanta's 2/28/08 10-K at 28-29, Ex. 2); accord *id.* ¶ 64 (quoting Advanta's 3/13/09 10-K at 29, Ex. 1). Plaintiffs allege that KPMG's audit reports—which stated that "[i]n our opinion" Advanta's 2007 and 2008 financial statements conformed with GAAP and fairly presented the company's financial position—were false because "Advanta's loan loss provision was inadequate." *Id.* ¶¶ 55-56, 66-67. In particular, the loan loss provisions of $58 million and $123 million in the 2007 and 2008 financial statements, respectively, were allegedly understated—although the complaint does not state by how much. *Id.* ¶¶ 52, 64. The complaint has no allegations about KPMG with respect to the 2006 financial statements, nor does it allege that the loss provision for 2006 was understated. See *id.* ¶¶ 46-48.

In June 2009—three months after KPMG's last audit report and five months after the end of the period covered by that report—there was an early amortization of Advanta's securitization trust. Advanta's 11/9/09 10-Q at 8 (Ex. 3). The complaint (¶ 69) admits it was this event—which took place after the audited financial statement period—that led to Advanta's demise:

> As the FDIC later explained, a major cause of Advanta's failure was the fact that it did not develop an adequate contingency plan for dealing with an early amortization event. This failure contributed to additional loan losses when [the] amortization event occurred.

Advanta's November 2009 bankruptcy filing (*id.*) does not mean plaintiffs have sustained any loss. The bankruptcy court recently approved Advanta's Chapter 11 Plan, under which RediReserve note holders will recover 64%-100% of the notes' face value. Ex. 4; Ex. 5 at DS-9. The bankruptcy court found that "the Debtors will have sufficient resources to timely meet all of their financial obligations under the Plan." Ex. 4 ¶ JJ. Advanta has explained that its bankruptcy strategy prevented the FDIC from obtaining Advanta assets, so that RediReserve note holders "could potentially recover all of their investment which has been a key goal of ours." Ex. 6.

Plaintiffs sue KPMG under Section 11, which provides for liability when a registration statement "contained an untrue statement of a material fact or omitted to state a material fact

required to be stated therein or necessary to make the statements therein not misleading." 15 U.S.C. § 77k(a); see Cmplt. ¶¶ 80-86. Plaintiffs (¶ 81) "expressly exclude and disclaim any allegation that could be construed as alleging fraud or intentional or reckless misconduct."

## ARGUMENT

### I. KPMG Cannot Be Liable For Statements It Did Not Prepare Or Certify.

Most of the complaint's allegations have nothing to do with the accounting in Advanta's financial statements; instead, they allege essentially that Advanta ran its business poorly, driving customers away with short-sighted decisions and not planning for a possible early amortization of Advanta's credit card securitizations, and that Advanta did not properly disclose those purported facts in the registration statements. See Cmplt. ¶¶ 5-6, 46-47, 49-51, 57-58, 60-61, 63.

KPMG, however, cannot be liable for statements in the registration statements that KPMG did not make; "[a]ccountants are liable under Section 11 only for those matters which purport to have been prepared or certified by them." *Herman & MacLean v. Huddleston*, 459 U.S. 375, 381 n.11 (1983) (citing 15 U.S.C. § 77k(a)(4)). Accountants are not subject to Section 11 liability for "parts of a registration statement which they are not named as having prepared or certified." *Id*. at 386 n.22; accord *Dutton v. Harris Stratex Networks*, 270 F.R.D. 171, 177 (D. Del. 2010). Because the only parts of the registration statements that KPMG allegedly prepared or certified were its audit reports on Advanta's financial statements, it cannot be liable for other parts of the registration statements.

### II. To State A Claim Against KPMG, The Complaint Must—But Does Not—Allege Subjective Falsity.

#### A. Statements Concerning Loss Reserves Are Opinions.

The sole basis for the claim against KPMG—that Advanta's financial statements did not comply with GAAP, because Advanta's loss reserves were allegedly understated (Cmplt. ¶¶ 55-

56, 66-67)[3]—involves a matter of opinion. Loss reserves are amounts that a bank sets aside "'based on its expectations about future loan losses.'" *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 701 n.1 (3d Cir. 1996) (Alito, J.). Reserves are "estimates or predictions of the likely collection or liquidation experience of the [company] in the future." *Christidis v. First Pa. Mortg. Trust*, 717 F.2d 96, 100 (3d Cir. 1983). Thus, "the taking of loan loss reserves is based on managerial guesswork about the future economic fortune" of the loan portfolio. *First Nationwide Bank v. Gelt Funding*, 820 F. Supp. 89, 95 (S.D.N.Y. 1993), *aff'd*, 27 F.3d 763 (2d Cir. 1994). Indeed, "[t]here appears to be no single method of evaluating and setting loan loss reserves," which involve "judgments" that "can be validated only at some future date." *Shapiro v. UJB Fin.*, 964 F.2d 272, 281 (3d Cir. 1992). See *United States v. Morris*, 80 F.3d 1151, 1163, 1164 (7th Cir. 1996) ("'characterizations of reserves as adequate are necessarily a matter of opinion and belief'"—the "estimation of probable losses in a large loan portfolio…is more an art than a science").[4] Plaintiffs admit that a loss reserve "'represents management's estimate of probable losses'" and is "'inherently subjective as it requires estimates that are susceptible to significant revision as more information becomes available.'" Cmplt. ¶¶ 53, 64 (quoting Advanta's 10-Ks).

Consistent with the cases, accounting principles confirm that setting loss reserves is a

---

[3] The only other alleged false statements by KPMG are tied to the allegedly understated reserves: plaintiffs allege that the understated reserves caused Advanta's income to be overstated and that Advanta "lacked effective internal controls over financial reporting because it was not correctly calculating its loan losses or accurately presenting its financial state." Cmplt. ¶¶ 55-56, 66-67. Because these allegations are derivative of the allegations concerning loss reserves, they fail to state a claim for the same reasons that the allegations about the loss reserves fail. *Fait v. Regions Fin. Corp.*, 712 F. Supp. 2d 117, 125 (S.D.N.Y. 2010), *appeal pending*, No. 10-2311 (2d Cir.).

[4] See also *Fait*, 712 F. Supp. 2d at 124 ("Whether Regions had adequate reserves for its predicted loan losses is not a matter of objective fact"; it is a "statement[] of opinion"); *Belmont Holdings v. SunTrust Banks*, 2010 WL 3545389, *6 (N.D. Ga. Sept. 10, 2010) ("Whether SunTrust had adequate reserves for its predicted loan losses generally is not a matter of objective fact, but rather a statement of SunTrust's opinion regarding what portion of its loan portfolio would be uncollectable"); *In re Countrywide Fin. Deriv. Litig.*, 554 F. Supp. 2d 1044, 1070 (C.D. Cal. 2008) ("the setting of loan loss reserves involves a great deal of discretion").

matter of opinion requiring a substantial amount of judgment. Reserves are increased when loans are "impaired," and loans are not impaired unless it is "probable"—that is, "likely to occur"—that they will not be repaid in full. Statement of Financial Accounting Standards (SFAS) No. 5 ¶¶ 3, 8; SFAS No. 114 ¶¶ 8, 10 (Exs. 7-8). "Probable is a higher level of likelihood than 'more likely than not.'" EITF Topic No. D-80, *Applic. of FASB Stmnts. 5 and 114 to a Loan Portfolio*, Ex. D-80A, Answ. to Q. 8 (Ex. 9). Accounting principles recognize that "application of the term probable in practice requires judgment" (SFAS No. 114 ¶ 49) and that the "complexity" inherent in determining "expected future cash flows" from loans is "unavoidable" (*id.* ¶ 35). See *id.* ¶ 43 ("expected future cash flows from impaired loans are usually uncertain," and "significant judgment" is required to estimate them); EITF Topic No. D-80, Board of Governors, Fed. Reserve Sys., *Recent Developments Regarding Loan Loss Allowances*, at 3 ("Arriving at an appropriate allowance involves a high degree of management judgment and results in a range of estimated losses"; there is "imprecision inherent in most estimates of expected credit losses").

Not only are loss reserves matters of opinion, but they reflect the opinion of the company, which prepares its own financial statements. AICPA, *Codification of Statements on Auditing Standards*, AU § 110.03 (2009) (Ex. 10); *Bily v. Arthur Young & Co.*, 834 P.2d 745, 749, 762 (Cal. 1992). An auditor, in turn, audits the financial statements and issues an audit report expressing its own opinion on whether the financial statements—taken as a whole—fairly present the company's financial position in accordance with GAAP. AU § 110.01; *Bily*, 834 P.2d at 750. Rendering that opinion requires the auditor to exercise "complex professional judgment." *Bily*, 834 P.2d at 763. See *Shalala v. Guernsey Mem. Hosp.*, 514 U.S. 87, 100 (1995) ("Financial accounting is *not a science*. It addresses many questions as to which the answers are *uncertain* and is a 'process [that] involves *continuous judgments and estimates*'") (emphasis added).

In sum, loan loss reserves are matters of opinion. And KPMG's audit opinion on

Advanta's financial statements is one step removed from Advanta's opinions about loss reserves.

### B. Subjective Falsity Allegations Are Required For Section 11 Claims Based On Statements Of Opinion.

#### 1. *Virginia Bankshares* requires subjective falsity to establish a federal securities claim based on an opinion.

As noted, Section 11 provides for liability when a registration statement "contain[s] an untrue statement of a material fact or omitted to state a material fact." 15 U.S.C. § 77k(a). But when the statement at issue is an opinion, when is an opinion "an untrue statement of … fact"?

The answer is provided by *Virginia Bankshares v. Sandberg*, 501 U.S. 1083 (1991), a Section 14 case. Section 14 is similar to Section 11 except that it concerns proxy statements rather than registration statements: a defendant is liable under Section 14 when a proxy statement "contain[s] any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9(a). See *In re Donald J. Trump Casino Sec. Litig.*, 7 F.3d 357 372 n.14 (3d Cir. 1993) (*Virginia Bankshares* is "instructive" in addressing Section 11 claims).

*Virginia Bankshares* involved whether corporate directors made a false or misleading statement by recommending approval of a merger because minority shareholders could achieve a "'high'" value and receive a "'fair'" price for their stock. 501 U.S. at 1088. A shareholder objected to the merger, alleging the directors "had not believed" that the price was high or the terms were fair, but recommended the merger so they could remain on the board. *Id.* at 1088-89.

The Supreme Court considered "the actionability per se of statements of reasons, opinion, or belief," which "by definition purport[] to express what is consciously on the speaker's mind." *Id.* at 1090. The Court "confine[d] [its] discussion" to "statements of belief and opinion" that "were made with knowledge that the directors did not hold the beliefs or opinions expressed." *Id.*

The Court decided "whether statements of reasons, opinions, or beliefs are statements 'with respect to … material fact[s]' so as to fall within the strictures of the Rule [14a-9]." *Id.* at 1091.

The Court observed that the directors' "statements of reasons or beliefs … are factual in two senses: [1] as statements that the directors do act for the reasons given or hold the belief stated and [2] as statements about the subject matter of the reason or belief expressed." *Id.* at 1093. The Court held that *both* must be exist for there to be Section 14 liability for making a false statement: the plaintiff must establish the defendants' "disbelief, or undisclosed belief or motivation" *and* provide "objective evidence … that the statement also expressly or impliedly asserted something false or misleading about its subject matter." *Id.* at 1095-96. For the first requirement—showing that the statement at issue "misstate[s] the speaker's reasons"—the Court held that "[a] statement of belief may be open to objection only" if it is "a misstatement of the psychological fact of the speaker's belief in what he says." *Id.* at 1095. See *id.* at 1087 ("We hold that knowingly false statements of reasons may be actionable").

In sum, "a material misstatement of *opinion* is by its nature a false statement, not about the objective world, but about the defendant's own belief." *Podany v. Robertson Stephens, Inc.*, 318 F. Supp. 2d 146, 154, *motion to amend denied*, 350 F. Supp. 2d 375 (S.D.N.Y. 2004). To prove an opinion is false "is the same as proving scienter, since the statement (unlike a statement of fact) cannot be false at all unless the speaker is knowingly misstating his truly held opinion." *Id.* at 153-54 (holding that under *Virginia Bankshares* "[t]he *sine qua non* of a securities fraud claim based on false opinion is that defendants deliberately misrepresented a truly held opinion"; plaintiffs must allege "that defendants did not sincerely believe the opinion they purported to hold"). Accord *In re Credit Suisse First Boston*, 431 F.3d 36, 48 (1st Cir. 2005).

These principles govern here. Indeed, the Third Circuit held in *Shapiro*, 964 F.2d at 282-83, that under *Virginia Bankshares* statements about the adequacy of loss reserves are actionable

only *if* they were knowingly or recklessly false. See also *Trump*, 7 F.3d at 368 (opinions "may be actionable misrepresentations if the speaker does not genuinely and reasonably believe them").

**2. *Virginia Bankshares*' subjective falsity requirement applies to Section 11 claims based on opinions.**

In Section 11 cases involving allegedly false opinions, courts have applied *Virginia Bankshares* and held that the plaintiff must allege "that the statements were both objectively and subjectively false or misleading" in order to state a claim. *Rubke v. Capitol Bancorp*, 551 F.3d 1156, 1162 (9th Cir. 2009) (affirming dismissal of a Section 11 claim based on a fairness opinion because the complaint "fails to allege" that the defendants "believed the deal offered … was unfair"). As the First Circuit stated recently in affirming the dismissal of Section 11 claims based on investment ratings for securities, "[d]efendants are not liable under the securities laws when their opinions … were honestly held when formed but simply turn out later to be inaccurate; nor are they liable only because they could have formed 'better' opinions." *Plumbers' Union v. Nomura Asset Accept. Corp.*, ___ F.3d ___, 2011 WL 183971, at *9 (1st Cir. Jan. 20, 2011).[5]

In particular, *Virginia Bankshares*' subjective falsity requirement has been the basis for dismissing Section 11 claims about opinions that a bank's loan loss reserves were adequate. *Fait*, 712 F. Supp. 2d at 124 (the complaint "is devoid of any allegation that defendants did not truly hold those opinions at the time they were made public"); *Belmont*, 2010 WL 3545389, at *1, 6 ("Plaintiff does not allege that SunTrust did not actually hold the opinion it expressed in its financial statements at the time they became effective"). See *Ciresi v. Citicorp*, 782 F. Supp.

[5] See also *In re Global Crossing Sec. Litig.*, 313 F. Supp. 2d 189, 210-11 (S.D.N.Y. 2003) ("Materially misleading statements of opinion and belief can be actionable under the securities laws, where the party offering the opinion misrepresents its true belief, that is, where the opinion or belief is not truly held") (dismissing a Section 11 claim based on a fair value opinion). Accord, *e.g.*, *In re AOL Time Warner, Inc. Sec. Litig.*, 381 F. Supp. 2d 192, 243 (S.D.N.Y. 2004); *Freedman v. Value Health*, 958 F. Supp. 745, 752-53 (D. Conn. 1997); *In re Barclays Bank Sec. Litig.*, 2011 WL 31548, *8 (S.D.N.Y. Jan. 5, 2011).

819, 822-23 (S.D.N.Y. 1991) (not citing *Virginia Bankshares*, but dismissing a Section 11 claim because statements of "predictions or opinions" about loan loss reserves "do not constitute material misrepresentations or omissions of fact"), *aff'd*, 956 F.2d 1161 (2d Cir. 1992) (table). These cases are consistent with the Third Circuit's *Shapiro* decision, which held that statements about the adequacy of loan loss reserves are not actionable under the securities laws unless made knowingly or recklessly—*i.e.*, with subjective falsity. 964 F.2d at 281-83.

Similarly, cases involving opinions brought under Section 14—which like Section 11 must be based on a statement of "fact," 17 C.F.R. § 240.14a-9—hold that a complaint must allege the defendant's subjective falsity to state a claim. *City of St. Clair v. Inland Western*, 635 F. Supp. 2d 783, 793 (N.D. Ill. 2009) (applying this standard to allegations about an auditor's reports); *Lane v. Page*, 581 F. Supp. 2d 1094, 1126-27 (D.N.M. 2008); *In re McKesson HBOC Sec. Litig.*, 126 F. Supp. 2d 1248, 1264-65 (N.D. Cal. 2000); *Bond Opportunity Fund v. Unilab Corp.*, 2003 WL 21058251, *5 (S.D.N.Y. May 9, 2003), *aff'd*, 87 F. App'x 772 (2d Cir. 2004).

Plaintiffs do not allege that KPMG did not truly believe its audit opinion with respect to the loan loss reserves. Because *Virginia Bankshares* requires subjective falsity, the claim against KPMG should be dismissed.

## III. The Complaint Does Not State A Plausible Claim Against KPMG.

Even if *Virginia Bankshares* did not require subjective falsity allegations, the complaint does not state a claim against KPMG for an independent reason: it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). There are no plausible allegations that *at the time* the registration statements became effective there were material misstatements in the audit reports, the only portion of the registration statements for which KPMG may be held responsible. A claim has "facial plausibility" only "when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). But when a complaint "stops short of the line between possibility and plausibility of 'entitle[ment] to relief'" (*Twombly*, 550 U.S. at 557)—*i.e.*, where a claim is merely "'conceivable'" and "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct"—it must be dismissed. *Iqbal*, 129 S. Ct. at 1950-51.

**A. An Auditor Has No Duty To Warn Of Business Trends And Is Not Responsible For The Company's Business Decisions.**

As an initial matter, an auditor reviews the company's financial information as of a specific point in time; an auditor does not make predictions about the company's future business prospects. As a result, an "auditor is not hired to assess the supply and demand conditions facing the audited firm"; there is "no merit" to claims that an audit "report failed to warn [the client] of ominous trends in the [client's] business." *Fehribach v. Ernst & Young LLP*, 493 F.3d 905, 910-11 (7th Cir. 2007). An auditor "could not have been expected to know more about trends in the [client's] business than [the client]." *Id.* at 911. Judge Posner explained in *Fehribach*:

> [P]redicting [the client's] future cash flow on any basis other than the financial statements for the audit year … was not the function of the audit report. … "[A]n auditor's duty is not to give business advice; it is merely to paint an accurate picture of the audited firm's financial condition, insofar as that condition is revealed by the company's books and inventory and other sources of an auditor's opinion."

*Id*. at 910. Put differently, an auditor is not responsible for a company's business decisions that turned out to harm the company. *Maxwell v. KPMG LLP*, 520 F.3d 713, 716-17 (7th Cir. 2008); *In re CITX Corp.*, 448 F.3d 672, 677-78 (3d Cir. 2006).

**B. The Claim Against KPMG Is Based On Hindsight.**

Moreover, a Section 11 claim "must" be based on "information [that] existed at the time the registration statement became effective." *Rubke*, 551 F.3d at 1164. Securities liability "cannot be imposed on the basis of subsequent events." *In re NAHC, Inc. Sec. Litig.*, 306 F.3d

1314, 1330 (3d Cir. 2002). Thus, pleading with 20/20 hindsight is impermissible—"'even the most exhaustively researched predictions are fallible.'" *Olkey v. Hyperion 1999 Term Trust*, 98 F.3d 2, 8 (2d Cir. 1996). "The securities laws do not require clairvoyance in the preparation of offering documents," which "are not guarantees" against the "vicissitudes" and "volatility" of business. *Panther Partners v. Ikanos Commc'ns*, 538 F. Supp. 2d 662, 664 (S.D.N.Y. 2008), *aff'd in part and rev'd in part on other grounds*, 347 F. App'x 617 (2d Cir. 2009).

Yet that is the basis for the claim against KPMG: even though the 2007 loss provision was 50% higher than in 2006, and the 2008 loss provision was more than double the increased 2007 provision, plaintiffs allege that those sharply higher loss reserves were understated at year-end 2007 and year-end 2008 because the reserves *turned out to be* insufficient by November 2009, when Advanta filed for bankruptcy. In other words, KPMG should have known that Advanta's business would do much worse in 2009 than the company predicted.

That is not a viable basis for liability, especially against an auditor. As the Third Circuit held in *Shapiro*, when it affirmed the dismissal of allegations that the defendants did not disclose that the bank would have to increase reserves in the future, there is no federal securities liability for "essentially failing to predict the future." 964 F.2d at 283. Defendants "cannot be subject to liability under the securities laws for their failure to predict … facts that occurred or patterns that were discerned [later]." *In re Adams Golf Sec. Litig.*, 176 F. Supp. 2d 216, 238 (D. Del. 2001) (dismissing Section 11 claim), *aff'd in part and rev'd in part on other grounds*, 381 F.3d 267 (3d Cir. 2004). "[T]he fact that looking backward, one perceives a trend does not necessarily mean that conditions were such that one year earlier the situation was sufficiently obvious." *Adams Golf*, 381 F.3d at 279. Nor is it permissible "to assume that Defendants *must* have known because something did in fact occur later." *Panther Partners*, 538 F. Supp. 2d at 673. See *Denny v. Barber*, 576 F.2d 465, 467, 470 (2d Cir. 1978) (Friendly, J.) (a claim concerning, *inter alia*,

"amounts reserved for loan losses" alleges "fraud by hindsight"; "plaintiff has simply seized upon disclosures made in later annual reports and alleged that they should have been made in earlier ones").[6] Thus, in *In re CIT Group Sec. Litig.*, 349 F. Supp. 2d 685 (S.D.N.Y. 2004), the court dismissed a Section 11 claim, rejecting the argument "that defendants could not have actually believed that loan loss reserves were adequate … because defendants decided to increase loan loss reserves just three weeks after the IPO." *Id.* at 690. "That defendants later decided to revise the amount of loan loss reserves … provides absolutely no reasonable basis for concluding that defendants did not think reserves were adequate at the time." *Id.* at 690-91.

**C. The Complaint Does Not Allege A Violation Of Accounting Principles.**

As discussed earlier, an auditor's potential liability is limited to its audit report. The complaint's allegations, however, indicate that Advanta's ultimate losses and its November 2009 bankruptcy stemmed from a series of poor business decisions unrelated to the company's accounting. See Cmplt. ¶¶ 5-6, 46-47, 49-51, 57-58, 60-61, 63. Indeed, plaintiffs admit that the FDIC later found that Advanta failed because it did not have a contingency plan for the early amortization that occurred in June 2009. *Id.* ¶ 69. The FDIC orders highlighted in the complaint (¶¶ 6, 49, 51, 53, 67-68) are irrelevant as to KPMG: they do not mention KPMG's audit reports or the loss reserves (much less say they were understated); they confirm that business decisions, not financial statement disclosures, were the issue at Advanta; and they were issued in June 2009, well after KPMG issued its last audit report. Exs. 11-12. Moreover, the complaint does not provide any details about why the reserve numbers or KPMG's audit report were wrong given

[6] See *Zirkin v. Quanta Cap.*, 2009 WL 185940, *10-11 (S.D.N.Y. Jan. 23, 2009) (loss estimate not false when made simply because it increased 15% two months later; dismissing Section 11 claim); *Scibelli v. Roth*, 2000 WL 122193, *3 (S.D.N.Y. Jan. 31, 2000) (it is not reasonable "[t]o *infer* that Nortel *possessed* such information [about declining revenue growth] on July 24 because Nortel *announced* such information on September 29"; dismissing Section 11 claim); *In re Fannie Mae 2008 Sec. Litig.*, 2010 WL 3825713, *20 (S.D.N.Y. Sept. 30, 2010) (a "massive increase" in fourth quarter 2008 reserves does not show reserves were inadequate in Aug. 2007).

the information KPMG had at the time: it does not "allege[] which standards [the auditor] violated, how the statements made in the audit opinion were false or misleading at the time they were made, what deficiencies existed in the performance of the audit negating a reasonable basis for the audit opinion, and what aspects of the audit were negligently performed." *Dutton*, 270 F.R.D. at 178 (dismissing a "'threadbare'" Section 11 claim against an auditor).[7] In short, the complaint does not allege a plausible claim that KPMG's audit reports—the only parts of the registration statements for which KPMG is responsible—were false at the time (2007 and 2008).

Plaintiffs cannot save their complaint by pointing out that there are allegations about a general economic downturn (¶¶ 2, 52, 54, 59) since such generalized allegations do not suffice. See *Belmont*, 2010 WL 3545389, *7 (a Section 11 claim alleging understated loan loss reserves did not state a claim under *Twombly* and *Iqbal*; the complaint relied on allegations that "the market continued to deteriorate" and lacked allegations showing the bank's reserves were understated "*at the time when it issued its financial statements*"); *Hinerfeld v. United Auto Group*, 1998 WL 397852, *7 (S.D.N.Y. July 15, 1998) (dismissing a Section 11 claim about inadequate loss reserves because "[t]here are no facts alleged to support an inference that this failure was the result of anything but inaccurate forecasting or unforeseen circumstances"). Allegations about general market conditions do not permit a "reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.

## CONCLUSION

For all of these reasons, the claim against KPMG should be dismissed with prejudice.

---

[7] See *DiLeo v. Ernst & Young*, 901 F.2d 624, 626-27 (7th Cir. 1990) (affirming dismissal of a securities claim against an auditor alleging that a bank "did not increase its reserves fast enough"; the complaint did not "give examples of problem loans that E&W should have caught, or explain how it did or should have recognized" that the reserves were insufficient); *Denny*, 576 F.2d at 467, 469 (allegations against a bank and its auditor that loss reserves were insufficient because some loans "had become 'increasingly risky'" did not state a securities claim because "there is no specification of what loans, at what times, and in what amounts were 'risky'").

Dated: February 28, 2011

*/s/ Edward D. Rogers*

Geoffrey A. Kahn, Esquire
Edward D. Rogers, Esquire
Ruth S. Uselton, Esquire
kahn@ballardspahr.com
rogerse@ballardspahr.com
useltonr@ballardspahr.com
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Phone: (215) 665-8500

Stanley J. Parzen, Esquire
James C. Schroeder
Justin A. McCarty
sparzen@mayerbrown.com
jschroeder@mayerbrown.com
jmccarty@mayerbrown.com
Mayer Brown LLP
71 S. Wacker Dr.
Chicago, IL 60606
Phone: (312) 701-7326
*Admitted Pro Hac Vice*

*Attorneys for Defendant KPMG LLP*

**CERTIFICATE OF SERVICE**

I, Susanna R. Greenberg, hereby certify that on February 28, 2011, the KPMG LLP Motion to Dismiss the Amended Class Action Complaint, and the Memorandum of Law in Support thereof, was served upon all counsel of record, identified below, via email by operation of the electronic filing system of the United States District Court for the Eastern District of Pennsylvania.

*Attorneys for Plaintiff*

Jeffrey J. Ciarlanto, Esquire
Brett David Stecker, Esquire
Patricia C. Weiser, Esquire
Robert B. Weiser, Esquire
THE WEISER LAW FIRM PC
121 N. Wayne Avenue
Suite 100
Wayne, PA 19087

Geoffrey M. Johnson, Esquire
SCOTT & SCOTT LLP
33 River Street
Chagrin Falls, OH 44022

Thomas Laughlin, Esquire
SCOTT & SCOTT LLP
500 Fifth Avenue, 40th Floor
New York, NY 10110

*Attorneys for Defendants Dennis Alter, William A. Rosoff, Philip M. Browne, David B. Weinstock, Robert S. Blank, Max Botel, Thomas Costello, Dana Becker Dunn, Robert Lubner, Olaf Olaffson, and Michael Stolper*

Michael L. Kichline, Esquire
Sarah L. Wyatt, Esquire
DECHERT LLP
2929 Arch Street
Philadelphia, PA 19104

Dated: February 28, 2011

*/s/ Susanna R. Greenberg*
Susanna R. Greenberg