UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

-------------------------------------------------------- X

WILLIAM E. UNDERLAND and MARK
SCHALLER, *on behalf of themselves and all
others similarly situated,*

                               Plaintiffs,

      - against-

DENNIS ALTER, WILLIAM A. ROSOFF,
PHILIP M. BROWNE, DAVID B.
WEINSTOCK, ROBERT S. BLANK, MAX
BOTEL, THOMAS COSTELLO, DANA
BECKER DUNN, ROBERT LUBNER, OLAF
OLAFSSON, MICHAEL STOLPER and
KPMG LLP,

                          Defendants.

-------------------------------------------------------- X

Case No. 2:10-cv-03621 (CMR)


**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO THE ADVANTA
DEFENDANTS' MOTION TO DISMISS THE AMENDED CLASS ACTION
COMPLAINT**

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................1

II.  FACTUAL BACKGROUND ..............................................................................6

    A.  The Advanta Defendants Drove Advanta Into Bankruptcy Through Unsafe, Unsound and Illegal Practices ........................................................6

        1.  Advanta Illegally Raised Interest Rates on Customers, Fueling a Wave of Credit Losses................................................................6

        2.  Advanta Failed to Plan for an Early Amortization Event .......................................7

        3.  Advanta Overstated Earnings and Understated Loan Losses by Ignoring Actual Changes in Payment Behavior .................................................7

        4.  The Advanta Defendants Caused Advanta to Collapse .................................7

    B.  The Advanta Defendants Raised Money by Selling RediReserve Notes Directly to Retail Investors by Means of a False Registration Statement ...................8

        1.  The RediReserve Notes.........................................................9

        2.  The Advanta Defendants Targeted RediReserve Notes for Sale to Individual Investors .........................................................9

        3.  The False Registration Statement ........................................................9

    C.  The Truth Emerges ........................................................10

        1.  Advanta Declares Bankruptcy ........................................................10

        2.  The FDIC's Material Loss Review Establishes that the Registration Statement Was False ........................................................10

        3.  The FDIC Orders Corroborate the Material Loss Review...................................11

    D.  This Action........................................................12

III. ARGUMENT........................................................12

    A.  Standards on a Rule 12(b)(6) Motion to Dismiss ........................................12

    B.  The Complaint Adequately Pleads Violations of Section 11 of the 1933 Act............13

        1.  Pleading Standards Applicable to a Section 11 Claim.........................................13

i

       a.   Plaintiffs Plead a *Prima Facie* Case by Alleging that the Registration Statement Contained a Material Misrepresentation or Omission ...................14

       b.   Materiality Is an Issue of Fact that Is Generally Not an Appropriate Ground for Dismissal on the Pleadings ...........................................................15

       c.   There Is No "Knowledge" Requirement Under Section 11 ...........................15

   2.   The Registration Statement Contained False and Misleading Statements and Omissions Concerning the Method Advanta Used to Calculate Loan Losses ........................................................................................................................16

   3.   The Registration Statement Contained False and Misleading Statements and Omissions Concerning Advanta's Reported Earnings and Loan Loss Provisions ....................................................................................................................18

   4.   The Registration Statement Contained False and Misleading Statements and Omissions Concerning Advanta's Illegal Repricing of Credit Card Accounts ......................................................................................................................20

   5.   The Registration Statement Contained False and Misleading Statements and Omissions Concerning Advanta's Failure to Plan for an Early Amortization Event ....................................................................................................22

   6.   The Registration Statement Contained False and Misleading Statements and Omissions Concerning Advanta's Credit Capabilities ....................................23

C.  Plaintiffs Primarily Challenge Misstatements and Omissions of Present and Historical Fact .................................................................................................................23

D.  The PSLRA Safe Harbor Does Not Apply to Any of Defendants' Misstatements or Omissions Because They Were Not Accompanied by Meaningful Cautionary Language .........................................................................26

E.  Plaintiffs Have Adequately Pled Claims Under Sections 12 and 15 of the 1933 Act ................................................................................................................................28

IV. CONCLUSION ....................................................................................................................29

## TABLE OF AUTHORITIES

**Cases**                                                                        **Pages**

*Aktieselskabet AF 21. Nov. 2001 v. Fame Jeans Inc.*,
    525 F.3d 8 (D.C. Cir. 2008) ........................................................................13

*Asher v. Baxter Int'l Inc.*,
    377 F.3d 727 (7th Cir. 2004) ....................................................................26

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988) ................................................................................15

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................13

*Billhofer v. Flamel Techs., SA*,
    663 F. Supp. 2d 288 (S.D.N.Y. 2009) ........................................................21

*City of Hialeah Emps.' Ret. Sys. and Laborers Pension Trust Funds for No. Calif.*
    *v. Toll Bros., Inc.*,
    No. 07-1513, 2008 WL 4058690 (E.D. Pa. Aug. 29, 2008) ...............................27

*Cortec Indus., Inc. v. Sum Holding L.P.*,
    949 F.2d 42 (2d Cir. 1991) ......................................................................29

*Craftmatic Sec. Litig. v. Kraftsow*,
    890 F.2d 628 (3d Cir. 1989) ....................................................................22

*Dutton v. Harris Stratex Networks, Inc.*,
    270 F.R.D. 171 (D. Del. 2010) ........................................................13, 14, 22

*EP Medsystems, Inc. v. EchoCath, Inc.*,
    235 F.3d 865 (3d Cir. 2000) ....................................................................27

*Erickson v. Pardus*,
    551 U.S. 89 (2007) ................................................................................13

*Ernst & Ernst v. Hochfelder*,
    425 U.S. 185 (1976) ................................................................................16

*Foman v. Davis*,
    371 U.S. 178 (1962) ................................................................................29

*Freudenberg v. E*Trade Fin. Corp.*,
    712 F. Supp.2d 171 (S.D.N.Y. 2010) ........................................................18

*Herman & MacLean v. Huddleston*,
   459 U.S. 375 (1983).............................................................................................3

*In re Adams Golf, Inc. Sec. Litig.*,
   381 F.3d 267 (3d Cir. 2004)................................................................. *passim*

*In re Burlington Coat Factory Sec. Litig.*,
   114 F.3d 1410 (3d Cir. 1997).....................................................................13, 19, 24

*In re Cell Pathways, Inc.*,
   No. 99-725, 2000 WL 805221 (E.D. Pa. June 20, 2000).......................................26

*In re Constar Int'l Inc. Sec. Litig.*,
   585 F.3d 774 (3d Cir. 2009)...................................................................3, 14, 16

*In re Daou Sys., Inc.*,
   411 F.3d 1006 (9th Cir. 2005) ..................................................................19

*In re Donald J. Trump Casino Sec. Litig. - Taj Mahal Litig.*,
   7 F.3d 357 (3d Cir. 1993) .......................................................................28

*In re Lucent Techs., Inc. Sec. Litig.*,
   217 F. Supp. 2d 529 (D.N.J. 2002) ............................................................27

*In re Merck & Co., Inc. Sec. Litig.*,
   432 F.3d 261 (3d Cir. 2005)....................................................................18

*In re PMA Capital Corp. Sec. Litig.*
   No. 03-6121, 2005 WL 1806503 (E.D. Pa. July 27, 2005) ...............................19, 24

*In re Ravisent Techs., Inc. Sec. Litig.*,
   No. Civ. A. 00-CV-1014, 2004 WL 1563024 (E.D. Pa. July 13, 2004)..........................13, 16

*In re Suprema Specialties, Inc. Sec. Litig.*,
   438 F.3d 256 (3d Cir. 2006).................................................................. *passim*

*In re U.S. Interactive, Inc. Sec. Litig.*,
   No. 01-CV-522, 2002 WL 1971252 (E.D. Pa. Aug. 23, 2002) .............................26

*In re Viropharma, Inc., Sec. Litig.*,
   No. CIV.A. 02-1627, 2003 WL 1824914 (E.D. Pa. Apr. 7, 2003) .........................25

*In re Wash. Mut., Inc. Sec., Deriv. & ERISA Litig.*,
   259 F.R.D. 490 (W.D. Wash. 2009) ..........................................................18

*In re Wash. Mut., Inc. Sec., Deriv. & ERISA Litig.*,
   694 F. Supp. 2d 1192 (W.D. Wash. 2009)...................................................19

*In re Westinghouse Sec. Litig.*,
    No. Civ.A. 91-354, 1998 WL 119554 (W.D. Pa. Mar. 12, 1998) .........................................16

*Institutional Investors Group v. Avaya, Inc.*,
    564 F.3d 242 (3d Cir. 2009)...................................................................................................25

*Kaplan v. Rose*,
    49 F.3d 1363 (9th Cir. 1994) .................................................................................................16

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*,
    416 F.3d 940 (9th Cir. 2005) .................................................................................................26

*Litwin v. Blackstone Group, L.P.*,
    634 F.3d 706 (2d Cir. 2011)...........................................................................................14, 22

*Local 295/Local 851 IBT Employer Group Pension Trust and Welfare Fund v. Fifth Third Bancorp.*,
    731 F. Supp. 2d 689 (S.D. Ohio 2010) .................................................................................18

*Milman v. Box Hill Sys. Corp.*,
    72 F. Supp. 2d 220 (S.D.N.Y. 1999).....................................................................................20

*Oran v. Stafford*,
    226 F.3d 275 (3d Cir. 2000)...................................................................................................15

*Oxford Asset Management, Ltd. v. Jaharis*,
    297 F.3d 1182 (11th Cir. 2002), *cert. denied*, 540 U.S. 872 (2003).....................................20

*Phillips v. County of Allegheny*,
    515 F.3d 224 (3d Cir. 2008)...................................................................................................13

*Semerenko v. Cendant Corp.*,
    223 F.3d 165 (3d Cir. 2000)...........................................................................................15, 27

*Shapiro v. UJB Fin. Corp.*,
    964 F.2d 272 (3d Cir. 1992)...........................................................................15, 20, 21, 23

*Shaw v. Digital Equip. Corp.*,
    82 F.3d 1194 (1st Cir. 1996)..................................................................................................26

*Sheehan v. Little Switzerland, Inc.*,
    136 F. Supp. 2d 301 (D. Del. 2001).......................................................................................15

*Sherleigh Assocs. LLC v. Windmere-Durable Holdings, Inc.*,
    178 F. Supp. 2d 1255 (S.D. Fla. 2000) ..................................................................................21

*Slayton v. American Exp. Co.*,
    604 F.3d 758 (2d Cir. 2010)...................................................................................................24

*Tracinda Corp. v. Daimlerchrysler AG*,
  197 F. Supp. 2d 42 (D. Del. 2002)..................................................................13

*TSC Indus., Inc. v. Northway, Inc.*,
  426 U.S. 438 (1976)........................................................................................15

*Virginia Bankshares, Inc. v. Sandberg*,
  501 U.S. 1083 (1991)......................................................................................23

*Weiner v. Quaker Oats Co.*,
  129 F.3d 310 (3d Cir. 1997)...........................................................................15

## Statutes

15 U.S.C. §77k(a) ............................................................................................14

15 U.S.C. §77l(a)(2)........................................................................................28

15 U.S.C.A. §77z-2 .........................................................................................24

15 U.S.C. §78u-5(i)(1) ....................................................................................23

17 C.F.R. §229.303 ...................................................................................14, 20

I.     INTRODUCTION

If just one of the dozens of misstatements Plaintiffs challenge is actionable -- in this context, untrue and material, but ***not necessarily*** "fraudulent" -- then the motion to dismiss must be denied.   The Advanta Defendants, grasping however, claim Plaintiffs cannot recover their substantial damages, because Plaintiffs purchased Advanta's notes in a "risky" market, and thus the Advanta Defendants were free to disclose (or omit) whatever they wished.   The Advanta Defendants claim their vague warnings regarding weakness in the economy "cure" their specific misrepresentations.   They are wrong.

The Advanta Defendants were forced to attack Plaintiffs' claims based on this broad "policy" rationale because their "legal arguments" (that their dozens of misstatements/omissions were immaterial as a matter of law and that Plaintiffs were required to plead *scienter*) hopelessly fail.   Although the Advanta Defendants argue Plaintiffs "cannot" recover here, the Court should read that as they "*should* not" recover because Plaintiffs had the temerity to purchase Advanta's notes ("chasing yield") in the midst of a risky market.   The Advanta Defendants want to change the law -- instead of ruling on the legal sufficiency of the Complaint, they want the Court to act as legislator and alter policy.   Respectfully, the Court should not fall for this, and can rest assured that the Securities Act of 1933 (the "1933 Act") is not abrogated merely because economic conditions are wobbly and the market risky; investors most certainly have rights in a risky market (if anything, when the market is "risky," that's precisely when investors' rights are most critical), and the Court should enforce them here.

This is a class action alleging violations of the 1933 Act arising out of the fact that Defendants caused the Advanta Corporation ("Advanta") to sell ***$500 million*** worth of "RediReserve" variable rate certificates and investment notes (collectively, the "RediReserve Notes") to individual retail investors by means of a false registration statement (as amended, the "Registration Statement")[1] that dramatically overstated Advanta's financial results, materially

---

[1] The RediReserve Notes were and are traceable to a Registration Statement filed with the U.S. Securities and Exchange Commission (the "SEC") on August 18, 2006 as amended on February 28, 2007 (the "2007 Amendment"), February 28, 2008 (the "2008 Amendment"),

1

misrepresented Advanta's business practices and failed to disclose that Advanta was systematically engaging in illegal interest rate hikes on over 1 million existing credit card accounts.   The Defendants are Advanta's directors who signed and vouched for the false Registration Statement (the "Advanta Defendants") and Advanta's auditor, KPMG LLP.[2]

As later described in a report and two orders issued by the Federal Deposit Insurance Corporation (the "FDIC"), Advanta's management, including the Advanta Defendants, was driving Advanta into the ground between 2007 and 2009 through a number of unsafe, unsound and illegal practices.   Specifically:

- Advanta operated with **_inadequate capital_** for its risk profile;

- Advanta operated in a manner that did not sustain satisfactory earnings performance to maintain sufficient capital for its risk profile;

- Advanta was engaged in **_illegal and unfair business practices,_** including unjustifiably and unreasonably increasing rates charged on over 1 million credit card accounts, representing 68 percent of Advanta's credit card portfolio;

- Advanta was engaged in **_unsafe or unsound banking practices_** that caused "**_significant financial deterioration_**";

- Advanta's management failed to develop an adequate contingency plan for responding to an early amortization of the bank's credit card securitizations and, accordingly, failed to incorporate an adequate plan into the bank's capital planning model; and

- Advanta was failing to incorporate adverse credit trends into its loan loss methodology and was **_understating its loan losses_** and **_overstating its income_**.

¶¶6, 49.

The Registration Statement used to sell RediReserve Notes failed to disclose these facts and also contained numerous statements that were false and misleading in light of the pervasive

---

February 9, 2009 (the "February 2009 Amendment") and March 13, 2009 (the "March 2009 Amendment") (collectively, the "Amendments").   ¶¶29, 85.  (All references to ¶__ or ¶¶__ are to Plaintiff's Amended Class Action Complaint filed January 13, 2011).

[2] KPMG has filed its own motion to dismiss, to which Plaintiffs are filing a separate opposition.

deterioration and abusive practices employed at Advanta.   The Advanta Defendants are responsible for these false and misleading statements because they each signed the Registration Statement and, in so doing, violated the stringent disclosure requirements imposed by Section 11 of the 1933 Act.

"As the Supreme Court has explained, Section 11 'was designed to assure compliance with the disclosure provisions of the Act by imposing a stringent standard of liability on the parties who play a direct role in a registered offering.'"  *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 269 (3d Cir. 2006) (quoting *Herman & MacLean v. Huddleston*, 459 U.S. 375, 381-82 (1983)).  "Section 11 is a virtually absolute liability provision[ ], which do[es] not require plaintiffs to allege that defendants possessed any *scienter*.  If a plaintiff purchased a security issued pursuant to a registration statement, he need only show a material misstatement or omission to establish his *prima facie* case."   *Suprema*, 438 F.3d at 269 (internal citations omitted).[3]  Whether a misstatement or omission is "material" is a "mixed question" of law and fact and not an appropriate ground for Rule 12(b)(6) dismissal unless the "alleged misrepresentations or omissions are *so obviously unimportant to an investor that reasonable minds cannot differ* on the question of materiality."  *In re Adams Golf, Inc. Sec. Litig.,* 381 F.3d 267, 275-77 (3d Cir. 2004) (emphasis added) (reversing district court dismissal of Section 11 claim on materiality grounds because the record could not support the high standard for finding that omitted information was immaterial as a matter of law).[4]

---

[3] It is hornbook law that there is no "state of mind" allegation requirement for §11 claims. Yet, somehow, when the Advanta Defendants read §11, they find such a requirement.  As the Third Circuit recently stated, "[t]he formulaic nature of §11 leaves defendants with little room to maneuver."  *In re Constar Int'l Inc. Sec. Litig.*, 585 F.3d 774, 785 (3d Cir. 2009).

[4] The Advanta Defendants audaciously omit this standard entirely from their Motion and fail to acknowledge its import.  It is now *their burden* to demonstrate that the misrepresentations and omissions alleged in the Complaint were "so obviously unimportant" to a reasonable RediReserve Notes investor that reasonable minds could not differ on the question of materiality. The Advanta Defendants' failure to even mention the applicable legal test in this regard is telling; it is a test they recognize they cannot possibly satisfy based on the totality of facts alleged in the Action.

Accordingly, Plaintiffs have adequately pled a Section 11 claim.  Plaintiffs are entitled to proceed, and the motion to dismiss must be denied, if they have alleged at least one misstatement or omission that is not "so obviously unimportant" that "reasonable minds cannot differ" regarding its materiality.  *Adams Golf,* 381 F.3d at 275.  As it happens, Plaintiffs have alleged a multitude of misstatements and omissions whose materiality cannot seriously be questioned.  While the Registration Statement represented that Advanta was a sophisticated, well-run and generally profitable credit card company, the truth was that Advanta: (1) systematically mistreated customers in violation of Section 5 of the Federal Trade Commission Act (the "FTC Act") and Regulation B of the Equal Credit Opportunity Act ("ECOA"); (2) overstated its earnings; (3) suffered numerous economic reversals as a result of its illegal activities, including potential legal liability and increased customer delinquencies; (4) failed to properly plan for a possible early amortization event; (5) understated loan losses; and (6) failed to follow its publicly stated policy for calculating loan losses by ignoring adverse credit trends associated with its illegal repricing of credit card accounts, the economic downturn and the cut-off of credit card account utility.

The Advanta Defendants do not come even remotely close to showing that ***all*** of their alleged misstatements and omissions were immaterial as a matter of law.  Indeed, the Advanta Defendants ***do not even contest*** that the Registration Statement contained materially false statements concerning the method by which Advanta calculated its loan losses.  Plaintiffs have alleged that the 2008 Amendment and the March 2009 Amendment to the Registration Statement falsely represented that Advanta took certain, specific, steps when calculating its loan losses:

> "The allowance for receivable losses is evaluated on a regular basis by management and is based upon management's review of the collectability of receivables in light of historical experience by receivable type, the nature and volume of the receivable portfolio, adverse situations that may affect the borrower's ability to repay and prevailing economic conditions."

¶53; *see also* ¶64.  The FDIC examined Advanta in November 2008 and found that Advanta was failing to calculate its loan losses as described because it was no longer accounting for "actual

changes" in portfolio behavior associated with its illegal credit card repricing between June 2007 and November 2008, the continued economic downturn and the cut-off in credit card account utility.  ¶6; *See* Advanta Defendants' Exhibit H (the FDIC Material Loss Review), Dkt. 38-2 at Pages 14-16 of 91.  Thus, even if the Advanta Defendants' arguments were fully credited, some of Plaintiffs' allegations would survive and the motion to dismiss should still be denied.

Reflecting the weakness of their position, the primary argument offered by the Advanta Defendants is a non-legal red herring designed to distract the Court from the issues relevant to the motion to dismiss.  The Advanta Defendants argue that Advanta collapsed because of an unforeseeable economic "tsunami" and that by buying RediReserve notes, Plaintiffs engaged in "voluntary assumption of risk."  *See* Def. Br. at 3-4.  By this sleight of hand, the Advanta Defendants attempt to set up a strawman that is easier to knock down than the allegations in Plaintiffs' complaint.

Contrary to the Advanta Defendants' attempts to rewrite Plaintiffs' complaint, this case has nothing to do with a supposed failure to predict a coming economic tsunami.  As the complaint makes clear, Defendants are liable under the 1933 Act because the Registration Statement misrepresented and omitted present and historical facts.  For example, the economic downturn in no way exculpates the Advanta Defendants for their failure to disclose that Advanta was systematically violating the law or for their misrepresentation of the process used to calculate its loan losses.  Those facts existed contemporaneous with the Registration Statement and should have been disclosed.  For this reason, the Advanta Defendants' attempt to blame the retail investors they targeted is both ridiculous and legally irrelevant.  These investors were misled by a materially false Registration Statement and the Advanta Defendants face "virtually absolute liability" under Section 11 for their role in creating the false Registration Statement.  *See Suprema*, 438 F.3d at 269.

The remainder of the Advanta Defendants' brief consists of a piecemeal challenge to some of the alleged false statements and omissions.  The Advanta Defendants claim that some of the allegedly false statements and omissions are "forward-looking" and that some others are

opinions.  *See* Def. Br. at 4.   The Advanta Defendants argue that, with respect to these statements, Plaintiffs must allege that the Advanta Defendants subjectively believed the statements to be false.  *Id*.  These arguments do not justify dismissal because Plaintiffs primarily allege misstatements and omissions of ***present and historical fact*** that cannot reasonably be categorized as "forward-looking" or as "opinions."   Neither these arguments nor the miscellaneous arguments tacked on to the end of the Advanta Defendants' brief can establish that Plaintiffs have failed to plead any material misstatements or omissions as a matter of law. Accordingly, the Court should deny the motion to dismiss in its entirety.

## II.   FACTUAL BACKGROUND

### A.   The Advanta Defendants Drove Advanta Into Bankruptcy Through Unsafe, Unsound and Illegal Practices

Advanta was a risky mono-line credit card issuer that primarily marketed cards to small businesses.  ¶2.  By 2007, Advanta was unraveling under the weight of the Advanta Defendants' undisclosed unsafe, unsound and illegal business practices, which included operating with insufficient capital for Advanta's risk profile, having a disengaged Board of Directors ("Board") and operating Advanta in a manner that failed to generate sufficient profits.  ¶6.

### 1.   Advanta Illegally Raised Interest Rates on Customers, Fueling a Wave of Credit Losses

Between June 2007 and November 2008, Advanta reacted to signs of economic downturn by engaging in illegal repricing actions on its credit card accounts whereby Advanta increased the applicable interest rate without provocation, sometimes to rates as high as 37%.  ¶49.  In total, Advanta engaged in over 1 million repricing actions on credit, affecting 68% of Advanta's portfolio.  *Id*.

With regard to the re-priced interest rates and the frequency of successive re-pricing events, Advanta's actions constituted unfair practices in violation of Section 5 of the FTC Act. *Id.*; Material Loss Review (Ex. H) at Page 15 of 91.  Specifically, Advanta unfairly imposed credit card increases based on criteria that were neither known nor communicated to customers.

¶49.  In addition, Advanta did not adequately notify customers that their applicable interest rate had been increased, did not disclose the amount of the increased rate, did not effectively disclose customers' rights to opt-out of the rate increase, and did not provide customers with sufficient time to exercise their rights to opt-out.  *Id.* Advanta's repricing campaign also violated Regulation B, which implements ECOA, by failing to send sufficient notice letters providing customers with explanations for the adverse actions.  *Id.*

According to the FDIC, these unwarranted increases harmed Advanta and Advanta's relationships with its customers by making it "very difficult for customers already struggling to make their minimum payments to cure any outstanding delinquency." *Id.*  The repricing also fueled a surge in loan losses in the second half of 2008.  *Id.*  In addition, Advanta exposed itself to legal liability and was ultimately fined $150,000 and forced to pay ***$21 million*** in restitution for the "substantial injury" it caused customers.  ¶6.

### 2.  Advanta Failed to Plan for an Early Amortization Event

As described in the FDIC's Material Loss Review, Advanta did not have an adequate contingency plan for addressing an early amortization of its credit card securitizations and did not incorporate an adequate plan into its capital planning model.  ¶6.

### 3.  Advanta Overstated Earnings and Understated Loan Losses by Ignoring Actual Changes in Payment Behavior

As described by the FDIC, by November 2008, Advanta was observably overstating its financial position by failing to maintain an adequate allowance for loan and lease losses and failing to incorporate into its allowance for loan and lease loss methodology: (1) the impact of the early amortization of Advanta's securitization trust; (2) anticipated and actual changes in portfolio behavior associated with the continued economic downturn, the aggressive re-pricing strategy and the cut-off in credit card account utility; and (3) the impact of management's change to a 120-day charge-off period.  ¶6;  *See* Material Loss Review (Ex. H) at Pages 14-16 of 91.

### 4.  The Advanta Defendants Caused Advanta to Collapse

It is a matter of public record that the Advanta Defendants, along with the rest of Advanta's management, caused Advanta's collapse.  As the FDIC stated in its Material Loss Review, which specifically analyzed the reasons for Advanta's collapse:

> Advanta failed due to insolvency brought on by the Board and management's failure to implement risk management practices commensurate with the risks associated with the bank (1) being a monoline small business credit card bank and (2) engaging in significant securitization activity.  In particular, Advanta's Board and management failed to develop adequate contingency plans for responding to an early amortization of the bank's securitizations and failed to incorporate those plans into the bank's capital planning model.

Material Loss Review (Ex. H) at Page 10 of 91.  The Material Loss Review then discusses the various undisclosed facts detailed above and describes how they caused Advanta's collapse.  *See id.* at Pages 14-16 of 91.  The FDIC also made clear that these problems existed both prior to and contemporaneous with the Registration Statement.  The FDIC notes, for example, that Advanta conducted its illegal repricing between June 2007 and November 2008 and indicates that many of Advanta's problems were abundantly clear by the time the FDIC conducted its November 2008 examination.  *See id.*  As the FDIC summarized:

> In the years preceding the bank's failure, the FDIC and UDFI each expressed concern about Advanta's risk management practices and made recommendations for improvement.   However, the actions taken by Advanta's Board and management to address these concerns and recommendations were neither timely nor adequate.

*Id.* at Page 11 of 91.  Thus, the Advanta Defendants' claim that "Advanta Collapse[d] as a Result of the Economic Crisis" is a fallacy.  *See* Def. Br. at 5-6.  Advanta collapsed because of specific policies and failures that occurred prior to the Registration Statement and that were misrepresented and omitted therein.[5]

B.   **The Advanta Defendants Raised Money by Selling RediReserve Notes Directly to Retail Investors by Means of a False Registration Statement**

---

[5] Even assuming *arguendo* that Advanta's management did not directly cause Advanta's collapse, Plaintiffs' complaint would survive because, regardless of what ultimately caused Advanta's collapse, the Registration Statement contained material misstatements and omissions.

### 1.   The RediReserve Notes

Desperately seeking to prevent Advanta's looming collapse, the Advanta Defendants raised money through the sale of RediReserve Notes, which were senior, unsecured debt securities of Advanta.   ¶¶3, 38.   The RediReserve Notes ranked junior to all secured debt of Advanta.   *Id.*   They were non-negotiable and it does not appear that any secondary market ever developed for them.   *Id.*   Advanta did not establish a so-called "sinking fund," security or other precaution to protect the RediReserve Notes in the event that Advanta was unable to pay.   ¶40. In addition, RediReserve Notes were not insured or guaranteed by the FDIC.   *Id.*   Thus, holders of RediReserve Notes depended solely on Advanta's revenues from operations and other sources of funds for repayment of principal and interest upon a RediReserve Note's maturity.   *Id.*

### 2.   The Advanta Defendants Targeted RediReserve Notes for Sale to Individual Investors

The Advanta Defendants targeted RediReserve Notes at unsophisticated individual investors.   Companies typically accomplish large debt offerings by hiring an investment bank that organizes the sale of the debt securities to sophisticated institutional investors such as pension funds.   ¶4.   However, throughout the Class Period,[6] Advanta's credit rating was "below investment grade," which limited its "access to unsecured, institutional debt."   *Id.*   Accordingly, Advanta eschewed the formal debt markets and marketed RediReserve Notes directly to "mom-and-pop" investors by advertising them in newspapers and capping investment at $500,000, an amount too small for many institutional investors.   ¶¶4, 43.   Advanta referred to its target customers as "retail investors" and stated that it sold these "retail notes . . . predominantly on a direct basis" to retail investors.   ¶44.   Based on a review of the February 2009 Amendment, an investor could purchase RediReserve Notes with as little as $100.   *Id.*

### 3. The False Registration Statement

The RediReserve Notes at issue in this case were offered through a "shelf registration,"

---

[6] The Class Period in this case is June 24, 2007 to November 8, 2009.

which is a type of offering whereby the issuer (Advanta in this case) registers a certain amount of securities through a registration statement and sells those securities over a period of time.  ¶30.  Since the sale of the securities occurred over an extended period of time, Advanta had a duty to update its registration statements periodically.   Thus, the RediReserve Notes were and are traceable to a Registration Statement filed with the SEC on August 18, 2006, as amended on February 28, 2007 (the "2007 Amendment"), February 28, 2008 (the "2008 Amendment"), February 9, 2009 (the "February 2009 Amendment") and March 13, 2009 (the "March 2009 Amendment") (collectively, the "Amendments").   ¶¶29, 85.   Pursuant to the terms of the Registration Statement and federal law, each of the Amendments constituted a registration statement so that misstatements and omissions therein are actionable.   ¶¶31-33.   As set forth below, the Registration Statement, as amended, contained numerous false and misleading statements and omissions.  In connection with the false Registration Statement, Advanta offered $500 million in RediReserve Notes.  ¶30.

> **C.**     **The Truth Emerges**

>> **1.  Advanta Declares Bankruptcy**

On November 8, 2009, without prior notice to the FDIC, Advanta filed a voluntary petition for reorganization under Chapter 11 of the U.S. Bankruptcy Code.  ¶69.  At that time, Advanta represented that approximately $138 million in RediReserve Notes were outstanding.  *Id.*

>> **2.  The FDIC's Material Loss Review Establishes that the Registration Statement Was False**

In October 2010, the FDIC issued its Material Loss Review.  ¶71.  The purpose of the Material Loss Review was to "determine the causes of Advanta's failure and the resulting material loss" and evaluate the FDIC's supervision of Advanta.  Material Loss Review (Ex. H) at Page 7 of 91.  In order to accomplish this, the FDIC examined the historical state of affairs at Advanta between December 2004 and December 2009 and, in the process, disclosed a significant amount of previously non-public information garnered from the FDIC's periodic examinations of

Advanta.  *See, e.g.*, *id.* at Pages 12-16 of 91.  For example, the FDIC described how Advanta engaged in illegal credit card repricings between June 2007 and November 2008 and how Advanta experienced a related surge in credit losses in the latter half of 2008.  *Id.* at Pages 14-15 of 91.  The FDIC described how its November 2008 examination showed that Advanta was improperly accounting for loan losses and overstating its earnings.  *Id.* at Page 14, 16 of 91.  The FDIC also stated that the problems it uncovered in November 2008 caused it to downgrade Advanta's rating two levels, from a two to a four (*see id.* at Page 19 of 91), a grade indicating "serious compliance problems" and "serious financial or managerial deficiencies that result in unsatisfactory performance."[7]

Because the period examined by the FDIC encompassed the entirety of the Class Period and described the historical state of Advanta's business, the Material Loss Review is directly relevant to understanding the true state of Advanta's business contemporaneous with the Registration Statement.  In that regard, and as described above, the Material Loss Review makes clear that Advanta was engaged in numerous unsound and illegal activities that were misrepresented and not adequately disclosed in the Registration Statement, and that these practices directly contributed to Advanta's collapse.  *See infra* pgs. 6-8.

### 3. The FDIC Orders Corroborate the Material Loss Review

On July 1, 2009, Advanta released two FDIC orders further describing Advanta's unsound business practices and illegal credit card practices.  ¶68.  According to an order dated June 30, 2009 ("FDIC Order #1"), Advanta was engaged in "unsafe or unsound banking practices" and these practices caused "significant financial deterioration" such that the FDIC ordered Advanta to retain competent management capable of operating Advanta in a "safe and sound manner."  ¶6.  The FDIC further ordered that the Board "increase its participation in the affairs of the Bank."  *Id.*  The disarray was so severe that the FDIC ordered Advanta to submit a plan for discontinuance of deposit-taking operations and the voluntary termination of deposit

---

[7]  *See*  http://www.fdic.gov/regulations/examinations/ratings/index.html#1  (describing  FDIC rating system).

insurance after the repayment in full of all deposits.  *Id.*  The FDIC found that Advanta operated with inadequate capital for its risk profile and required a plan addressing, *inter alia*, its: (i) current and future capital requirements; (ii) level of concentrations of credit; and (iii) volume of adversely classified assets.  *Id.*  Further, Advanta operated in a manner that did not sustain satisfactory earnings performance to maintain sufficient capital for Advanta's risk profile.  *Id.*

According to a second order from the FDIC ("FDIC Order #2") and a July 1, 2009 press release, the FDIC determined that Advanta unfairly increased the interest rate it charged its customers even when customers had neither exceeded their limits nor were delinquent in making payments on their accounts.  *Id.*  The FDIC further determined that Advanta failed to adequately notify account holders that interest rates were increasing.  *Id.*  These violations resulted in a $150,000 fine and Advanta being forced to pay *$21 million* in restitution for the "substantial injury" it caused customers.  *Id.*[8]

### D.    This Action

Plaintiffs bring this putative securities class action under Sections 11, 12 and 15 of the 1933 Act on behalf of persons who, during the Class Period, purchased "RediReserve" variable rate certificates and investment notes.[9]

## III.    ARGUMENT

### A.    Standards on a Rule 12(b)(6) Motion to Dismiss

Plaintiffs are entitled to proceed with their case as long as the complaint sets forth "a short and plain statement" that supports a plausible claim for relief.  *See* Fed. R. Civ. P. 8(a); *Bell*

---

[8] The Advanta Defendants claim the two FDIC orders did not have "anything to do with what the plaintiffs are complaining about in this action."  *See* Def. Br. at 10.  As the above discussion demonstrates, that assertion is baseless.  FDIC Order #1 referred to the unsafe and unsound practices identified in the Material Loss Review that were misrepresented in the Registration Statement.  FDIC Order #2 referred to the illegal credit card repricing that was not disclosed in the Registration Statement.

[9] The Advanta Defendants have referenced that the putative class may recover between 64.4% and 100% of their losses through Advanta's bankruptcy proceeding.  This is irrelevant to the motion to dismiss.  Unless the putative class receives a 100% recovery through the bankruptcy, this case should proceed.  The class was misled by the misrepresentations in the Registration Statement and the Advanta Defendants are required to make them whole.

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Aktieselskabet AF 21. Nov. 2001 v. Fame Jeans Inc.*, 525 F.3d 8, 15 (D.C. Cir. 2008) ("*Twombly* leaves the long-standing fundamentals of notice pleading intact."); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (the complaint "need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests'"). "The purpose of a Rule 12(b)(6) motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of a case." *In re Ravisent Techs., Inc. Sec. Litig.*, No. Civ. A. 00-CV-1014, 2004 WL 1563024, at *2 (E.D. Pa. July 13, 2004) (citing *Tracinda Corp. v. Daimlerchrysler AG*, 197 F. Supp. 2d 42, 53 (D. Del. 2002)). When deciding a Rule 12(b)(6) motion to dismiss, a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008); *Suprema*, 438 F.3d at 269.

Thus, "the court should not look to whether plaintiffs will 'ultimately prevail,' it should only consider whether they should be allowed to offer evidence in support of their claims." *Ravisent*, 2004 WL 1563024, at *2 (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997)). If a complaint pleads factual content that allows the court to draw the reasonable inference that defendants are liable for the misconduct alleged, then the complaint is "plausible on its face" and will survive a Rule 12(b)(6) motion to dismiss. *Dutton v. Harris Stratex Networks, Inc.*, 270 F.R.D. 171, 175 (D. Del. 2010).

**B.    The Complaint Adequately Pleads Violations of Section 11 of the 1933 Act**

**1.    Pleading Standards Applicable to a Section 11 Claim**

The Advanta Defendants have a very heavy burden in attempting to justify dismissal of Plaintiffs' Section 11 claim on the pleadings. The Advanta Defendants can only prevail if they show that ***all*** of the numerous misstatements and omissions alleged by Plaintiffs are so obviously unimportant that they can be deemed immaterial as a matter of law. *See Adams Golf,* 381 F.3d at 275. The Advanta Defendants have not satisfied this burden.

     a.  Plaintiffs Plead a *Prima Facie* Case by Alleging that the Registration
        Statement Contained a Material Misrepresentation or Omission

Section 11 of the 1933 Act establishes a private cause of action against, *inter alia*, issuers, signatories to and certain participants in a registration statement if "any part of the registration statement . . . contain[s] an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading." 15 U.S.C. §77k(a); *Dutton,* 270 F.R.D. at 176. "[A] *prima facie* case under §11 is straightforward, requiring only a showing of a material misrepresentation or omission from a defendant's registration statement." *Constar*, 585 F.3d at 782; *Suprema*, 438 F.3d at 269.

An omission of a material fact is actionable if either (1) disclosure of the material fact was necessary to make statements in the Registration Statement not misleading, ***or if*** (2) federal law required the disclosure of the fact. *Suprema*, 438 F.3d at 269. With regard to the latter, Item 303 of SEC Regulation S–K, 17 C.F.R. §229.303(a)(3)(ii) ("Item 303") requires the disclosure of "any known trends or uncertainties ... that the registrant reasonably expects will have a material ... unfavorable impact on ... revenues or income from continuing operations." *See Litwin v. Blackstone Group, L.P.*, 634 F.3d 706, 716 (2d Cir. 2011). Instruction 3 to paragraph 303(a) provides that "[t]he discussion and analysis shall focus specifically on material events and uncertainties known to management that would cause reported financial information not to be necessarily indicative of future operating results or of future financial condition." *Id.* (quoting 17 C.F.R. §229.303(a) instruction 3). The SEC's interpretive release regarding Item 303 clarifies that the Regulation imposes a disclosure duty "where a trend, demand, commitment, event or uncertainty is both [1] presently known to management and [2] reasonably likely to have material effects on the registrant's financial condition or results of operations." *Litwin*, 634 F.3d at 716.[10]

---

[10] Section 11 also identifies other defendants, including signatories and expert auditors, who may have an affirmative defense of due diligence or the absence of causation -- however, these affirmative defenses are ***not suitable*** for adjudication at the motion to dismiss stage. *See, e.g., Adams Golf*, 381 F.3d at 277 ("an affirmative defense may not be used to dismiss a plaintiff's complaint under Rule 12(b)(6)").

b. Materiality Is an Issue of Fact that Is Generally Not an Appropriate Ground for Dismissal on the Pleadings

A "fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding" whether to invest. *Basic Inc. v. Levinson*, 485 U.S. 224, 231 (1988) (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976)). Information is deemed material if the disclosure would have been viewed by a reasonable investor as having "significantly altered the 'total mix' of information available to that investor" and would have been important in making an investment decision. *Oran v. Stafford*, 226 F.3d 275, 282 (3d Cir. 2000) (citations omitted).

"Materiality is ordinarily an issue left to the factfinder and is therefore not typically a matter for Rule 12(b)(6) dismissal." *Adams Golf,* 381 F.3d at 274; *Weiner v. Quaker Oats Co.*, 129 F.3d 310, 317 (3d Cir. 1997) ("[T]he emphasis on a fact-specific determination of materiality militates against a dismissal on the pleadings."); *Semerenko v. Cendant Corp.*, 223 F.3d 165, 178 (3d Cir. 2000) ("[T]he issue of materiality typically presents a mixed question of law and fact, and . . . the delicate assessment of inferences is generally best left to the trier of fact."); *Sheehan v. Little Switzerland, Inc.*, 136 F. Supp. 2d 301, 312 (D. Del. 2001) ("Materiality is a highly fact-intensive issue which makes it difficult to resolve at the pleadings stage."). Indeed, "[o]nly if the alleged misrepresentations or omissions are ***so obviously unimportant*** to an investor that reasonable minds cannot differ on the question of materiality is it appropriate for the district court to rule that the allegations are inactionable as a matter of law." *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 281 n.11 (3d Cir. 1992) (citing *TSC*, 426 U.S. at 450).

c. There Is No "Knowledge" Requirement Under Section 11

The Advanta Defendants devote a considerable portion of their Motion to arguing that Plaintiffs failed to allege that they acted with *scienter*. *See, e.g.,* Defs. Mem. at 12-14, 17-21. In other words, the Advanta Defendants urge this Court to impose nonexistent, heightened pleading standards upon Plaintiffs' claims.[11] Despite Advanta Defendants' contentions to the contrary, it

---

[11] In another example of this tactic, the Advanta Defendants argue that "[i]nstead of

is hornbook law that *scienter* (or any other general motive) need not be pled to state viable claims under Section 11.  *Ravisent*, 2004 WL 1563024, at *12 ("pleading an action under Section 11 does not require proof of *scienter*, or a general motive or intent to manipulate."); *Suprema,* 438 F.3d at 269 (same); *Constar,* 585 F.3d at 783 ("the elements of a § 11 claim stand in stark contrast to those of a claim under the Exchange Act (such as a § 10(b) claim), which requires a showing of reasonable reliance and scienter.").

Liability under Section 11 "approximates the tort standard of strict liability."  *Ravisent*, 2004 WL 1563024, at *12*; see also Adams Golf*, 381 F.3d 274 n. 7 ("Sections 11 and 12(a)(2) are virtually absolutely liability provisions…"); *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 200 (1976) (underlying Congressional policy was to create express liability regardless of fault); *Kaplan v. Rose*, 49 F.3d 1363, 1371 (9th Cir. 1994) (holding that under Section 11, "defendants will be liable for innocent or negligent material misstatements"); *In re Westinghouse Sec. Litig.*, No. Civ.A. 91-354, 1998 WL 119554, at *7 (W.D. Pa. Mar. 12, 1998) (*scienter* not required for Section 11 claims, mere negligence or innocent misrepresentations are actionable).  Accordingly, to properly allege the Advanta Defendants' liability, all Plaintiffs must allege -- which they have throughout the Complaint -- is that the Registration Statement and Amendments thereto were materially false and misleading.

## 2. The Registration Statement Contained False and Misleading Statements and Omissions Concerning the Method Advanta Used to Calculate Loan Losses

It is uncontested that the Registration Statement misrepresented the manner in which Advanta calculated its loan losses.  Advanta's primary business was the extension of credit and its losses on that credit were one of the primary components affecting Advanta's profitability.

---

acknowledging that any loss they may sustain on their investments was caused by their voluntary assumption of risk and by the economic crisis, the plaintiffs now seek to pin the blame for the entirety of any prospective loss on the defendants."  Def. Mem. at 4.  However, under Section 11, "***plaintiffs do not have the burden of proving [loss] causation***," which is ***presumed*** to have been caused by the challenged misrepresentations and omissions.  *Constar,* 585 F.3d at 783.  Absence of causation (or "negative causation") is merely an affirmative defense, not suitable for adjudication at the motion to dismiss stage.  *See, e.g., Adams Golf*, 381 F.3d at 277.

*See* ¶¶2, 53, 64.  Advanta accounted for its loan losses through an "allowance" that represented

Advanta's estimate of its probable loan losses.  *Id.* at ¶¶53, 64.  When Advanta determined that

more loans were uncollectable, it added to its allowance by setting aside additional money

through a "provision" which was charged against earnings.  *Id.*  Advanta reported its loan loss

provisions in its publicly filed financial statements and the loan losses were also reflected in

Advanta's earnings because loan losses were charged against earnings.  *See id.*

 Both the 2008 Amendment and March 2009 Amendment to the Registration Statement

falsely represented how Advanta calculated its loan loss provision and allowance:

> We establish the allowance for receivable losses through provisions charged to
> earnings. . . *The allowance for receivable losses is evaluated on a regular basis*
> *by management and is based upon management's review of the collectability of*
> *receivables in light of historical experience by receivable type, the nature and*
> *volume of the receivable portfolio, adverse situations that may affect the*
> *borrowers' ability to repay and prevailing economic conditions*.

*See, e.g.*, ¶¶53, 64.  As the FDIC later revealed in the Material Loss Review, these statements

were false and misleading because Advanta did not calculate its loan losses by taking into

account its "historical experience," the "nature" of its portfolio, "adverse situations that may

affect the borrowers' ability to repay" or "prevailing economic conditions."   Instead, by

November 2008 at the latest, Advanta was disregarding all of these factors as it failed to

incorporate into its allowance for loan loss methodology "actual changes" in portfolio behavior

associated with its June 2007-November 2008 repricing scheme and the continued economic

downturn.  ¶¶6, 49.  Or, to put it more simply, more of Advanta's customers were becoming

delinquent and/or failing to pay Advanta back, and Advanta failed to account for this when

calculating what provision and allowance were necessary even though it represented in the

Registration Statement that it would take such adverse credit data into account.

Statements regarding loan loss provisions are material, and therefore actionable, under

Section 11.  *See, e.g.*, *Local 295/Local 851 IBT Employer Group Pension Trust and Welfare*

*Fund v. Fifth Third Bancorp.*, 731 F. Supp. 2d 689, 706 (S.D. Ohio 2010) (finding that

misstatements regarding loan loss provisions were material under Section 11); *In re Wash. Mut.,*

*Inc. Sec., Deriv. & ERISA Litig.*, 259 F.R.D. 490, 507 (W.D. Wash. 2009) (holding that Section 11 claim was adequately pled where plaintiffs alleged that company was "under-provisioning its Allowance [for loan losses] and overstating its net income"); *Freudenberg v. E*Trade Fin. Corp.*, 712 F. Supp.2d 171, 188 (S.D.N.Y. 2010) (holding that representation that "loan loss allowance was based on careful monitoring of the quality of the portfolio and other relevant conditions" was material under Section 10(b) of the 1934 Act)).[12]

### 3. The Registration Statement Contained False and Misleading Statements and Omissions Concerning Advanta's Reported Earnings and Loan Loss Provisions

In order to accurately represent its financial status to investors, Advanta was required to calculate its probable losses in conformance with GAAP and SEC regulations. SFAS 5, a fundamental GAAP principle that was issued over thirty years ago, states:

> An estimated loss from a loss contingency . . . shall be accrued by a charge to income if both of the following conditions are met:

> a.    Information available prior to issuance of the financial statements indicates that it is probable that an asset had been impaired or a liability had been incurred at the date of the financial statements.  It is implicit in this condition that it must be probable that one or more future events will occur confirming the fact of the loss.

> b.    The amount of loss can be reasonably estimated.

Similarly, SEC Staff Accounting Bulletin No. 102, "Selected Loan Loss Allowance Methodology and Documentation Issues" (defined above as "SAB 102"), issued in July 2001, states in pertinent part: "It is critical that loan loss allowance methodologies incorporate management's current judgments about the credit quality of the loan portfolio through a disciplined and consistently applied process . . . . A registrant's loan loss allowance methodology generally should . . . [c]onsider all known relevant internal and external factors that may affect loan collectability . . . [and] be based on current and reliable data. . . ."

---

[12] *Freudenberg* involved a Section 10(b) claim, but its materiality analysis is relevant because Section 11 of the 1933 Act and Section 10(b) of the 1934 Act are subject to the same materiality analysis.  *In re Merck & Co., Inc. Sec. Litig.*, 432 F.3d 261, 275 (3d Cir. 2005).

Advanta stated in the 2008 Amendment that it had a $58 million provision for credit losses and stated in the March 2009 Amendment that it had a provision of $123 million.  ¶¶52, 64.  These statements were false and misleading because, as the FDIC found, Advanta failed to account for actual changes in portfolio behavior flowing from its card repricing and the economic downturn, and therefore "failed to maintain an adequate allowance for loan and lease losses."  ¶6; Material Loss Review (Ex. H) at Page 16 of 91.  And, because loan loss provisions were charged against earnings, the failure to take an adequate loan loss provision meant that Advanta's earnings were overstated -- thus, the statement in the 2008 Amendment that Advanta earned $72 million and the statement in the March 2009 Amendment that Advanta lost $44 million were both false.  ¶¶52, 64.

Plaintiffs have adequately pled that the misstatement of Advanta's financial results was material.  "[I]nformation about a company's past and current earnings is likely to be highly 'material.'"  *Burlington,* 114 F.3d at 1421 n. 9.  Accordingly, Plaintiffs' allegations that Advanta's financial statements were misstated under GAAP adequately allege a material misstatement.  *See id.* at  1421; *In re PMA Capital Corp. Sec. Litig.* No. 03-6121, 2005 WL 1806503, at **15-16 (E.D. Pa. July 27, 2005) (sustaining Section 11 claim alleging GAAP violations).  At the pleading stage, "[p]laintiffs are required only to 'allege enough information so that 'a court can discern whether the alleged GAAP violations were minor or technical in nature, or whether they constituted widespread and significant inflation of revenue.'"  *In re Wash. Mut., Inc. Sec., Deriv. & ERISA Litig.*, 694 F. Supp. 2d 1192, 1222 (W.D. Wash. 2009) (citing *In re Daou Sys., Inc.*, 411 F.3d 1006, 1017 (9th Cir. 2005); *see also Burlington*, 114 F.3d at 1421 ("it is a factual question whether [the company's] accounting practices were consistent with GAAP.").  The factual allegations in Plaintiffs' complaint support the reasonable inference that the violations were widespread.  Advanta repriced 68% of its credit card portfolio between June 2007 and November 2008, sometimes hiking rates as high as 37%, making it "very difficult for customers already struggling to make their minimum payments to cure any outstanding delinquency."  ¶49.  It can reasonably be inferred that a repricing campaign of this magnitude

and severity would have a major negative impact on Advanta's payment patterns, so that ignoring these impacts would significantly distort Advanta's loan loss provision.   This reasonable inference is further strengthened by the fact that the FDIC noticed that Advanta's allowance was inadequate as of November 2008 and designated this failure as a major flaw that contributed to Advanta's collapse.   ¶¶6, 49; Material Loss Review (Ex. H) at Pages 14, 16 of 91.[13]

### 4.   The Registration Statement Contained False and Misleading Statements and Omissions Concerning Advanta's Illegal Repricing of Credit Card Accounts

Regulation S-K required the Advanta Defendants to disclose that Advanta was illegally repricing 68% of its credit card portfolio, often imposing severe interest hikes, and that these actions was fueling higher credit losses and exposed Advanta to significant legal liability.   Item 303 required disclosure of "any known trends or uncertainties that have had or that the registrant reasonably expects will have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations . . . ."  17 C.F.R. §229.303(a)(3)(ii).   The Eleventh Circuit recognized the significance of Item 303 in *Oxford Asset Management, Ltd. v. Jaharis*, 297 F.3d 1182 (11th Cir. 2002), *cert. denied*, 540 U.S. 872 (2003):

> Item 303(a)(3)(ii) essentially says to a registrant: If there has been an important change in your company's business or environment that significantly or materially decreases the predictive value of your reported results, explain this change in the prospectus.

*Id*. at 1191-92.  *See also Milman v. Box Hill Sys. Corp.*, 72 F. Supp. 2d 220, 230-31 (S.D.N.Y. 1999) (omission of facts required by Item 303 constitutes violation of Section 11, regardless of nature and extent of warnings in prospectus concerning risky and volatile nature of issuer's business; motion to dismiss Section 11 claims denied); *Sherleigh Assocs. LLC v. Windmere-Durable Holdings, Inc.*, 178 F. Supp. 2d 1255, 1270-71 & nn. 2-3 (S.D. Fla. 2000) (plaintiffs

---

[13] The statements in the Registration Statement concerning Advanta's "strong" financial position also triggered a duty to disclose that Advanta was under-provisioning for loan losses.  *See* ¶¶59, 62.  *See Shapiro*, 964 F.2d at 282.

properly alleged Section 11 claim where prospectus failed to disclose facts required under Item 303; motion to dismiss Section 11 claims denied).

In this case, the illegal repricing was known to management; it was an official policy of Advanta and affected the bulk of Advanta's loan portfolio. ¶49. The repricing could reasonably be expected to have a material impact due to the severity of the planned rate hikes and their likely impact on customers' ability to repay. ¶49. Moreover, by the second half of 2008, the repricing was discernibly increasing credit losses. *Id.* In addition, because Advanta's practices violated Section 5 of the FTC Act and Regulation B, it could reasonably be expected that they would expose Advanta to legal liability. Accordingly, the repricing should have been disclosed in the 2008 Amendment. The repricing also should have been disclosed in the February 2009 Amendment and the March 2009 Amendment, when Advanta was experiencing the effects of its repricing.[14]

Plaintiffs have adequately pled that the repricing was material. The repricing had a significant effect on 68% of Advanta's portfolio, which was Advanta's primary business. As such, the allegations in this case far surpass this Circuit's threshold for pleading materiality. *See, e.g., Adams Golf,* 381 F.3d at 275-76 (where plaintiffs alleged defendants failed to disclose that company's revenues were artificially inflated by "gray market distribution" of 2% of clubs sold in relevant fiscal quarter, Third Circuit could not conclude at the pleading stage that this information was "unquestionably immaterial to a reasonable investor"); *Dutton,* 270 F.R.D. at

---

[14] Separate from the duty imposed by Item 303, the statements in the Registration Statement concerning Advanta's commitment to strengthening its customer relationships put that issue "in play" and triggered a duty to disclose facts tending to undermine those statements, such as Advanta's rampant repricing. *See, e.g.,* ¶¶49, 57, 60. *Shapiro,* 964 F.2d at 282 (describing how management's affirmative statement on a subject put the issue "in play"). Here, it was misleading to discuss Advanta's policies for strengthening customer relationships without disclosing that it was embarking on a repricing scheme that was severely undermining those relationships because, in the absence of such a disclosure, a reasonable investor would conclude that no such repricing scheme was occurring. *See Billhofer v. Flamel Techs., SA,* 663 F. Supp. 2d 288, 298 (S.D.N.Y. 2009) (defendant's "omission of any contrary statements does necessarily imply an opposite conclusion: that [defendant] and its partner [] were not in possession of material information . . . that would detract from the 'success' of [defendant's product]"); *Suprema,* 438 F.3d at 269 (registration statement must disclose information necessary to make other statements therein not misleading).

178 (sustaining Section 11 claims and finding that plaintiffs adequately pled defendants' challenged misstatements and omissions were material, where restatement of past financial results resulted in $6 million adjustment); *see also Litwin*, 634 F.3d at 711, 720 (holding that plaintiff had sufficiently pled materiality with allegations that the defendant-company had failed to disclose a potential problem with an investment representing 3.5% of its total assets); *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 640 n.16 (3d Cir. 1989) ("a violation of consumer laws that is substantially likely to be significant to a reasonable investor is a fact that must be disclosed, even though the legal consequence of the violation may be a contingency").

### 5. The Registration Statement Contained False and Misleading Statements and Omissions Concerning Advanta's Failure to Plan for an Early Amortization Event

In both the February 2009 Amendment and the March 2009 Amendment, the Registration Statement put the issue of how an amortization of Advanta's credit card portfolio would impact Advanta in play but failed to disclose that Advanta's management had failed to develop a plan for dealing with such an event:

- "Early amortization for our business credit card master trust is avoidable and the Company does not expect it to occur.  The Company has repricing options and other structuring alternatives available to it."  ¶59.

- "Also, we are under no obligation to fund new receivables on our balance sheet whether or not there is an early amortization.  We can do so for the accounts we choose and to the degree we choose.  Therefore, we do not expect an early amortization to cause a serious reduction of our strong levels of liquidity.  Our expectation is that we would use our tools to prevent an early amortization unless we conclude that it is to our advantage not to do so."  ¶63.

It was misleading for the Registration Statement to make positive assurances regarding the effects of early amortization without disclosing that, in fact, Advanta had not developed a plan for responding to an early amortization and had not included such a plan in its capital planning models.  ¶6. *Shapiro*, 964 F.2d at 282.  As the Third Circuit held, "if a defendant represents that its lending practices are 'conservative' and that its collateralization is 'adequate,' the securities laws are clearly implicated if it nevertheless intentionally or recklessly omits certain facts

contradicting these representations." *Id.* at 282.[15]

### 6. The Registration Statement Contained False and Misleading Statements and Omissions Concerning Advanta Credit Capabilities

The Registration Statement made numerous statements regarding Advanta's credit capabilities. *See, e.g.,* ¶¶ 46, 47, 57, 61.  These statements were false and misleading because, as the FDIC later found, Advanta was being run in an "unsafe" and "unsound" manner and these failings caused "significant financial deterioration."  ¶6.

### C. Plaintiffs Primarily Challenge Misstatements and Omissions of Present and Historical Fact

The Advanta Defendants' primary legal argument in support of dismissal is the sweeping claim that "[t]he vast bulk of the challenged statements – relating to future credit and receivable losses, early amortization, capital levels and strength of financial condition – are plainly statements of belief or opinion, or forward-looking statements."  Def. Br. at 17.  This assertion mixes together two distinct legal concepts.  Opinions are subjective statements that "purport[] to express what is consciously on the speaker's mind."  *Virginia Bankshares, Inc. v. Sandberg,* 501 U.S. 1083, 1090 (1991).  By contrast, forward-looking statements are projections and statements of expectation.  *See* 15 U.S.C. §78u-5(i)(1).  The Advanta Defendants argue that, with respect to both categories of statements, Plaintiffs can only proceed if they allege facts demonstrating a "lack of a genuine belief in the statements when made."  Def. Br. at 17.

This argument does not justify dismissal for two reasons.  First, it admittedly does not apply to many of the statements challenged by Plaintiffs.  The Advanta Defendants do not even attempt to argue that the challenged statements concerning: (1) Advanta's methodology for calculating its loan losses, (2) overstated earnings or (3) Advanta's illegal repricing scheme can be characterized as either forward-looking or opinions.  *See id.* at 17-19.  Thus, the Advanta Defendants' argument fails to establish that Plaintiffs have not pled a *prima facie* Section 11

---

[15] *Shapiro*'s references to *scienter* should be disregarded because that portion of the decision analyzed a claim brought pursuant to Section 10(b), in which *scienter* is an element, not Section 11, in which it is not.

claim.

Second, the Advanta Defendants are incorrect as to the statements they do address. Most glaringly, the Advanta Defendants argue that the provision and allowance for loan losses, which were reported as part of Advanta's financial statements, were "forward-looking" because they were merely "predict[ions]" concerning future losses. *See id.* at 17-18. That is incorrect. Advanta's loan loss provisions and allowances were prepared as part of Advanta's financial statements and were meant to indicate the present state of Advanta's probable loan losses as indicated by an analysis of Advanta's present credit statistics pursuant to a defined set of rules. *See* ¶¶53, 64. As such, they are excluded from the statutory safe harbor for forward-looking statements. *See* 15 U.S.C.A. §77z-2 (excluding statements "included in a financial statement prepared in accordance with generally accepted accounting principles."); *In re PMA*, 2005 WL 1806503, at **5-6 (rejecting argument that misstatements regarding loss reserves were forward-looking); *see also Slayton v. American Exp. Co.*, 604 F.3d 758, 768 n.4 (2d Cir. 2010) (observing that the "statutory safe harbors by their terms do not apply to forward-looking statements included in financial statements prepared in accordance with U.S. GAAP").

Moreover, even if the Court were to deem Advanta's loan loss provisions "forward-looking," the Advanta Defendants would still not be entitled to dismissal as to these statements. Forward-looking statements are actionable if a plaintiff adequately pleads that they lacked a "reasonable basis" by pointing to facts that could reasonably support the inference that "the forecast was made with either (1) an inadequate consideration of the available data or (2) the use of unsound forecasting methodology." *See Burlington*, 114 F.3d at 1429.[16] In this case, the FDIC found that Advanta failed to adequately consider available data, including "actual" changes in portfolio behavior associated with the repricing, the ongoing downturn and the cut-off in credit card account utility and that, as a result, Advanta's allowance was inadequate. ¶6. These findings by a government agency are more than sufficient to show that, for pleading

---

[16] *Burlington* addressed a Section 10(b) claim that was subject to the heightened pleading standards not applicable in this case.

purposes, Advanta's loan loss provisions and allowance lacked a reasonable basis.

The Advanta Defendants also claim that their statements regarding early amortization are forward-looking. *See* Def. Br. at 18. This argument misses the point because Plaintiffs allege that the Registration Statement omitted present facts about Advanta's failure to have a plan for dealing with early amortization that cannot be treated as forward-looking. The statements in the Registration Statement concerning early amortization contained a mix of present and forward-looking statements. For example, the February 2009 Amendment states:

> "Early amortization for our business credit card master trust is avoidable and the Company does not expect it to occur. The Company has repricing options and other structuring alternatives available to it."

¶59. The representations that early amortization is "avoidable" and that Advanta has other options are present facts that could be verified at the time of the February 2009 Amendment. *See In re Viropharma, Inc., Sec. Litig.*, No. CIV.A. 02-1627, 2003 WL 1824914, at *7 (E.D. Pa. Apr. 7, 2003) (statements are not forward-looking if their "truth or falsity" is "determinable at the time they were made"). That Advanta failed to have a plan for dealing with early amortization was also a present fact verifiable at the time of the February 2009 Amendment. *See* ¶59.

The Advanta Defendants' statements regarding the effects of early amortization triggered a duty to disclose the fact that, at the time the statements were made, Advanta did not have a plan for dealing with an early amortization. *See infra* pgs. 22-23. Even if some aspect of the above-quoted statement were forward-looking, the omission of the present fact that Advanta lacked a plan for dealing with early amortization would remain a regular omission of present fact and would not be treated as forward looking. *Institutional Investors Group v. Avaya, Inc.*, 564 F.3d 242, 255 (3d Cir. 2009) ("[A] mixed present/future statement is not entitled to the safe harbor with respect to the part of the statement that refers to the present"); *id.* ("The mere fact that a statement contains some reference to a projection of future events cannot sensibly bring the statement within the safe harbor if the allegation of falsehood relates to non-forward-looking aspects of the statement."); *In re U.S. Interactive, Inc. Sec. Litig.,* No. 01-CV-522, 2002 WL

1971252, at *18, n.11 (E.D. Pa. Aug. 23, 2002) ("Defendants cannot convert a larger statement containing a series of misstatements about current factual conditions into one forward-looking statement simply by including one statement that is clearly forward looking."); *see In re Cell Pathways, Inc.*, No. 99-725, 2000 WL 805221, at *11 (E.D. Pa. June 20, 2000) ("'allegations based upon omissions of existing facts or circumstances do not constitute forward looking statements'") (citation omitted).   Thus, the Advanta Defendants' argument does not rebut Plaintiffs' allegations that the failure to disclose the lack of a plan for addressing early amortization was a material omission.

**D.      The PSLRA Safe Harbor Does Not Apply to Any of Defendants' Misstatements or Omissions Because They Were Not Accompanied by Meaningful Cautionary Language**

The PSLRA safe harbor applies: (1) "only to a forward-looking statement"; (2) that is "identified as a forward-looking statement," and (3) is "accompanied by meaningful cautionary statements."   *See* Section 27A(c)(1)(A)(i) of the 1933 Act.   The Advanta Defendants cannot meet the "stringent showing" required for dismissal on the pleadings under the safe harbor.   *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 947 (9th Cir. 2005).   Even if the Court were to find that certain of the representations challenged by Plaintiffs are forward-looking (which they are not, as demonstrated above), "[t]here must be sufficient cautionary language or risk disclosure [such] that reasonable minds could not disagree that the challenged statements were not misleading.'"   *Id.* (citation omitted); *accord Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1214 (1st Cir. 1996); *Asher v. Baxter Int'l Inc.*, 377 F.3d 727, 734 (7th Cir. 2004).   As set forth below, the purported "cautionary language" is insufficient.

Even if the Advanta Defendants' statements were forward-looking, the Advanta Defendants have not pointed to cautionary language sufficient to meet the high standard required on a motion to dismiss to find that such language renders those statements immaterial.   "The question [of] whether . . . cautionary language is sufficiently 'meaningful' raises fact issues that are improperly resolved" at the motion to dismiss phase.   *In re Lucent Techs., Inc. Sec. Litig.*,

217 F. Supp. 2d 529, 557 (D.N.J. 2002); *see also EP Medsystems, Inc. v. EchoCath, Inc.*, 235 F.3d 865, 877 (3d Cir. 2000) (reversing dismissal of complaint, in part based on finding that safe harbor did not apply, stating "[w]hether [cautionary statements] were sufficient to neutralize the initial representation of the four imminent contracts made in the August 1996 meeting is not so obvious as to be decided as a matter of law").  Where courts rule on the sufficiency of cautionary language at the motion to dismiss phase, defendants face a high burden to identify appropriate cautionary language which "must be substantive and tailored to the specific future predictions" made in the allegedly misleading statement.  *Id.* at 872.  As stated by the Third Circuit, "cautionary language must be 'extensive yet specific.'"  *Semerenko*, 223 F.3d at 182-83 (holding that cautionary language was too general because Third Circuit law "requires that the language bespeaking caution relate directly to that by which plaintiffs claim to have been misled");  *see also City of Hialeah Emps.' Ret. Sys. and Laborers Pension Trust Funds for No. Calif. v. Toll Bros., Inc.*, No. 07-1513, 2008 WL 4058690, at *4 (E.D. Pa. Aug. 29, 2008) (finding that "Plaintiffs have adequately pled that any cautionary statements accompanying Defendants' written and oral projections were not meaningful in light of Defendants' alleged failure to disclose then-existing material facts").

The Advanta Defendants cite two examples of purported cautionary language from Advanta's 2007 and 2008 Form 10-Ks:

- Social, economic, environmental and geographic factors can affect levels of customer spending, credit card payments and other customer behaviors, as well as our ability to predict customer behaviors, in ways that could negatively impact our asset quality and profitability. . . . Any of these factors could negatively impact the performance of our business credit card portfolio and our profitability through, among other things, . . . increases in delinquencies, . . . increases in charge-offs and credit losses and changes in payment patterns.

- The allowance evaluation is inherently subjective as it requires estimates that are susceptible to significant revision as more information becomes available. . . . A 10% change in the allowance for business credit card receivable losses at December 31, 2007 would impact the allowance for receivable losses . . . by $6.7 million.

Def. Mem. at 21.  Neither of these examples of cautionary language reveals ***any specifics*** about the repricing program, Advanta's failure to follow its own stated methodology for calculating

credit losses or Advanta's failure to have a plan for addressing early amortization.   There is simply no basis to find that these "cautionary statements" were tailored or specific.   They are precisely the type of "vague or blanket disclaimer[s]" that do not qualify as meaningful cautionary language.   *In re Donald J. Trump Casino Sec. Litig. - Taj Mahal Litig.*, 7 F.3d 357, 371 (3d Cir. 1993).   Thus, safe harbor protection is not available.[17]

**E.     Plaintiffs Have Adequately Pled Claims Under Sections 12 and 15 of the 1933 Act**

The Plaintiffs have adequately pled violations of Sections 12(a)(2) and 15.   Section 12(a)(2) provides civil liability for individuals who sell securities by means of a materially false prospectus or oral communication.   15 U.S.C. §77l(a)(2).   The Advanta Defendants merge their discussion of the Section 11 and Section 12(a)(2) claims.   *See* Def. Mem.   Accordingly, in refuting the Advanta Defendants' attack on the Section 11 claim in Sections B-D above, Plaintiffs have also demonstrated the adequacy of the Section 12(a)(2) claim.   The sole basis upon which the Advanta Defendants seek dismissal of the Section 15(a) claim is the contention that the Section 11 and 12(a)(2) claims "fail as a matter of law." Def. Mem. at 30.   As demonstrated herein, however, Plaintiffs in fact adequately pled violations of Section 11 and 12(a)(2) against all Advanta Defendants.   Thus, the Advanta Defendants' Motion as to the Section 15(a) claim must also be denied.

---

[17] For the same reasons that the PSLRA Safe Harbor defense does not apply, the narrow "bespeaks caution" doctrine, a common law doctrine that largely tracks the provisions of the PSLRA Safe Harbor, does not apply.

## IV.    CONCLUSION

For the foregoing reasons, the Court should deny the Advanta Defendants' Motion to Dismiss in its entirety.[18]

Dated:  April 28, 2011

SCOTT+SCOTT LLP


/s/ *Thomas L. Laughlin IV*
THOMAS L. LAUGHLIN IV (*Pro Hac Vice*)
500 Fifth Avenue, Floor 40
New York, NY 10110
Telephone: (212) 223-6444
Facsimile: (212) 223-6334

SCOTT+SCOTT LLP
GEOFFREY M. JOHNSON
12434 Cedar Road, Suite 12
Cleveland Heights, OH 44106
Telephone: (216) 229-6088
Facsimile: (216) 229-6092


THE WEISER LAW FIRM, P.C.
ROBERT B. WEISER (PA #81575)
BRETT D. STECKER (PA #86242)
JEFFREY J. CIARLANTO (PA #205838)
121 N. Wayne Avenue, Suite 100
Wayne, PA 19087
Telephone:  (610) 225-2677
Facsimile:  (610) 225-2678


*Counsel for Lead Plaintiffs*

---

[18] In the event the Court determines the Complaint is deficient in any respect, Plaintiffs respectfully request an opportunity to move for leave to amend in accordance with Fed. R. Civ. P. 15(a) ("leave shall be freely given when justice so requires"). *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("It is the usual practice upon granting a motion to dismiss to allow leave to replead.").

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 28, 2011, the foregoing Plaintiffs' Memorandum of Law in Opposition to the Advanta Defendants' Motion to Dismiss the Amended Class Action Complaint was filed electronically with the Court's Case Management/Electronic Case Files (CM/ECF) docketing system.  Notice of this filing will be sent to all parties by operation of the CM/ECF system.  Parties may access this filing through the CM/ECF system.

/s/ *Thomas L. Laughlin IV*
SCOTT+SCOTT LLP
Thomas L. Laughlin IV
500 Fifth Avenue, Floor 40
New York, NY 10110
Telephone: (212) 223-6444
Facsimile: (212) 223-6334

*Counsel for Plaintiffs*
