UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

---------------------------------------------------------- X
                                                                      :
WILLIAM E. UNDERLAND and MARK    :
SCHALLER, *on behalf of themselves and all*  :
*others similarly situated,*                               :
                                                                      :
                            Plaintiffs,                            :
                                                                      :
    - against-                                          :  Case No. 2:10-cv-03621 (CMR)
                                                                      :
DENNIS ALTER, WILLIAM A. ROSOFF,  :
PHILIP M. BROWNE, DAVID B.             :
WEINSTOCK, ROBERT S. BLANK, MAX  :
BOTEL, THOMAS COSTELLO, DANA     :
BECKER DUNN, ROBERT LUBNER, OLAF :
OLAFSSON, MICHAEL STOLPER and    :
KPMG LLP,                                             :
                                                                      :
                            Defendants.                       :
---------------------------------------------------------- X

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO KPMG LLP'S
MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**

## TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................................1

II. ARGUMENT .......................................................................................................................4

    A. Standard on a Motion to Dismiss on the Pleadings .......................................................4

    B. Plaintiffs Have Pled a Plausible Violation of Section 11 By KPMG ............................5

        1. Plaintiffs Set Forth a *Prima Facie* Case With Allegations That KPMG Certified Advanta's False Statements ...............................................................5

        2. KPMG Certified Advanta's False Loan Loss Provision, Allowance and Net Income ....................................................................................................5

            a. GAAP and SEC Regulations Required Advanta to Adjust Its Loan Loss Provision to Reflect Credit Data Indicative of Higher Loan Losses ..................................................................................6

            b. As Described By the FDIC, Advanta Failed to Account for Known Adverse Credit Data Indicating That Higher Loan Losses Were Probable ................................................................................7

        3. The False Financial Statements Certified by KPMG Were Statements of Fact, Not Opinions ....................................................................................8

            a. The Weight of Authority Holds That the Financial Statements Were Statements of Fact ...................................................................8

            b. Common Sense Dictates That Advanta's Financial Statements Were Statements of Fact ..................................................................10

            c. KPMG's Argument Is Inconsistent With Third Circuit Law ..............11

            d. Even If the Financial Statements Were "Opinions," Plaintiffs' Allegations Would Be Sufficient ..........................................................13

        4. None of KPMG's Other Arguments Justifies Dismissal .................................14

III. CONCLUSION ...................................................................................................................14

## TABLE OF AUTHORITIES

**Cases**                                                                                                  **Pages**

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)..................................................................................................4

*Belmont Holdings Corp. v. Sun Trust Banks, Inc.*,
    No. 1:09-cv-1185-WSD, 2010 WL 3545389 (N.D. Ga. Sept. 10, 2010) ................................13

*Eisenberg v. Gagnon*,
    766 F.2d 770 (3d Cir. 1985)..................................................................................................14

*Fait v. Regions Fin. Corp.*,
    712 F. Supp.2d 117 (S.D.N.Y 2010)......................................................................................13

*Freudenberg v. E*Trade Fin. Corp.*,
    712 F. Supp. 2d 171 (S.D.N.Y. 2010)....................................................................................10

*Herman & MacLean v. Huddleston*,
    459 U.S. 375 (1983)..................................................................................................................2

*In re Adams Golf, Inc. Sec. Litig.*,
    381 F.3d 267 (3d Cir. 2004)....................................................................................................4

*In re American Intern. Group, Inc. 2008 Sec. Litig.*,
    741 F. Supp. 2d 511 (S.D.N.Y. 2010)......................................................................................9

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
    381 F. Supp. 2d 192 (S.D.N.Y.2004).......................................................................................9

*In re Burlington Coat Factory Sec. Litig.*,
    114 F.3d 1410 (3d Cir. 1997)........................................................................................ *passim*

*In re CitiGroup Inc. Bond Litig.*,
    723 F. Supp. 2d 568 (S.D.N.Y. 2010).......................................................................................9

*In re Constar Int'l Inc. Sec. Litig.*,
    585 F.3d 774 (3d Cir. 2009)....................................................................................................5

*In re Daou Sys., Inc.*,
    411 F.3d 1006 (9th Cir. 2005) .................................................................................................7

*In re PMA Capital Corp. Sec. Litig.*,
    No. 03-6121, 2005 WL 1806503 (E.D. Pa. July 27, 2005) .....................................................9

*In re Ravisent Techs., Inc. Sec. Litig.*,
    No. Civ. A. 00-CV-1014, 2004 WL 1563024 (E.D. Pa. July 13, 2004)..................................4

*In re Suprema Specialties, Inc. Sec. Litig.*,
    438 F.3d 256 (3d Cir. 2006)......................................................................................2, 5

*In re Viropharma, Inc., Sec. Litig.*,
    No. CIV.A. 02-1627, 2003 WL 1824914 (E.D. Pa. Apr. 7, 2003) ............................8

*In re Wash. Mut., Inc. Sec., Deriv. & ERISA Litig.*,
    694 F. Supp. 2d 1192 (W.D. Wash. 2009).................................................5, 7, 9

*In re Wash. Mut., Inc. Sec., Deriv. & ERISA Litig.*,
    259 F.R.D. 490 (W.D. Wash. 2009) ................................................................10, 12

*In re Westinghouse Sec. Litig.*,
    90 F.3d 696 (3d Cir. 1996).......................................................................................12, 13

*Local 295/Local 851 IBT Employer Group Pension Trust and Welfare Fund v. Fifth Third Bancorp.*,
    731 F. Supp. 2d 689 (S.D. Ohio 2010) ....................................................................10

*Phillips v. County of Allegheny*,
    515 F.3d 224 (3d Cir. 2008)......................................................................................5

*Shapiro v. UJB Fin. Corp.*,
    964 F.2d 272 (3d Cir. 1992)......................................................................................13

*Tracinda Corp. v. Daimlerchrysler AG*,
    197 F. Supp. 2d 42 (D. Del. 2002)............................................................................5

*Virginia Bankshares v. Sandberg*,
    501 U.S. 1083 (1991)................................................................................................11

**Statutes**

15 U.S.C.A. §77k ...........................................................................................................3, 5

17 C.F.R. §210.4–01(a)(1)..........................................................................................3, 8, 11

I.      INTRODUCTION

This is a class action alleging violations of the Securities Act of 1933 (the "1933 Act") arising out of the fact that defendants caused the Advanta Corporation ("Advanta") to sell **$500 million** worth of "RediReserve" variable rate certificates and investment notes (collectively, the "RediReserve Notes") to individual retail investors by means of a false registration statement (as amended, the "Registration Statement")[1] that dramatically overstated Advanta's financial results, materially misrepresented Advanta's business practices and failed to disclose that Advanta was systematically engaging in illegal interest rate hikes on over 1 million existing credit card accounts.

Along with Advanta's directors,[2] KPMG LLP ("KPMG") has been named as a defendant in this action because, as Advanta's outside auditor, KPMG certified Advanta's false financial statements in the Registration Statement and falsely represented that those financial statements complied with "U.S. generally accepted accounting principles" ("GAAP") and "present[ed] fairly, in all material respects, the financial position of [Advanta]."  ¶¶55, 66.  KPMG's representations were false because, as the Federal Deposit Insurance Commission ("FDIC") later revealed in its Material Loss Review, Advanta's loan loss provision, allowance and net income were in fact not prepared in accordance with GAAP.  SFAS 5 required Advanta to recognize additional loan losses by taking a provision when its own internally compiled credit data indicated that such losses were probable.  But as the FDIC observed, by November 2008 – prior to the filing of the March 2009 Amendment – Advanta was failing to consider its deteriorating

---

[1] The RediReserve Notes were and are traceable to a Registration Statement filed with the U.S. Securities and Exchange Commission (the "SEC") on August 18, 2006 as amended on February 28, 2007 (the "2007 Amendment"), February 28, 2008 (the "2008 Amendment"),  February 9, 2009 (the "February 2009 Amendment"), and March 13, 2009 (the "March 2009 Amendment") (collectively, the "Amendments").  ¶¶29, 85.  (All references to ¶__ or ¶¶__ are to Plaintiffs' Amended Class Action Complaint filed January 13, 2011).

[2] The Advanta directors who signed the false Registration Statement (the "Advanta Defendants") filed a separate motion to dismiss to which Plaintiffs have filed a separate opposition brief.  Plaintiffs incorporate herein the Factual Background section from their brief in opposition to the motion to dismiss filed by the Advanta Defendants.

credit data when calculating its loan losses. ¶6. Specifically, Advanta failed to incorporate into its allowance for loan and lease methodology:

- Anticipated and *actual changes* in portfolio behavior associated with the continued economic downturn, Advanta's illegal credit card repricing scheme and the cut-off in credit card account utility;

- The impact of the early amortization of the bank's securitization trust;

- The impact of management's change to a 120-day charge-off period.

¶6. Because Advanta did not calculate its loan losses in the manner required by GAAP, Advanta's loan loss allowance was, according to the FDIC, "inadequate." *Id.*; ¶51. And, because Advanta's loan loss provisions were charged against its net income, Advanta's earnings were distorted and not in compliance with GAAP. *See* ¶¶53, 64. Thus, Advanta's financial statements were not in compliance with GAAP and KPMG's false representation to the contrary played a critical role in overstating Advanta's financial performance in the Registration Statement and misleading RediReserve Notes investors during the Class Period.

Accordingly, KPMG violated Section 11's stringent disclosure requirements. "Section 11 'was designed to assure compliance with the disclosure provisions of the Act by imposing a stringent standard of liability on the parties who play a direct role in a registered offering.'" *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 269 (3d Cir. 2006) (quoting *Herman & MacLean v. Huddleston*, 459 U.S. 375, 381-82 (1983)). "Section 11 is a virtually absolute liability provision[ ], which do[es] not require plaintiffs to allege that defendants possessed any *scienter*. If a plaintiff purchased a security issued pursuant to a registration statement, he need only show a material misstatement or omission to establish his *prima facie* case." *Suprema*, 438 F.3d at 269 (internal citations omitted).

Notably, Section 11 specifically provides for auditor liability in circumstances such as those presented in this case, stating that investors may properly assert claims against:

> "***every accountant***, engineer, or appraiser, or any person whose profession gives authority to a statement made by him, ***who has with his consent been named as having prepared or certified any part of the registration statement***, or as having prepared or certified any report or valuation which is used in connection with the registration statement, ***with respect to the statement in such registration statement, report, or valuation, which purports to have been prepared or certified by him***"

15 U.S.C.A. §77k(a)(4) (emphasis added).

Under the regulations promulgated by the U.S. Securities and Exchange Commission ("SEC") concerning filings made under the 1933 Act, "[f]inancial statements filed with the Commission which are not prepared in accordance with generally accepted accounting principles will be presumed to be misleading or inaccurate." 17 C.F.R. §210.4–01(a)(1). Here, Advanta's loan loss provision, allowance and net income figures, which were certified by KPMG, did not comply with GAAP and therefore were presumptively false. *Id.*

Very similar to the arguments of the Advanta Defendants, KPMG's primary "arguments" in support of dismissal are its characterization of Advanta's loss reserves as "opinions" and its assertion that, regardless of whether they were misstated under GAAP, loss reserves cannot be considered "false" within the meaning of Section 11 unless Plaintiffs allege facts showing that they were subjectively false. *See* KPMG Br. at 5-11. Thus, like the Advanta Defendants, KPMG is desperately trying to inject completely non-existent pleading standards into this case. KPMG's transparent attempt to improperly inject a *scienter* requirement into Plaintiffs' straightforward Section 11 claim fails because it is inconsistent with Third Circuit law, SEC regulations, and the weight of authority holding that a plaintiff adequately alleges a statement's falsity with allegations that it was inconsistent with GAAP. *See, e.g.*, *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420-21 (3d Cir. 1997) (holding that plaintiffs' allegations that financial statement did not comply with GAAP sufficiently pled falsity sufficient to withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6))[3]; 17 C.F.R. §210.4–01(a)(1).

---

[3] *Burlington* involved a securities fraud claim subject to heightened pleading standards not applicable in this case, where only negligence and strict liability claims have been asserted. *See id.* Consequently, while *Burlington's* analysis under Fed. R. Civ. P. 12(b)(6) is directly

KPMG's "defense" also fails as a matter of pure common sense. While the setting of loss reserves involves some exercise of judgment, it is hardly a "free-form" exercise guided only by the subjective beliefs of Advanta and KPMG. Rather, the setting of loss reserves is an analysis of present facts structured by a strict body of rules imposed by GAAP and federal regulations. Whether those rules were followed is a statement of verifiable fact. During the Class Period, RediReserve Notes investors relied on Advanta's publicly reported loss reserves and net income because KPMG represented that these rules were followed, so that these financial statements could be relied upon as a reasonable approximation of Advanta's financial status. *See, e.g., Burlington,* 114 F.3d at 1421 n. 9 ("earnings reports are among the pieces of data that investors find most relevant to their investment decisions. . . information about a company's past and current earnings is likely to be highly 'material.'") (internal citations omitted). Thus, compliance with GAAP is properly regarded as a statement -- not an "opinion" -- and Plaintiffs have pled a *prima facie* case based on their allegations that KPMG certified Advanta's false financial results. Accordingly, the Court should deny KPMG's motion to dismiss in its entirety.

## II. ARGUMENT
### A. Standard on a Motion to Dismiss on the Pleadings

Plaintiffs are entitled to proceed with their case as long as the complaint sets forth "a short and plain statement" that supports a plausible claim for relief. *See* Fed. R. Civ. P. 8(a); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiffs' claims are not subject to the heightened pleading standards of the Private Securities Litigation Reform Act ("PSLRA"). *See In re Adams Golf, Inc. Sec. Litig.*, 381 F.3d 267, 274 n.5 (3d Cir. 2004).

"The purpose of a Rule 12(b)(6) motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of a case." *In re Ravisent Techs., Inc. Sec. Litig.*, No. Civ. A. 00-CV-1014, 2004 WL 1563024, at *2 (E.D. Pa. July 13, 2004)

---

applicable, its subsequent analysis under Fed. R. Civ. P. 9(b) is not relevant because the pleading requirement imposed by that rule applies to allegations of fraud.

- 4 -

(citing *Tracinda Corp. v. Daimlerchrysler AG*, 197 F. Supp. 2d 42, 53 (D. Del. 2002)). When deciding a Rule 12(b)(6) motion to dismiss, a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008); *Suprema*, 438 F.3d at 269.

### B. Plaintiffs Have Pled a Plausible Violation of Section 11 By KPMG

#### 1. Plaintiffs Set Forth a *Prima Facie* Case With Allegations That KPMG Certified Advanta's False Financial Statements

Section 11 creates a private remedy for any purchaser of a security if "any part of the registration statement ... contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading[.]" 15 U.S.C. §77k(a). "[A] *prima facie* case under §11 is straightforward, requiring only a showing of a material misrepresentation or omission from a defendant's registration statement." *In re Constar Int'l Inc. Sec. Litig.*, 585 F.3d 774, 782 (3d Cir. 2009); *Suprema*, 438 F.3d at 269. Notably, Section 11 specifically provides that auditors like KPMG are liable for any misrepresentations in the Registration Statement prepared or certified by them. 15 U.S.C.A. §77k. Thus, Plaintiffs have set forth a *prima facie* case based on their allegations that KPMG certified Advanta's false loan loss provision, allowance and net income. *See In re Wash. Mut., Inc. Sec., Deriv. & ERISA Litig.*, 694 F. Supp. 2d 1192, 1222 (W.D. Wash. 2009) ("*WaMu*").

#### 2. KPMG Certified Advanta's False Loan Loss Provision, Allowance and Net Income

Advanta's loan loss provision, allowance and net income were part of Advanta's published financial statements and were certified by KPMG in the Registration Statement. *See, e.g.*, ¶¶52, 55, 56, 64, 66-67. These financial statements were false because, in violation of GAAP and SEC regulations, Advanta failed to incorporate into its allowance for loan and lease methodology anticipated and ***actual changes*** in portfolio behavior associated with the continued economic downturn, Advanta's illegal credit card repricing scheme, and the cut-off in credit card

account utility. ¶6. Advanta also failed to account for the impact of the early amortization of the bank's securitization trust and management's change to a 120-day charge-off period. *Id.*

          a.   GAAP and SEC Regulations Required Advanta to Adjust Its Loan Loss Provision to Reflect Credit Data Indicative of <u>Higher Loan Losses</u>

SFAS 5, a fundamental GAAP principle issued over thirty years ago, states that:

> An estimated loss from a loss contingency . . . shall be accrued by a charge to income if both of the following conditions are met:
>
>   a.    Information available prior to issuance of the financial statements indicates that it is probable that an asset had been impaired or a liability had been incurred at the date of the financial statements. It is implicit in this condition that it must be probable that one or more future events will occur confirming the fact of the loss.
>
>   b.    The amount of loss can be reasonably estimated.

Similarly, SEC Staff Accounting Bulletin No. 102, "Selected Loan Loss Allowance Methodology and Documentation Issues" (defined above as "SAB 102"), issued in July 2001, states in pertinent part: "It is critical that loan loss allowance methodologies incorporate management's current judgments about the credit quality of the loan portfolio through a disciplined and consistently applied process . . . . A registrant's loan loss allowance methodology generally should . . . [c]onsider all known relevant internal and external factors that may affect loan collectability . . . [and] be based on current and reliable data. . . ."

SFAS 5 and SAB 102 required Advanta to increase its loan provision and reduce earnings when information in its possession indicated that increased loan losses were probable. Indeed, Advanta's own description of its methodology for recognizing loan losses reflects these requirements:

> "The allowance for receivable losses is evaluated on a regular basis by management and is based upon management's review of the collectability of receivables in light of historical experience by receivable type, the nature and volume of the receivable portfolio, adverse situations that may affect the borrower's ability to repay and prevailing economic conditions."

¶53; *see also* ¶64. Thus, GAAP does not allow a company to ignore present credit data in setting

- 6 -

loss reserves.  Rather, a company's loss reserves must account for the objective facts known to it.

> b. As Described By the FDIC, Advanta Failed to Account for Known Adverse Credit Data Indicating That Higher Loan Losses Were Probable

As the FDIC stated in the Material Loss Review,[4] Advanta was not complying with GAAP or SEC regulations.  Rather than track probable losses in light of "historical experience" and "prevailing economic conditions," Advanta failed to adjust its loan loss provision to reflect "anticipated and actual changes" in portfolio behavior associated with: (1) the economic downturn, (2) Advanta's decision to illegally increase interest rates on cardholders, and (3) the impact of management's change to a 120-day charge-off period.  ¶6.  The FDIC further concluded that as a result of its failure to properly acknowledge loan losses as they occurred, Advanta's allowance for loan losses was overstated.  ¶6.  As a corollary, Advanta's income was also overstated because the provision was charged against earnings.  *See* ¶¶6, 52-53, 64.

Plaintiffs adequately allege that these GAAP violations were material enough to render Advanta's financial statements false.  At the pleading stage, "[p]laintiffs are required only to 'allege enough information so that a court can discern whether the alleged GAAP violations were minor or technical in nature, or whether they constituted widespread and significant inflation of revenue.'"  *WaMu,* 694 F. Supp. 2d at 1222 (citing *In re Daou Sys., Inc.*, 411 F.3d 1006, 1017 (9th Cir. 2005); *see also Burlington*, 114 F.3d at 1421 ("it is a factual question whether [the company's] accounting practices were consistent with GAAP.").  Plaintiffs' allegations support the reasonable inference that violations were widespread.  Advanta repriced 68% of its credit card portfolio between June 2007 and November 2008, sometimes hiking rates as high as 37%, and these changes made it "very difficult for customers already struggling to make their minimum payments to cure any outstanding delinquency."  ¶49.  It can reasonably be inferred that a repricing campaign of this magnitude and severity would substantially and negatively impact Advanta's payment patterns, so that ignoring these impacts would significantly distort

---

[4] The FDIC's Material Loss Review is before this Court as the Advanta Defendants' Exhibit H, Dkt. 38-2.

Advanta's loan loss provision. This inference is bolstered by the FDIC's determination that Advanta's allowance was inadequate as of November 2008 and its designation of this failure as a major flaw contributing to Advanta's collapse. ¶¶6, 49; Material Loss Review (Advanta Defendants' Ex. H) at Pages 14, 16 of 91.

### 3. The False Financial Statements Certified by KPMG Were Statements of Fact, Not Opinions

#### a. The Weight of Authority Holds That the Financial Statements Were Statements of Fact

Seeking an exception to the general rule that Section 11 plaintiffs need not plead *scienter*, KPMG claims Advanta's loss reserves, and apparently, the net income figures affected by those loss reserves, were "opinions" and cannot be considered false unless they were subjectively false. *See* KPMG Br. at 5-11. KPMG's argument is fatally flawed, however, because Advanta's false financial statements were statements of fact that either were or were not calculated in accordance with GAAP. Whether Advanta's financial statements complied with GAAP was a present fact that could be determined contemporaneously by evaluating Advanta's process for setting loss reserves and deciding whether that process met the requirements of GAAP. *See In re Viropharma, Inc., Sec. Litig.*, No. CIV.A. 02-1627, 2003 WL 1824914, at *7 (E.D. Pa. Apr. 7, 2003) (statements are not forward-looking if their "truth or falsity" is "determinable at the time they were made"). Indeed, the FDIC did just that and determined that Advanta's methodology for calculating loan losses was insufficient because it ignored so much adverse credit data. ¶¶6, 49; Material Loss Review (Advanta Defendants' Ex. H) at Pages 14, 16 of 91.

Since the financial statements certified by KPMG did not comply with GAAP as described above, they were false and actionable under Section 11. *See, e.g., Burlington*, 114 F.3d at 1420-21; 17 C.F.R. §210.4–01(a)(1). Contrary to KPMG's assertions, it is uncontroversial that "where a plaintiff has made well-pleaded allegations that an accountant blessed financial statements that violated certain identified GAAP principles and were 'fundamentally misleading to investors,' it is inappropriate to dispose of the claims at the motion

to dismiss stage." *In re American Intern. Group, Inc. 2008 Sec. Litig.*, 741 F. Supp. 2d 511, 542 (S.D.N.Y. 2010) (citation omitted) (sustaining Section 11 claim against auditor).

In the context of Section 11, a number of other courts (including this Court) have recognized that a failure to present loan losses in compliance with GAAP is a misstatement of fact -- not opinion. For example, in *WaMu*, plaintiffs' Section 11 claim against an auditor was sustained based on allegations that the auditor certified a bank's false allowance for loan losses. 694 F. Supp. 2d at 1222-24. Like KPMG here, the auditor in *WaMu* argued that the financial statements at issue were "opinions," and that the plaintiffs were required to allege subjective falsity. *Id.* at 1223. However, the U.S. District Court for the Western District of Washington rejected that argument, holding that the auditor's representation that "the financial statements were presented in conformity with accounting principles generally accepted in the United States of America is an actionable statement of fact" that was "false because the financial statements were not prepared in conformity with GAAP, given the improper understatement of the Allowance." *Id.* at 1224 (citing *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 381 F. Supp. 2d 192, 241 and 243 (S.D.N.Y.2004)).

In *In re PMA Capital Corp. Sec. Litig.*, No. 03-6121, 2005 WL 1806503 (E.D. Pa. July 27, 2005), this Court sustained plaintiffs' Section 11 claim where plaintiffs alleged it was misleading to state that the company's financials were prepared in accordance with GAAP. *Id.* at **15-16. In doing so, this Court treated the alleged misrepresentation as one of fact, not opinion. *See id.* ("Whether or not a company sets loss reserves in compliance with GAAP can have significance to a reasonable investor contemplating the purchase of securities. Consequently, such statements are misleading and may be actionable under the Securities Act."). *Id.* at *16.

In *In re CitiGroup Inc. Bond Litig.*, 723 F. Supp. 2d 568 (S.D.N.Y. 2010), a Section 11 claim was sustained based on the plaintiffs' allegations that a bank's "Allowance for Loan Losses" were "actionable as materially misleading" because they did not comply with GAAP. *Id.* at 592. The U.S. District Court for the Southern District of New York treated the alleged

misstatement as one of fact, not opinion, holding that "the allegations as set forth in the complaint identify material statements regarding Citigroup's financial health. . . Specifically, the complaint identifies a GAAP requirement that Citigroup account not solely for its current losses but also for those likely to occur in the future and sets forth specific factual allegations in support of a finding that Citigroup failed to do so. . . . Accordingly, the complaint plausibly alleges that Citigroup's loan loss reserves failed to accurately account for losses likely to incur, and, as such materially misled investors about the company's financial health." *Id.*[5]

> b. Common Sense Dictates That Advanta's Financial Statements Were Statements of Fact

Moreover, common sense dictates that financial statements purportedly prepared in accordance with GAAP are statements of fact. These statements were hard numbers, not soft descriptions of the state of Advanta's business. The 2008 Amendment represented that Advanta had a net income of $72 million and a loan loss provision of $58 million. ¶52. The March 2009 Amendment represented that Advanta had a net income of negative $44 million and a loan loss provision of $123 million. ¶64. These figures are relied on because they have been purportedly prepared according to the standards imposed by GAAP and, therefore, can reasonably be relied upon as an approximation of a company's true financial status. As the Third Circuit has recognized, investors rely on financial statements as factual statements concerning the financial status of companies. "A company's past and current earnings is likely to be highly 'material'" to investors. *See Burlington*, 114 F.3d at 1421 n. 9; *id.* (citing with approval an academic finding that the "market places an 'enormous emphasis' on earnings reports.").

Similarly, the purpose of GAAP is to ensure that these critical financial statements are

---

[5] *See also Local 295/Local 851 IBT Employer Group Pension Trust and Welfare Fund v. Fifth Third Bancorp.*, 731 F. Supp. 2d 689, 706 (S.D. Ohio 2010) (finding alleged misstatements regarding loan loss provisions were material under Section 11); *In re Wash. Mut., Inc. Sec., Deriv. & ERISA Litig.*, 259 F.R.D. 490, 507 (W.D. Wash. 2009) ("*WaMu II*"), (holding that Section 11 claim was adequately pled where plaintiffs alleged that company was "under-provisioning its Allowance [for loan losses] and overstating its net income"; *Freudenberg v. E*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 188 (S.D.N.Y. 2010).

reasonably reliable from a factual standpoint. The Financial Accounting Standards Board ("FASB"), the designated organization in the private sector for establishing standards of financial accounting that govern the preparation of financial reports by nongovernmental entities, states that the purpose of financial accounting standards (such as GAAP) is to generate "decision-useful information to investors and other users of financial reports."[6]; *see also Burlington*, 114 F.3d at 1421 n. 10 (stating that GAAP sets the "range of reasonable alternatives that management can use"). Further, the SEC mandates that financial statements comply with GAAP or be deemed misleading. 17 C.F.R. §210.4–01(a)(1).

Thus, financial statements purportedly prepared in compliance with GAAP stand in direct contrast to "opinions." As KPMG admits, "a material misstatement of *opinion* is by its nature a false statement, **not about the objective world**, but about the defendant's own belief." *See* Def. Br. at 9 (emphasis added and citation omitted). For opinions the issue is whether the speaker misstated the "psychological fact of the speaker's belief in what he says." *See Virginia Bankshares v. Sandberg*, 501 U.S. 1083, 1095 (1991). Advanta's loss reserves and net income have everything to do with the "objective world" -- in fact, they are only relevant information to the extent they reasonably reflected the true facts concerning Advanta. That does not change merely because some discretion is exercised in setting reserves because loss reserves still must be set according to a verifiable methodology and plaintiff may plead falsity by showing that the methodology was not followed at the time. *See Burlington*, 114 F.3d at 1429 (holding that a plaintiff could plead falsity by showing that statement was made "with either (1) an inadequate consideration of the available data or (2) the use of unsound forecasting methodology.")[7]

### c. KPMG's Argument Is Inconsistent With Third Circuit Law

Try as it might, KPMG cannot disguise that its claims that Advanta's publicly reported

---

[6] http://www.fasb.org/facts/index.shtml#mission.

[7] In *Burlington,* the Third Circuit made this holding while applying the heightened pleading standards imposed on a forward-looking statement subject to the PSLRA, which do not apply in this case.

loss reserves and net income were "opinions" are inconsistent with Third Circuit holdings. As described above, this Circuit, SEC regulations, and the weight of caselaw hold that a Section 11 plaintiff adequately pleads falsity with allegations that financial statements were not prepared in accordance with GAAP. *See infra* pgs. 8-10. KPMG's proposed rule is entirely inconsistent with this authority and would eviscerate the requirements of Section 11 in regards to auditors, because it would require a plaintiff to allege that Advanta's loss reserves and income were not prepared in accordance with GAAP **and that** KPMG subjectively believed that Advanta's financial statements were not prepared in accordance with GAAP.

KPMG cannot find a basis in Third Circuit law for imposing this added requirement because none exists. KPMG cites several Third Circuit decisions for the general proposition that the setting of loan losses involves discretion. *See* KPMG Br. at 5-7. But, as explained above, this fact alone does not render loan loss reserves "opinions" because they still must be prepared in accordance with GAAP. *See WaMu II*, 259 F.R.D. at 507 (sustaining Section 11 claim alleging violations of GAAP because "Although Allowance provisioning requires some exercise of judgment, allegations of misstatements regarding loan loss reserves are actionable under the Exchange Act…It follows that such allegations are also actionable under the more permissive pleading standards of the Securities Act.").

Indeed, this is underscored by the most recent Third Circuit decision cited by KPMG in connection with the issue. In *In re Westinghouse Sec. Litig.*, 90 F.3d 696 (3d Cir. 1996), the Third Circuit **reversed the district court's dismissal** of plaintiffs' Section 11 claim where plaintiffs alleged the company's loan loss reserves did not comply with GAAP because plaintiffs had adequately pled a material misstatement. *See id.* at 708, 710 (holding that "we think that there is a substantial likelihood that defendants' alleged misrepresentations-*i.e.,* that the loan loss reserves were established in compliance with GAAP and were believed to be adequate to cover expected future losses given the then-existing economic conditions-would have assumed actual

significance to a reasonable investor contemplating the purchase of securities.").[8]

*Shapiro v. UJB Fin. Corp.*, 964 F.2d 272 (3d Cir. 1992), a case frequently cited by KPMG, did not hold (contrary to KPMG's implications) that a loan loss provision was an "opinion" that could only be actionable if subjectively false. The vast bulk of the Third Circuit's analysis in *Shapiro* concerned a Section 10(b) securities fraud claim, which requires a showing of *scienter* and is subject to the heightened pleading requirements imposed by Fed. R. Civ. P. 9(b). As such, the analysis in *Shapiro* is not applicable to this case. The primary holding in *Shapiro* – that soft characterizations of a business, such as "asset quality was high" or underwriting practices were "conservative," can be actionable – is irrelevant. *Id.* at 964 F.2d at 283. Thus, nothing in *Shapiro* contradicts the weight of authority cited by Plaintiffs, including more recent Third Circuit authority, holding that Plaintiffs may plead that Advanta's financial statements were false based on allegations that they did not comply with GAAP.[9]

### d. Even If the Financial Statements Were "Opinions," Plaintiffs' Allegations Would Be Sufficient

Even assuming, *arguendo,* that Advanta's financial statements were "opinions," Plaintiffs' allegations would still be sufficient for pleading purposes because the Court could infer subjective falsity based on Plaintiffs' allegations. "When a representation is made by professionals or those with greater access to information or having a special relationship to investors making use of the information, there is an obligation to disclose data indicating that the opinion or forecast may be doubtful. When the opinion or forecast is based on underlying materials which on their face or under the circumstances suggest that they cannot be relied on

---

[8] *Westinghouse* appears to have analyzed Section 11 claims together with a related securities fraud claim brought pursuant to Section 10(b). *See id.* at 90 F.3d at 707 n. 7 Consequently, the Third Circuit's *Westinghouse* analysis contains references to *scienter* that are not applicable here because Plaintiffs in this action need only plead a material misstatement or omission.

[9] Two district court opinions cited by KPMG actually did hold that loss reserves were "opinions." *See Fait v. Regions Fin. Corp.*, 712 F. Supp.2d 117, 124-25 (S.D.N.Y 2010) and *Belmont Holdings Corp. v. Sun Trust Banks, Inc.*, No. 1:09-cv-1185-WSD, 2010 WL 3545389, at *6 (N.D. Ga. Sept. 10, 2010). But these two decisions run counter to the weight of authority discussed by Plaintiffs and did not adequately consider the fact that adherence to GAAP standards is statement of present fact. Accordingly, these two decisions should be disregarded.

without further inquiry, then the failure to investigate further may support [ ] an inference that when [the defendant] expressed the opinion it had no genuine belief that it had the information on which it could predicate that opinion." *Eisenberg v. Gagnon*, 766 F.2d 770, 776 (3d Cir. 1985) (internal quotations and citations omitted). Here, the FDIC was able to uncover the facts showing that Advanta's financial statements did not comply with GAAP, which strongly indicates that Advanta's non-compliance was reasonably obvious and should have been investigated by KPMG.

### 4. None of KPMG's Other Arguments Justifies Dismissal

KPMG's offers several other weak "alternative" arguments, but none justify dismissal. Plaintiffs' claim is not based on hindsight. The FDIC found that Advanta's loan loss methodology was flawed and failed to account for adverse credit trends in November 2008, months before KPMG certified Advanta's false financial statements in the March 2009 Amendment. ¶49. This establishes that these contrary facts were available to KPMG prior to its false statements in the Registration Statement. Plaintiffs have adequately pled violations of accounting principles by pointing to adverse credit data that were not incorporated into Advanta's loan loss methodology. *See infra* pgs. 7-8. That is sufficient to state a plausible claim. In general, Advanta's compliance with GAAP is a factual issue not appropriate for resolution at the motion to dismiss stage. *Burlington*, 114 F.3d at 1421.

### III. CONCLUSION

For the foregoing reasons, the Court should deny KPMG's motion to dismiss in full.[10]

DATED: April 28, 2011     Respectfully submitted,

SCOTT+SCOTT LLP

/s/ *Thomas L. Laughlin IV*
THOMAS L. LAUGHLIN IV (*pro hac vice*)
500 Fifth Avenue, Floor 40

---

[10] In the event the Court determines the Complaint is deficient in any respect, Plaintiffs respectfully request an opportunity to move for leave to amend in accordance with Fed. R. Civ. P. 15(a).

       New York, NY 10110
       Telephone: (212) 223-6444
       Facsimile: (212) 223-6334

       SCOTT+SCOTT LLP
       Geoffrey M. Johnson
       12434 Cedar Road, Suite 12
       Cleveland Heights, OH 44106
       Telephone: (216) 229-6088
       Facsimile: (216) 229-6092

       THE WEISER LAW FIRM, P.C.
       Robert B. Weiser (PA #81575)
       Brett D. Stecker (PA #86242)
       Jeffrey J. Ciarlanto (PA #205838)
       121 N. Wayne Avenue, Suite 100
       Wayne, PA 19087
       Telephone: (610) 225-2677
       Facsimile: (610) 225-2678

       *Counsel for Lead Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 28, 2011, the foregoing Plaintiffs' Memorandum of Law in Opposition to KPMG LLP's Motion to Dismiss the Amended Class Action Complaint was filed electronically with the Court's Case Management/Electronic Case Files (CM/ECF) docketing system. Notice of this filing will be sent to all parties by operation of the CM/ECF system. Parties may access this filing through the CM/ECF system.

/s/ *Thomas L. Laughlin IV*
SCOTT+SCOTT LLP
Thomas L. Laughlin IV
500 Fifth Avenue, Floor 40
New York, NY 10110
Telephone: (212) 223-6444
Facsimile: (212) 223-6334

*Counsel for Plaintiffs*