**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

---------------------------------------------------------- :
WILLIAM E. UNDERLAND and MARK : 
SCHALLER, *on behalf of themselves and all* :
*others similarly situated,* :
  :
                           Plaintiffs, :
  :
         v. :      10-Civ.-3621 (CMR)
  :
DENNIS ALTER, WILLIAM A. ROSOFF, :
PHILIP M. BROWNE, DAVID B. :
WEINSTOCK, MAX BOTEL, THOMAS :
COSTELLO, DANA BECKER DUNN, :
RONALD LUBNER, OLAF OLAFSSON, :
MICHAEL STOLPER and KPMG LLP, :
  :
  :
                       Defendants. :
---------------------------------------------------------- :

## <u>ORDER</u>

     **AND NOW**, this _____ day of _____, upon consideration of

the Motion of the Advanta Defendants to Dismiss the Second Amended Complaint or, in the

Alternative, Stay the Case (the "Motion") and the accompanying Memorandum, the Plaintiffs'

response thereto, and the Advanta Defendants' reply, it is hereby ORDERED as follows:

     1.     The Motion is GRANTED.

     2.     The Second Amended Complaint is DISMISSED.

                           BY THE COURT:

                           _____

                           Hon. Cynthia M. Rufe, U.S.D.J.

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

---------------------------------------------------------- :
WILLIAM E. UNDERLAND and MARK     :
SCHALLER, *on behalf of themselves and all*  :
*others similarly situated,*           :
                       :
              Plaintiffs,      :
                       :
      v.               :   10-Civ.-3621 (CMR)
                       :
DENNIS ALTER, WILLIAM A. ROSOFF,   :
PHILIP M. BROWNE, DAVID B.        :
WEINSTOCK, MAX BOTEL, THOMAS    :
COSTELLO, DANA BECKER DUNN,     :
RONALD LUBNER, OLAF OLAFSSON,   :
MICHAEL STOLPER and KPMG LLP,    :
                       :
                       :
             Defendants.   :
---------------------------------------------------------- :

**<u>ORDER</u>**

      **AND NOW**, this _____ day of _____, upon consideration of

the Motion of the Advanta Defendants to Dismiss the Second Amended Complaint or, in the

Alternative, Stay the Case (the "Motion") and the accompanying Memorandum, the Plaintiffs'

response thereto, and the Advanta Defendants' reply, it is hereby ORDERED as follows:

      1.     The Motion is GRANTED.

      2.     The case is hereby STAYED.  The Clerk is directed to place the case in suspense

and close it for statistical purposes.

                                     BY THE COURT:

                                   _____

                                   Hon. Cynthia M. Rufe, U.S.D.J.

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

```
-----------------------------------------------------------:
WILLIAM E. UNDERLAND and MARK                    :
SCHALLER, on behalf of themselves and all        :
others similarly situated,                       :
                                                 :
                              Plaintiffs,        :
                                                 :
           v.                                    :   10-Civ.-3621 (CMR)
                                                 :
DENNIS ALTER, WILLIAM A. ROSOFF,                 :
PHILIP M. BROWNE, DAVID B.                       :
WEINSTOCK, MAX BOTEL, THOMAS                     :
COSTELLO, DANA BECKER DUNN,                      :
RONALD LUBNER, OLAF OLAFSSON,                    :
MICHAEL STOLPER and KPMG LLP,                    :
                                                 :
                                                 :
                              Defendants.        :
-----------------------------------------------------------:
```

## MOTION OF THE ADVANTA DEFENDANTS
## TO DISMISS THE SECOND AMENDED COMPLAINT
## OR, IN THE ALTERNATIVE, STAY THE CASE

Defendants Dennis Alter, William A. Rosoff, Philip M. Browne, David B. Weinstock, Max Botel, Thomas Costello, Dana Becker Dunn, Ronald Lubner, Olaf Olafsson, and Michael Stolper (the "Advanta Defendants") hereby move this Honorable Court for the entry of an Order dismissing the Second Amended Complaint as to all Advanta Defendants, or, in the alternative, for a stay. Grounds supporting this Motion are set forth in the accompanying Memorandum.

Dated:  November 18, 2011    Respectfully submitted,


        s/ Steven B. Feirson_____
        Steven B. Feirson (21357)
        Michael L. Kichline (62293)
        Sarah L. Wyatt  (91623)
        Alexander R. Bilus (203680)
        Dechert LLP
        Cira Centre, 2929 Arch Street
        Philadelphia, PA 19104
        (215) 994-4000

        *Attorneys for Dennis Alter, William A. Rosoff,*
        *Philip M. Browne, David B. Weinstock, Max*
        *Botel, Thomas Costello, Dana Becker Dunn,*
        *Ronald Lubner, Olaf Olafsson, and Michael A.*
        *Stolper*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

---------------------------------------------------------- :
WILLIAM E. UNDERLAND and MARK : 
SCHALLER, *on behalf of themselves and all* :
*others similarly situated,* :
  :
  :
      Plaintiffs, :
  :
   v. :   10-Civ.-3621 (CMR)
  :
DENNIS ALTER, WILLIAM A. ROSOFF, :
PHILIP M. BROWNE, DAVID B. :
WEINSTOCK, MAX BOTEL, THOMAS :
COSTELLO, DANA BECKER DUNN, :
RONALD LUBNER, OLAF OLAFSSON, :
MICHAEL STOLPER and KPMG LLP, :
  :
  :
      Defendants. :
---------------------------------------------------------- :

## MEMORANDUM IN SUPPORT OF THE MOTION
## OF THE ADVANTA DEFENDANTS TO DISMISS THE SECOND
## <u>AMENDED COMPLAINT OR, IN THE ALTERNATIVE, STAY THE CASE</u>

Steven B. Feirson
Michael L. Kichline
Sarah L. Wyatt
Alexander R. Bilus
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA  19104
Phone: 215-994-4000
Fax:    215-994-2222

*Attorneys for the Advanta Defendants*

November 18, 2011

## TABLE OF CONTENTS

Page

BACKGROUND ........................................................................................................ 1

ARGUMENT ........................................................................................................... 1

I.    THIS CASE SHOULD BE DISMISSED OR STAYED BECAUSE PLAINTIFFS
MAY RECOVER 100% OF THEIR LOSSES THROUGH ADVANTA'S
BANKRUPTCY ................................................................................................. 1

    A.    Plaintiffs May Recover All Of Their Losses Through Advanta's
Bankruptcy ................................................................................................ 2

    B.    Because Plaintiffs May Recover All Of Their Losses, This Case Is Not
Justiciable ................................................................................................. 3

    C.    Plaintiffs' Claims Fail For Lack of Damages ........................................... 5

    D.    Even If The Court Decides The Case Is Justiciable, Considerations Of
Judicial Efficiency And Economy Justify A Stay ..................................... 5

II.    PLAINTIFFS DO NOT ADEQUATELY ALLEGE THAT THE
REGISTRATION STATEMENT AND ITS AMENDMENTS CONTAIN
MATERIAL MISREPRESENTATIONS OR OMISSIONS ............................ 6

    A.    Courts Must Analyze The Sufficiency Of Evidence On Which Securities
Claims Are Based At The Pleading Stage ............................................... 7

    B.    Plaintiffs Base Their Claims On An Insufficient Document ................... 7

III.    PLAINTIFFS HAVE NOT STATED A PLAUSIBLE CLAIM FOR RELIEF IN
CONNECTION WITH ITEM 303 ................................................................. 9

    A.    Advanta Disclosed That It Was Engaged In Repricing And That The
Repricing Could Impact Its Finances ..................................................... 10

    B.    Plaintiffs Have Not Adequately Alleged That The Advanta Defendants
Violated Item 303 ................................................................................... 11

        1.    Plaintiffs fail to adequately allege that repricing caused a "trend." ......... 12

        2.    Plaintiffs have not demonstrated that the Advanta Defendants
knew of the alleged trend ...................................................... 13

        3.    Plaintiffs have not alleged that the alleged trend had – or that the
Advanta Defendants reasonably expected the alleged trend to have
– a material impact on Advanta's finances ............................... 15

CONCLUSION ...................................................................................................... 15

i

# TABLE OF AUTHORITIES

**CASES**

*Argueta v. U.S. Immigration and Customs Enforcement*,
  No. 08-1652, 2009 WL 1307236 (D.N.J. May 07, 2009).......................................................8

*Ashcroft v. Iqbal*,
  129 S. Ct. 1937 (2009)...............................................................................................................9

*Bechtel Corp. v. Local 215, Laborers' Int'l Union of North America, AFL-CIO*,
  544 F.2d 1207 (3d Cir. 1976)......................................................................................................5

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)...................................................................................................................9

*Cal. Pub. Employees' Ret. Sys. v. Chubb Corp.*,
  394 F.3d 126 (3d Cir. 2004)...................................................................................................7, 8

*In re Advanta Corp.*,
  No. 09-13931 (Bankr. D. Del.) ...............................................................................................2, 3

*In re Advanta Corp. Sec. Litig.*,
  180 F.3d 525 (3d Cir. 1999)........................................................................................................7

*In re Franklin Bank Corp. Sec. Litig.*,
  782 F. Supp. 2d 364 (S.D. Tex. 2011) .......................................................................................9

*In re Mutual Funds Inv. Litig.*,
  384 F. Supp. 2d 845 (D. Md. 2005) ...........................................................................................5

*In re Scholastic Corp. Sec. Litig.*,
  252 F.3d 63 (2d Cir. 2001)...........................................................................................12, 13, 14

*Institutional Investors Group v. Avaya, Inc.*,
  564 F.3d 242 (3d Cir. 2009).......................................................................................................7

*J&R Marketing, SEP v. General Motors Corp.*,
  549 F.3d 384 (6th Cir. 2008) ....................................................................................................14

*Johnson v. Sikes*,
  730 F.2d 644 (11th Cir. 1984) ....................................................................................................4

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)....................................................................................................................4

*Metz v. United Counties Bancorp,*
  61 F. Supp. 2d 364 (D.N.J. 1999) ........................................................................5

*North Carolina v. Rice,*
  404 U.S. 244 (1971) ..............................................................................................3

**OTHER AUTHORITIES**

1 AM. JUR. 2d *Actions* § 49 ........................................................................................5

12 C.F.R. § 309.6 ......................................................................................................9

17 C.F.R. § 229.303 ...........................................................................................passim

24 C.F.R. § 2004.2 ....................................................................................................9

24 C.F.R. § 2004.20 ..................................................................................................9

24 C.F.R. § 2004.21 ..................................................................................................9

24 C.F.R. § 2004.25 ..................................................................................................9

24 C.F.R. § 2004.27 ..................................................................................................9

25 C.J.S. *Damages* § 5 .............................................................................................6

25 C.J.S. *Damages* § 44 ...........................................................................................4

1A C.J.S. *Actions* § 59 .............................................................................................5

1A C.J.S. *Actions* § 75 .............................................................................................3

Advanta Initial Distribution Analysis, *available at* http://www.advantareorg.com/ .......................3

Federal Rule of Civil Procedure 12(b)(6) ................................................................9

UNITED STATES CONSTITUTION, Art. III.............................................................3, 4

Defendants Dennis Alter, William A. Rosoff, Philip M. Browne, David B. Weinstock, Max Botel, Thomas Costello, Dana Becker Dunn, Ronald Lubner, Olaf Olafsson, and Michael Stolper (the "Advanta Defendants") submit this memorandum in support of their Motion to Dismiss the Second Amended Complaint ("SAC").

## BACKGROUND[1]

On September 12, 2011, this Court granted in part the Advanta Defendants' motion to dismiss Plaintiffs' Amended Complaint. On October 7, 2011, Plaintiffs filed the SAC.

## ARGUMENT

This Court should dismiss the SAC because (1) Plaintiffs concede they may recover 100% of their investment losses and, therefore, their claims fail for lack of ripeness, standing and damage and (2) Plaintiffs' claims are inadequately alleged because they are grounded on a document that does not meet the Third Circuit's stringent pleading requirements. Furthermore, even if the Court determines that the entire case should not be dismissed on those grounds, the Court nevertheless should dismiss Plaintiffs' new claim based on Item 303 of S.E.C. Regulation S-K, 17 C.F.R. § 229.303(a)(3)(ii) ("Item 303").

**I.     THIS CASE SHOULD BE DISMISSED OR STAYED BECAUSE PLAINTIFFS MAY RECOVER 100% OF THEIR LOSSES THROUGH ADVANTA'S BANKRUPTCY.**

Because Plaintiffs may recover 100% of their purported losses under the terms of Advanta's confirmed bankruptcy plan, this case should not proceed any further.

---

[1]     The Advanta Defendants incorporate their discussion of the background of this case as set out in their Memorandum in Support of their Motion to Dismiss the Amended Complaint (Doc. No. 38).

**A.      Plaintiffs May Recover All Of Their Losses Through Advanta's Bankruptcy.**

On November 8 and 20, 2009, Advanta Corp. and certain of its subsidiaries filed for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware.  *See In re Advanta Corp.*, No. 09-13931 (Bankr. D. Del.).

At that time, the Retail Notes at issue in this case were outstanding to approximately 3,845 holders in an aggregate amount of approximately $140.6 million.  *See* Disclosure Statement for Debtors' Joint Plan Under Chapter 11 of the Bankruptcy Code at DS-15, *In re Advanta Corp.*, No. 09-13931 (Doc. No. 1038) ("Disclosure Statement"); SAC ¶ 39.  On April 24, 2010, the indenture trustee for the Retail Notes filed a claim in the bankruptcy on behalf of all holders of Retail Notes.  *See* Joinder of the Bank of New York, Mellon, in the Objection of the Official Committee of Unsecured Creditors at ¶ 2, *In re Advanta Corp.*, No. 09-13931 (Doc. No. 987).  On February 11, 2011, the Bankruptcy Court confirmed Advanta's proposed plan of reorganization.  *See* Order Confirming Debtors' Joint Plan Under Chapter 11 of the Bankruptcy Code, As Modified, *In re Advanta Corp.*, No. 09-13931 (Doc. No. 1173).

Under the terms of the plan, the Retail Note claims were allowed in an amount of $140,622,493.80.  *See* Debtors' Joint Plan Under Chapter 11 of the Bankruptcy Code at 22, *In re Advanta Corp.*, No. 09-13931 (Doc. No. 1037).  Each holder of an allowed Retail Note claim will receive distributions from certain trusts established by the plan.  *Id.*

According to the Disclosure Statement approved by the Bankruptcy Court, it is estimated that the holders of Retail Note claims, i.e., Plaintiffs and the proposed class members, will recover between 64.4% and 100% under the terms of the confirmed plan.  *See* Disclosure

Statement at DS-9.[2]  Indeed, these claimants have already recouped a large portion of their purported losses by receiving proceeds in an initial distribution of the bankruptcy estate assets. Specifically, $52.9 million was already distributed to holders of these claims, thus paying off 37.6% of their total allowed claim of $140.6 million.  *See* Advanta Initial Distribution Analysis, *available at* http://www.advantareorg.com/ (last visited Nov. 11, 2011).

Crucially, Plaintiffs do not deny that they might recover in full through the bankruptcy proceedings.  Specifically, they allege "[i]n light of Advanta's bankruptcy, it is unclear whether the Class will be able to recoup the principal and interest owed them in connection with the RediReserve Notes."  SAC ¶ 78.

### B.  Because Plaintiffs May Recover All Of Their Losses, This Case Is Not Justiciable.

Section 2 of Article III of the United States Constitution limits the federal judicial power to encompass only "cases" or "controversies."  Because of this limitation, "federal courts are without power to decide questions that cannot affect the right of litigants in the case before them."  *North Carolina v. Rice,* 404 U.S. 244, 246 (1971).  This limitation has led to multiple restrictions on the scope of judicial authority, two of which – the ripeness doctrine and the standing requirement – preclude consideration of the instant case.

The ripeness doctrine prohibits the federal courts from prematurely considering or resolving cases.  "The function of the ripeness doctrine is to determine whether a party has brought an action prematurely, and counsels abstention until such time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine."  *Peachlum v. City of York, Pennsylvania,* 333 F.3d 429, 433 (3d Cir. 2003) (citation omitted); *see also* 1A

---

[2]      By contrast, the former shareholders of Advanta Corp. will recover nothing through the bankruptcy.  *See* Disclosure Statement at DS-11.

C.J.S. *Actions* § 75, n.1 ("The ripeness doctrine's basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements."). It is the prejudice "against issuing an opinion premised on uncertain and contingent future events that may not occur as anticipated or may not occur at all" which lies at the core of the ripeness doctrine. *Johnson v. Sikes,* 730 F.2d 644, 649 (11th Cir. 1984). The Third Circuit has explained that "[t]he following considerations underpin the ripeness doctrine: are the parties in a sufficiently adversarial posture to be able to present their positions vigorously; are the facts of the case sufficiently developed to provide the court with enough information on which to decide the matter conclusively; and is a party genuinely aggrieved so as to avoid expenditure of judicial resources on matters which have caused harm to no one." *Peachlum*, 333 F.3d at 433-34 (citing Erwin Chemerinsky, *Federal Jurisdiction* § 2.3.1 (1989)); *see also* 25 C.J.S. *Damages* § 44, n.8 ("Damages accruing in the future must not be left to speculation or conjecture.").

The instant case is not ripe because Plaintiffs may recover all of their alleged losses through Advanta's bankruptcy process. Plaintiffs have alleged only that they *may* not be able to recoup all of the principal and interest owed to them. And, in light of the ongoing distributions set up by Advanta's bankruptcy plan, it appears entirely possible that Plaintiffs will be fully reimbursed through the bankruptcy process. Because of this, Plaintiffs cannot show that they have been "genuinely aggrieved so as to avoid expenditure on judicial resources on matters which have caused harm to no one." *Peachlum*, 333 F.3d at 433-34. It would be wasteful for this litigation to proceed any further at this time, as Plaintiffs may have no damages to recover.

For similar reasons, Plaintiffs also lack standing under Article III, as they have not shown either (1) that they have suffered or imminently will suffer injury in fact or (2) that it is likely, as opposed to merely speculative, that a favorable court decision will redress any injury. *See Lujan*

4

*v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *see also* 1A C.J.S. *Actions* § 59 ("There can

be no recovery where the injury complained of is purely speculative and theoretical.").

Accordingly, the Court should dismiss this case without prejudice.

      **C.**      **Plaintiffs' Claims Fail For Lack of Damages.**

      Beyond the ripeness and standing problems that preclude consideration of this case,

Plaintiffs' claims fail for another fundamental reason: they cannot now – and may not ever –

establish damages. Damages are an essential element of a claim under the Securities Act of

1933. *See In re Mutual Funds Inv. Litig.*, 384 F. Supp. 2d 845, 866 (D. Md. 2005); *Metz v.

United Counties Bancorp*, 61 F. Supp. 2d 364, 378 (D.N.J. 1999); *see also* 1 Am. Jur. 2d *Actions*

§ 49 ("The mere existence of a wrong, without some identifiable damage, provides no basis for a

cause of action."). Indeed, far from alleging any actual damages, Plaintiffs conceded they could

make a full recovery in the bankruptcy process and therefore not sustain any losses. Surely, had

they recovered in full through the bankruptcy process before filing this case, they would be

unable to proceed because they would have no injury to redress. The same result should follow

where Plaintiffs may in the future recover all of their alleged losses.

      **D.**      **Even If The Court Decides The Case Is Justiciable, Considerations Of
            Judicial Efficiency And Economy Justify A Stay.**

      Even if Plaintiffs' claims were ripe and even if Plaintiffs have standing and have

adequately alleged damages, none of which is true, the Court should stay the case to allow the

bankruptcy distributions to be completed. *See Bechtel Corp. v. Local 215, Laborers' Int'l Union

of North America, AFL-CIO*, 544 F.2d 1207, 1215 (3d Cir. 1976) (courts have "broad power to

stay proceedings"). A stay is warranted here for three reasons. First, as discussed above,

allowing the case to proceed at this time would be wasteful. If Plaintiffs recover all of their

purported losses through the bankruptcy process, the case will be moot and the Court and the

parties will have spent time and resources litigating the case for no reason.  Second, even if

Plaintiffs do not recover all of their purported losses through the bankruptcy process, their

recovery of some of those losses could affect future proceedings in this litigation:  a relatively

small amount of damages left outstanding could influence the likelihood of settlement or could

lead Plaintiffs to conclude that the case is not economically viable to pursue.  Third, if Plaintiffs

are awarded damages in this case, Plaintiffs could obtain a double recovery if they later receive

distributions through the bankruptcy.  *See* 25 C.J.S. *Damages* § 5 (The doctrine of double

recovery dictates that "a plaintiff can recover no more than the loss actually suffered.").  All such

duplication would be avoided by a stay.

## II.     PLAINTIFFS DO NOT ADEQUATELY ALLEGE THAT THE REGISTRATION STATEMENT AND ITS AMENDMENTS CONTAIN MATERIAL MISREPRESENTATIONS OR OMISSIONS.

Plaintiffs' SAC suffers from a major fatal defect: its conclusory allegations of falsity lack

any evidentiary support as required by the Third Circuit.  Unlike the case brought by Advanta's

shareholders, where the plaintiffs rely on statements by confidential witnesses with alleged first-

hand knowledge of the facts, Plaintiffs here do not rely on any statements of any witnesses –

confidential or otherwise.  Nor do they base their claims on any internal contemporaneous

company documents or personal knowledge.  Instead, Plaintiffs stake their entire case that the

Advanta Defendants made material misrepresentations and omissions essentially upon a single

document: the Office of the Inspector General's October 2010 Material Loss Review of Advanta

Bank ("OIG Report") (Doc. No. 38-2, Ex. H).  But this lone document plainly fails to meet the

pleading standards applied in the Third Circuit.  Accordingly, the Court should dismiss the SAC.

**A.     Courts Must Analyze The Sufficiency Of Evidence On Which Securities Claims Are Based At The Pleading Stage.**

Congress and the courts have recognized that securities class actions present a unique opportunity for abusive litigation.  *See In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 531 (3d Cir. 1999) (abuses include "(1) the practice of filing lawsuits against issuers of securities in response to any significant change in stock price, regardless of defendants' culpability; (2) the targeting of 'deep pocket' defendants; (3) the abuse of the discovery process to coerce settlement; and (4) manipulation of clients by class action attorneys").

Because of the special nature of securities class actions, the Third Circuit has taken care to instruct district courts to consider *at the pleading stage* the sufficiency of evidence upon which securities complaints are based.  *See Institutional Investors Group v. Avaya, Inc.*, 564 F.3d 242, 263 (3d Cir. 2009) ("In the case of confidential witness allegations, we [evaluate] the 'detail provided by the confidential sources, the sources' basis of knowledge, the reliability of the sources, the corroborative nature of other facts alleged . . . , the coherence and plausibility of the allegations, and similar indicia."); *Cal. Pub. Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 147 (3d Cir. 2004) (Securities plaintiffs who rely on internal reports must "'specify the internal reports, who prepared them and when, how firm the numbers were or which company officers reviewed them.'") (quoting *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 72-73 (2d Cir. 2001)).

**B.     Plaintiffs Base Their Claims On An Insufficient Document.**

Here, Plaintiffs claims are grounded on the OIG Report.  But this document cannot serve as support for the allegations that the Advanta Defendants made false statements for a number of reasons.

First, the OIG Report was created for a specific, limited purpose – to determine the impact of Advanta's bankruptcy on the Deposit Insurance Fund – not to determine the truth or

falsity of Advanta's registration statements. *See* Memo. from Stephen M. Beard, Assistant

Inspector General for Material Loss Reviews, on *Material Loss Review of Advanta Bank Corp.,*

*Draper, Utah* (Report No. MLR-11-002) (Oct. 1, 2010) (attached to OIG Report).

Second, the OIG largely reviewed documents created by another government agency –

the FDIC – without assessing the reliability of those documents. *See* OIG Report at 23 ("[W]e

did not assess DSC's overall internal control or management control structure.  We relied on

information in the DSC systems, reports, examination reports, and interviews of examiners to

understand Advanta's management controls pertaining to causes of failure and material loss.").

In fact, the only company documents that the OIG Report even assessed were "[e]xternal audit

reports and other public records of the parent holding company from 2006-2008." *Id*. at 23.  The

OIG did not analyze Advanta's internal company documents or interview Advanta officers or

employees. *See id.* at 22-23.

Third, the OIG Report is vague as to sources and time periods.  The OIG Report initially

states that "[t]he scope of this audit included an analysis of Advanta's operations from December

2004 until its failure on March 19, 2010." *Id*. at 22.  But not all records fully span the relevant

time period. *See id*. at 22-23.  Because the OIG Report is vague, uncorroborated, and limited in

scope and analysis, it is insufficient to bear the weight of Plaintiffs' claims.

Fourth, the OIG Report is also insufficient to support Plaintiffs' claims because it is not

based on first-hand knowledge and is in many respects double hearsay. *See Chubb*, 394 F.3d at

148-50 (discounting allegations that are based on rumor or second-hand knowledge); *Argueta v.*

*U.S. Immigration and Customs Enforcement*, No. 08-1652, 2009 WL 1307236, at *9, *23

(D.N.J. May 07, 2009) (noting the "inherent unreliability" of third-party sources and rejecting

allegations based on hearsay documents).

8

Fifth, the Advanta Defendants may encounter difficulty in testing the content and credibility of the OIG Report because of confidentiality restrictions and an inability to subpoena witnesses from the OIG or the FDIC.  *See* 12 C.F.R. § 309.6(a); 24 C.F.R. §§ 2004.20, 2004.21, 2004.25.  Moreover, even if a request for information or testimony is granted, it may be limited or restricted.  *See* 12 C.F.R. § 309.6(b)(8)(ii); 24 C.F.R. § 2004.27(a).  Even the subpoena power of the Court may not be enough to compel documents or testimony, as the OIG and FDIC have the discretion to ignore subpoenas.  *See* 12 C.F.R. § 309.6(b)(8)(i); 24 C.F.R. § 2004.2(c).

Because the OIG Report does not meet the Third Circuit's pleading standards, the Court should determine that the allegations that are based on the report – including SAC ¶¶ 5, 6.E, 6.F, 44, 47, 49, 50, 54, 57, 58, 59, 60, and 75 – do not meet the plausibility requirement of Federal Rule of Civil Procedure 12(b)(6).  *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also In re Franklin Bank Corp. Sec. Litig.*, 782 F. Supp. 2d 364, 388 (S.D. Tex. 2011) ("In attempting to establish the required strong inference of scienter as to [the director defendant], Plaintiffs expressly rely on the FDIC's statement in the OIG Report. . . .  Reference to these . . . , however, falls far short of showing scienter as to [the director defendant].") (citations omitted).  When properly stripped of their ability to base their claims on this one document, Plaintiffs cannot adequately allege why the statements in the registration statement and its amendments were false.  Accordingly, the Court should dismiss the SAC with prejudice.

## III.   PLAINTIFFS HAVE NOT STATED A PLAUSIBLE CLAIM FOR RELIEF IN CONNECTION WITH ITEM 303.

Plaintiffs now claim that the Advanta Defendants violated Item 303, which requires a registrant to "[d]escribe any known trends or uncertainties that have had or that the registrant

reasonably expects will have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations."  17 C.F.R. § 229.303(a)(3)(ii).  Plaintiffs allege that the Advanta Defendants failed to disclose (1) that Advanta allegedly was engaged in repricing, i.e., that Advanta would adjust the interest rates on its customers' credit card accounts, and (2) that the alleged interest rate increases were causing an increase in nonpayment by Advanta's credit card customers that could be expected to cause Advanta significant losses.  *See* SAC ¶ 51.  The allegations are legally deficient.

> **A.** **Advanta Disclosed That It Was Engaged In Repricing And That The Repricing Could Impact Its Finances.**

As a threshold matter, Plaintiffs are incorrect that Advanta did not disclose its repricing practices or the increases in delinquencies.  In fact, Advanta not only disclosed that it continually adjusted the pricing on its customers' accounts, it warned that such changes could cause attrition or increase rates of delinquencies and thus negatively impact Advanta's finances.  Furthermore, it disclosed that delinquencies and charge-off rates were on the rise.

Specifically, in each of the filings at issue, Advanta disclosed that it employed different repricing strategies, telling investors that "[w]e continually monitor the credit quality of our business credit card customers and *adjust the pricing* and/or credit line size on their accounts based on a variety of factors, including changes in a customer's credit standing and other factors that could indicate a risk of future nonpayment."  Advanta Corp., Annual Report (Form 10-K), at 4 (March 13, 2009) (Doc. No. 38-2, Ex. J) (the "March 2009 Amendment") (emphasis added); Advanta Corp. Post-Effective Amendment No. 1 to Form S-3, at 18 (Feb. 9, 2009) (Doc. No. 45-1, Ex. E) (the "February 2009 Amendment"); Advanta Corp., Annual Report (Form 10-K), at 5

(Feb. 28, 2008) (Doc. No. 38-2, Ex. A) (the "2008 Amendment").  Furthermore, Advanta warned

investors that repricing strategies could affect Advanta's finances:

> **We may make changes in the terms of our business credit card accounts that could negatively affect our results of operations and profitability**. . . . [W]e may decide to increase or decrease finance charge rates or other fees and charges for existing accounts, or to take actions that would otherwise change the terms of the accounts.  Changes in the terms of our business credit card accounts may cause account attrition or changes in customer behavior, such as credit card use, payment patterns and rates of delinquencies and charge-offs, which can negatively affect our results of operations and profitability.  Changes in the finance charges . . . could negatively impact our results of operations and profitability.

March 2009 Amendment at 14; 2008 Amendment at 14.  Finally, Advanta also disclosed that its

losses due to delinquencies and charge-offs were rising.  *See* March 2009 Amendment at 28

("[W]e had higher delinquency and net principal charge-off rates in the year ended December 31,

2008 as compared to 2007 due primarily to deterioration in the U.S. economy and, to a lesser

extent, continued seasoning of the portfolio, and as a result, we had higher provisions for credit

losses and lower securitization income."); 2008 Amendment at 26 ("We have experienced

continued increases in delinquency rates and lower growth in merchandise sales volume in

January 2008 which may negatively impact our 2008 results.").

## B.    Plaintiffs Have Not Adequately Alleged That The Advanta Defendants Violated Item 303.

Because Advanta disclosed its repricing practices, the impact those practices could have

on Advanta's finances, and the increases in delinquency rates, Plaintiffs are left to argue solely

that the Advanta Defendants are somehow liable because they did not disclose that the repricing

practices were in fact causing the rise in delinquencies.  But as explained below, that claim does

not hold up to scrutiny.

1.     **Plaintiffs fail to adequately allege that repricing caused a "trend."**

First, Plaintiffs have not sufficiently alleged that the repricing caused a "trend" of increased delinquencies.  Courts have required allegations of far greater specificity than those presented here before finding that a plaintiff had adequately alleged the existence of an Item 303 trend.  *See, e.g.*, *Scholastic*, 252 F.3d at 70-72 (plaintiffs adequately alleged that defendants failed to disclose trends of declining sales and increasing returns of books by describing sales and returns as of specific dates and by distributor).

Here, Plaintiffs fail to allege any facts to support their conclusory allegation that repricing caused a trend of increased delinquencies.  Plaintiffs merely allege that Advanta repriced "68% of its credit card loan portfolio," SAC ¶ 54, and that "a large number" of accountholders received rate increases that raised their annual percentage rate "as high as 37%," *id.*  It is not alleged how many accountholders constitute "a large number," whether that "large number" is a significant percentage of the 68% of accountholders that were repriced, what percentage of that "large number" actually received rate increases of 37% as opposed to rate increases that were lower than 37%, or what the median or mean rate increases were.  Furthermore, Plaintiffs do not allege what percentage of Advanta's credit card portfolio was being repriced prior to the start of the "trend," nor do they allege when the repricing practices were altered, or, indeed, that they were altered at all.  Critically, Plaintiffs do not – and cannot – specify how, if at all, these practices actually affected Advanta's delinquency and charge-off rates.  Plaintiffs do not allege the extent of the "trend" of delinquencies, such as how the relevant time period was different from previous time periods.  These failures are fatal to their claim.

Plaintiffs attempt to connect these dots by reference to the OIG Report, which asserts only that repricing caused some unquantifiable impact on Advanta's finances.  *See* SAC ¶ 57;

12

OIG Report at 6, 9.  The OIG Report does not describe the prior levels of charge-offs or delinquencies, how much they had changed, or how much of the change was attributable to the repricing.  In fact, the OIG Report also attributes the rise in delinquencies and charge-offs to rapidly deteriorating economic conditions.  *See* OIG Report at 6.

Finally, the OIG Report fails to specify when this nebulous impact occurred or when the alleged "trend" of accelerating charge-offs and delinquencies began.  Accordingly, the claim simply is too vague to constitute an adequate pleading.

### 2.   Plaintiffs have not demonstrated that the Advanta Defendants knew of the alleged trend.

Second, Plaintiffs also fail to adequately allege that the Advanta Defendants actually knew that the repricing was allegedly "fueling a severe spike in nonpayment," and instead attempt to allege facts to show that the Advanta Defendants *could have known* about the alleged trend.  SAC ¶ 51.  Specifically, Plaintiffs allege that the trend was "clearly" known to management, because the repricing was a "huge change to Advanta's primary business and affected 68% of Advanta's customer base.  A policy change of that scale could not have been implemented without the knowledge of Advanta's management."  *Id*. at ¶ 59.  But whether the Advanta Defendants knew about the alleged changes in Advanta's repricing practices is beside the point – this allegation does not demonstrate that the Advanta Defendants knew that the alleged change in Advanta's repricing practices caused an increase in delinquencies.

Plaintiffs also allege that "the rise in charge-offs . . . was apparent to individuals with access to Advanta's data.  . . .  [T]he FDIC was able to identify the rise in charge-offs in its November 2008 examination."  *Id.*  But the fact that the FDIC allegedly identified the rise in charge-offs does not show that the Advanta Defendants actually *knew* that the alleged changes to

the repricing practices were causing that rise.  *See J&R Marketing, SEP v. General Motors Corp.*, 549 F.3d 384, 391 (6th Cir. 2008) ("The problem for the plaintiffs is that they do not contend that GMAC had any knowledge about the information at GM.  Instead, they specifically only contend that the information was 'knowable' to GMAC.") (citations and footnote omitted).

Furthermore, the OIG Report, on which Plaintiffs base this allegation, does not state that the Advanta Defendants actually knew of this alleged connection.  And it is just as plausible that any rise in delinquencies was the result of the downturn in the economy, as the OIG itself recognized.  *See* OIG Report at 6.  Moreover, the FDIC's November 2008 examination report actually was issued in September 2009, well after the last amendment to the registration statement at issue in this case, *see* OIG Report at 8-9, and thus there is no evidence that anyone recognized or could have recognized at the time of the disclosures that any rise in delinquencies during the relevant time period was attributable to the repricing practices.

Plaintiffs have failed to plead with any specificity whether or how the alleged trend would have been monitored or analyzed by the Advanta Defendants, whether any information that might have led the Advanta Defendants to learn of the trend was compiled, how the Advanta Defendants would have learned of the trend, or if the trend was ever discussed by anyone at Advanta at any time.  Plaintiffs have not described the existence of any internal company reports on the alleged trend, let alone who prepared the reports, how frequently the reports were prepared, or who reviewed them.[3]  *Cf. Scholastic*, 252 F.3d at 71-73 (plaintiffs adequately

---

[3]     Plaintiffs also allege that Advanta's repricing practices were "illegal," SAC ¶¶ 51, 59, 60, but do not allege that the Advanta Defendants knew or believed that the repricing practices were illegal.  In fact, the FDIC's restitution order, upon which Plaintiffs rely for this allegation, explicitly states that Advanta did not admit that its actions were illegal. *See* Advanta Corp., Form 8-K (June 30, 2009) (Doc. No. 38-2, Ex. I).

14

alleged defendants knew of trends by describing with specificity how defendants monitored and discussed trends).  Accordingly, Plaintiffs have not adequately alleged this element of the claim.

>    **3.    Plaintiffs have not alleged that the alleged trend had – or that the Advanta Defendants reasonably expected the alleged trend to have – a material impact on Advanta's finances.**

Finally, Plaintiffs have failed to allege that the supposed trend had a material impact on Advanta's finances, or that the Advanta Defendants reasonably expected the trend to have a material impact on Advanta's finances, as required by Item 303.  Instead, they allege that the trend "*could be expected to cause* Advanta significant losses," SAC ¶ 51 (emphasis added), and that "[t]hese trends were *reasonably likely to have* a material effect on Advanta's financial condition or results of operations," *Id.* at ¶ 60 (emphasis added).  But "could be expected to cause" is not the same as "did cause" or "the defendants did expect the trend to cause" significant losses.  And "reasonably likely to have" is not the same as "did have" or "the defendants did expect to have."  Plaintiffs' allegations do not fit the terms of the regulation.

<u>CONCLUSION</u>

For the foregoing reasons, the Advanta Defendants respectfully request that the Court dismiss the Second Amended Complaint or, in the alternative, stay the case.

November 18, 2011

> <u>s/ Steven B. Feirson</u>
> Steven B. Feirson
> Michael L. Kichline
> Sarah L. Wyatt
> Alexander R. Bilus
> DECHERT LLP
> Cira Centre
> 2929 Arch Street
> Philadelphia, PA  19104
> Phone: 215-994-4000
> Fax:    215-994-2222
>
> *Attorneys for the Advanta Defendants*

15

## CERTIFICATE OF SERVICE

I, Alexander R. Bilus, do hereby certify that on November 21, 2011, I electronically filed the foregoing Motion of the Advanta Defendants to Dismiss the Second Amended Complaint or, in the Alternative, Stay the Case and Memorandum in support thereof via the Court's CM/ECF system and that on November 18, 2011, I served these documents via email upon the following:

Robert B. Weiser
Brett D. Stecker
Jeffrey J. Ciarlanto
THE WEISER LAW FIRM, P.C.
121 N. Wayne Avenue, Suite 1000
Wayne, PA  19087
Tel: 610-225-2677
Fax: 610-225-2678

Thomas L. Laughlin IV
SCOTT + SCOTT LLP
500 Fifth Avenue, Floor 40
New York, NY  10110
Tel: 212-223-6444
Fax: 212-223-6334

Geoffrey M. Johnson
SCOTT + SCOTT LLP
12434 Cedar Road, Suite 12
Cleveland Heights, OH  44106
Tel: 216-229-6088
Fax: 216-229-6092

Anne L. Box
SCOTT + SCOTT LLP
707 Broadway
Suite 1000
San Diego, CA  92101
Tel: 619-233-4565

*Counsel for William E. Underland and
Mark Schaller, and the proposed Class of
similarly situated persons*

Geoffrey A. Kahn
Edward D. Rogers
Ruth S. Uselton
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA  19103
215-665-8500

Stanley J. Parzen
James C. Schroeder
Justin A. McCarty
MAYER BROWN LLP
71 S. Wacker Drive
Chicago, IL  60606
312-701-7326

*Counsel for KPMG LLP*

November 21, 2011

s/ Alexander R. Bilus
Alexander R. Bilus