## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| WILLIAM E. UNDERLAND and MARK SCHALLER, on behalf of themselves and all others similarly situated, ) ) ) ) | |
| Plaintiffs, ) ) v. ) ) | Case No. 10-cv-3621 (CMR) |
| DENNIS ALTER, WILLIAM A. ROSOFF, PHILIP M. BROWNE, DAVID B. WEINSTOCK, ROBERT S. BLANK, MAX BOTEL, THOMAS COSTELLO, DANA BECKER DUNN, ROBERT LUBNER, OLAF OLAFSSON, MICHAEL STOLPER, and KPMG LLP, ) ) ) ) ) ) ) ) ) ) | |
| Defendants. ) ) | |

## KPMG LLP'S MOTION TO DISMISS THE
## SECOND AMENDED CLASS ACTION COMPLAINT

Defendant KPMG LLP hereby moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), for an Order dismissing the Second Amended Class Action Complaint. In support of its Motion, KPMG incorporates herein the accompanying Memorandum of Law.

WHEREFORE, KPMG LLP respectfully requests that the Court dismiss the Second Amended Class Action Complaint with prejudice and enter judgment in its favor.

November 18, 2011

Respectfully submitted,

/s/ Stanley J. Parzen

Geoffrey A. Kahn
Edward D. Rogers
Ruth S. Uselton
BALLARD SPAHR LLP
1735 Market St., 51st Floor
Philadelphia, PA 19103
215-665-8500

Stanley J. Parzen
James C. Schroeder
Justin A. McCarty
MAYER BROWN LLP
71 S. Wacker Dr.
Chicago, IL 60606
312-782-0600

*Attorneys for Defendant KMPG LLP*

1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| WILLIAM E. UNDERLAND and MARK SCHALLER, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> DENNIS ALTER, WILLIAM A. ROSOFF, PHILIP M. BROWNE, DAVID B. WEINSTOCK, ROBERT S. BLANK, MAX BOTEL, THOMAS COSTELLO, DANA BECKER DUNN, ROBERT LUBNER, OLAF OLAFSSON, MICHAEL STOLPER, and KPMG LLP, <br><br> Defendants. | Case No. 10-cv-3621 (CMR) |

## MEMORANDUM OF LAW IN SUPPORT OF
## KPMG LLP'S MOTION TO DISMISS

Geoffrey A. Kahn
Edward D. Rogers
Ruth S. Uselton
BALLARD SPAHR LLP
1735 Market St., 51st Floor
Philadelphia, PA 19103
215-665-8500

Stanley J. Parzen
James C. Schroeder
Justin A. McCarty
MAYER BROWN LLP
71 S. Wacker Dr.
Chicago, IL 60606
312-782-0600

*Attorneys for Defendant KMPG LLP*

November 18, 2011

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

FACTUAL BACKGROUND ............................................................................................. 2

ARGUMENT ...................................................................................................................... 5

I.     The Second Amended Complaint Does Not State A Plausible Claim Against KPMG ........................................................................................................................ 5

       A.     The Second Amended Complaint Does Not Satisfy This Court's Standard: It Still Does Not Allege What GAAP Provisions KPMG Supposedly Violated Or What Was False Or Misleading In Its Report ................................... 5

       B.     Under Third Circuit Law, A Declaration Attached To A Complaint Cannot Be Considered On A Motion To Dismiss; In Any Event, The Declaration Here Is Woefully Deficient ............................................................................... 7

       C.     The Second Amended Complaint Does Not Allege A Plausible Claim Against KPMG For Other Reasons As Well ......................................................... 9

II.    The Second Amended Complaint Must—But Does Not—Allege Subjective Falsity ...................................................................................................................... 10

       A.     Statements Concerning Loss Reserves Are Opinions .......................................... 10

       B.     Subjective Falsity Allegations Are Required For Section 11 Claims Based On Statements Of Opinion ................................................................................... 12

            1.     Virginia Bankshares requires subjective falsity to establish a federal securities claim based on an opinion ............................................ 12

            2.     Virginia Bankshares' subjective falsity requirement applies to Section 11 claims based on opinions ................................................... 14

CONCLUSION ................................................................................................................. 15

# TABLE OF AUTHORITIES

**Page**

CASES

*Ashcroft v. Iqbal,*
   129 S. Ct. 1937 (2009) ............................................................................5, 6, 9, 10

*Baraka v. McGreevey,*
   481 F.3d 187 (3d Cir. 2007) ........................................................................6

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ..............................................................................5, 9, 10

*Belmont Holdings v. SunTrust Banks,*
   2010 WL 3545389 (N.D. Ga. Sept. 10, 2010) ................................11, 15

*Bily v. Arthur Young & Co.,*
   834 P.2d 745 (Cal. 1992) ..........................................................................12

*Carpenters Health & Welfare Fund v. Kia Enters.,*
   2009 WL 2152276 (E.D. Pa. July 15, 2009) ..............................................9, 10

*Christidis v. First Pa. Mortg.,*
   717 F.2d 96 (3d Cir. 1983) ........................................................................9, 10

*City of New Orleans Employees' Ret. Sys. v. Private Bancorp,*
   No. 10 C 6826 (N.D. Ill. Nov. 3, 2011) ....................................................15

*Countrywide Fin. Deriv. Litig., In re,*
   554 F. Supp. 2d 1044 (C.D. Cal. 2008) ....................................................11

*Credit Suisse First Boston, In re,*
   431 F.3d 36 (1st Cir. 2005) ......................................................................14

*DeMarco v. Depotech Corp.,*
   149 F. Supp. 2d 1212 (S.D. Cal. 2001) ....................................................8

*Donald J. Trump Casino Sec. Litig., In re,*
   7 F.3d 357 (3d Cir. 1993) ........................................................................13, 14

*Dronsejko v. Grant Thornton,*
   632 F.3d 658 (10th Cir. 2011) ..................................................................12

*Dutton v. Harris Stratex Networks,*
   270 F.R.D. 171 (D. Del. 2010) ................................................................6

*Essex Ins. v. Miles,*
   2010 WL 5069871 (E.D. Pa. Dec. 3, 2010) ............................................9

## TABLE OF AUTHORITIES
(continued)

**Page**

*Fait v. Regions Fin.*,
    655 F.3d 105 (2d Cir. 2011)..................................................................11, 13, 14, 15

*First Nationwide Bank v. Gelt Funding*,
    820 F. Supp. 89 (S.D.N.Y. 1993),
    *aff'd*, 27 F.3d 763 (2d Cir. 1994) ...............................................................................11

*Grossman v. Novell, Inc.*,
    120 F.3d 1112 (10th Cir. 1997) ..................................................................................14

*Herman & MacLean v. Huddleston*,
    459 U.S. 375 (1983)......................................................................................................3

*Lum v. Bank of America*,
    361 F.3d 217 (3d Cir. 2004)..........................................................................................2

*NAHC, Inc. Sec. Litig., In re*,
    306 F.3d 1314 (3d Cir. 2002)........................................................................................9

*Paoli R.R. Yard, In re*,
    35 F.3d 717 (3d Cir. 1994)............................................................................................8

*Pension Benefit Guar. Corp. v. White Consol. Indus.*,
    998 F.2d 1192 (3d Cir. 1993)........................................................................................2

*Plumbers' Union v. Nomura Asset Accept. Corp.*,
    632 F.3d 762 (1st Cir. 2011) .......................................................................................15

*Podany v. Robertson Stephens, Inc.*,
    318 F. Supp. 2d 146, *motion to amend denied*,
    350 F. Supp. 2d 375 (S.D.N.Y. 2004)........................................................................14

*Rose v. Bartle*,
    871 F.2d 331 (3d Cir. 1989).............................................................................1, 2, 7, 8

*Rubke v. Capitol Bancorp*,
    551 F.3d 1156 (9th Cir. 2009) .................................................................................9, 14

*Shalala v. Guernsey Mem. Hosp.*,
    514 U.S. 87 (1995)......................................................................................................12

*Shapiro v. UJB Fin.*,
    964 F.2d 272 (3d Cir. 1992)......................................................................2, 7, 11, 14, 15

*State Farm Mut. v. Ficchi*,
    2011 WL 2313203 (E.D. Pa. June 13, 2011) ...............................................................9

iii

## TABLE OF AUTHORITIES
(continued)

**Page**

*Underland v. Alter,*
2011 WL 4017908 (E.D. Pa. Sept. 9, 2011) ................................................................. passim

*United States v. Morris,*
80 F.3d 1151 (7th Cir. 1996) ........................................................................................ 11

*Virginia Bankshares v. Sandberg,*
501 U.S. 1083 (1991) .................................................................................. 2, 12, 13, 14

*Westinghouse Sec. Litig., In re,*
90 F.3d 696 (3d Cir. 1996) ........................................................................................... 10

*Williams Sec. Litig., In re,*
496 F. Supp. 2d 1195 (N.D. Okla. 2007),
*aff'd,* 558 F.3d 1130 (10th Cir. 2009) ........................................................................... 7

### STATUTES AND REGULATIONS

15 U.S.C. § 77k(a) .............................................................. 1, 5, 6, 7, 12, 13, 14, 15

15 U.S.C. § 77k(a)(4) ..................................................................................................... 3

17 C.F.R. § 240.14a-9(a) ............................................................................................. 13

## INTRODUCTION

In September, this Court dismissed plaintiffs' only claim in the First Amended Complaint against KPMG LLP, under § 11 of the Securities Act of 1933, 15 U.S.C. § 77k(a). That claim alleged that KPMG falsely stated that Advanta Corporation's financial statements were in conformity with generally accepted accounting principles ("GAAP"), but the Court held that plaintiffs' "vague allegation that KPMG's statements 'were not correct for the reasons set forth in the various FDIC orders and reports' is insufficient." *Underland v. Alter*, 2011 WL 4017908, at *10 (E.D. Pa. Sept. 9, 2011). "The FDIC reports do not conclude that Advanta's financial results were not prepared in conformity with GAAP," and plaintiffs did not allege "what GAAP standards KPMG violated []or how the statements in the audit report were false or misleading at the time they were made. Indeed, Plaintiffs have not even alleged that the statements did not conform to GAAP." *Id.* Accordingly, the Court held the allegations against KPMG "are entirely conclusory and do not contain factual matter sufficient to support a plausible claim for relief." *Id.*

Plaintiffs have now filed a Second Amended Complaint ("SAC") reasserting a § 11 claim against KPMG, but it still contains the very flaws the Court identified in dismissing the earlier claim against KPMG. Most importantly, the complaint still does not allege any specific GAAP provision that KPMG supposedly violated; it contains only general allegations that KPMG violated unspecified standards. Recognizing that they cannot plead a factual basis for their claim, plaintiffs attach a declaration from a purported expert. That does not work either. First, it is prohibited: *Rose v. Bartle*, 871 F.2d 331, 339 n.3 (3d Cir. 1989), holds that an affidavit cannot be considered on a motion to dismiss. Second, even if the declaration could be considered, it would not save their claim: the declaration does not opine that KPMG violated any specific standards— indeed, it offers no real opinions at all—and it is based entirely on assumptions and speculation about what might be true if certain facts that are not pled actually existed.

1

The § 11 claim against KPMG—based on the allegation that Advanta understated its provision for loan loss reserves in its 2008 financial statements—fails for another reason. Setting loan loss reserves (done by an auditor's client) is a matter of opinion because it depends on predictions about future business events and requires complex judgments involving a host of factors—there is no one correct answer, but a range of possibilities from which an informed opinion must be made. Under *Virginia Bankshares v. Sandberg*, 501 U.S. 1083 (1991), *Shapiro v. UJB Fin.*, 964 F.2d 272 (3d Cir. 1992) (a loss reserve case), and other cases, a securities claim based on an opinion must be dismissed unless the plaintiff alleges subjective falsity—that the defendant did not genuinely believe its opinion at the time. There are no such allegations here.

**FACTUAL BACKGROUND**[1]

We will not repeat all of the allegations outlined in the Court's September opinion. See *Underland*, 2011 WL 4017908, at *1-3, 6-8. Instead, we will summarize those allegations briefly, while discussing in more detail the new allegations in the latest complaint.

In 2008 and 2009, plaintiffs allegedly acquired RediReserve notes issued by Advanta, whose primary business was issuing credit cards to small businesses. SAC ¶¶ 2, 13-14. The complaint alleges that Advanta engaged in a number of "unsafe, unsound and illegal business practices" that were falsely described in or omitted from the registration statements for the RediReserve notes. *Id.* ¶¶ 2, 5. Advanta allegedly "operated with inadequate capital for its risk profile"; "did not sustain satisfactory earnings performance to maintain sufficient capital for its

---

[1] On a motion to dismiss, this Court may consider, in addition to the complaint's allegations, "matters of public record and documents that form the basis of a claim," *Lum v. Bank of America*, 361 F.3d 217, 221 n.3 (3d Cir. 2004), but *not* an affidavit attached to the complaint, *Rose*, 871 F.2d at 339 n.3. Matters of public record include "letter decisions of government agencies." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1197 (3d Cir. 1993). This brief cites Advanta's filings with the SEC, two FDIC orders to Advanta, and the FDIC's Material Loss Review, which are cited in the complaint (¶¶ 5-6, 33, 35, 46, 50). Pertinent excerpts from these documents are collected as exhibits in KPMG's Appendix.

2

risk profile"; "engaged in illegal and unfair business practices, including unjustifiably and unreasonably increasing the rates it charged its credit card holders"; and "failed to develop an adequate contingency plan for responding to an early amortization of the bank's credit card securitizations." *Id.* ¶ 5; *see id.* ¶ 6, 44, 54-57. There is no allegation that KPMG was involved in this conduct or that this allegedly false information in the registration statement was in KPMG's audit report, the only part of the registration statement for which KPMG is responsible.[2]

The claim against KPMG concerns Advanta's provision for loan losses, which the complaint alleges "'represents management's estimate of probable losses inherent in the on-balance sheet receivable portfolio'"—"'[t]he allowance evaluation is inherently subjective as it requires estimates that are susceptible to significant revision as more information becomes available.'" SAC ¶ 50 (quoting Advanta's 3/13/09 10-K at 29, Ex. 1); *accord id.* ¶ 46 (quoting Advanta's 2/28/08 10-K at 28-29, Ex. 2). Plaintiffs allege that KPMG's audit report—which stated that "[i]n our opinion" Advanta's 2008 financial statements conformed with GAAP and fairly presented the company's financial position—was false because "Advanta's loan loss allowance was inadequate." *Id.* ¶¶ 62, 67-68. The complaint does not allege an amount by which the allowance supposedly was understated.[3] According to the complaint, Advanta's loan loss allowance was inadequate because Advanta "fail[ed] to incorporate into its loan loss methodology anticipated and actual changes in [its customers'] portfolio behavior" (*id.* ¶ 67),

---

[2] "Under 15 U.S.C. § 77k(a)(4), accountants are only liable for the parts of a registration statement that they have prepared or certified." *Underland*, 2011 WL 4017908, at *10 (citing *Herman & MacLean v. Huddleston*, 459 U.S. 375, 386 n.22 (1983)). KPMG did not "certify" anything—its audit report does not use the words "certify" or "certification" (see 3/13/09 10-K at 59-60, Ex. 1)—but it did prepare its audit report.

[3] Advanta's financial statements show that its loan loss provision rose from $38.6 million in 2006, to $58 million in 2007, and $123 million in 2008. 3/13/09 10-K at 78 (Ex. 1); *see* SAC ¶¶ 45, 50. These amounts are listed in the financial statements as "provision for credit losses." 3/13/09 10-K at 64, 78 (Ex. 1); 2/28/08 10-K at 56, 70 (Ex. 2). The complaint refers to the same amounts as the "provision for loan losses" (¶ 45) and "reserve for credit losses" (¶ 50).

thus allegedly "understating its loan losses" (*id.* ¶¶ 5, 45). Plaintiffs further allege that "it *appears* that KPMG ignored significant adverse credit data that was available to it at the time, which is a violation of PCAOB and [sic] standards." *Id.* ¶ 67 (emphasis added); accord *id.* ¶¶ 71-72. The claim against KPMG is now limited to KPMG's March 13, 2009 audit report on Advanta's 2008 financial statements (for the year ended December 31, 2008). See *id.* ¶¶ 62-73. There are no allegations about KPMG with respect to Advanta's 2007 financial statements.

Despite the Court's order holding the prior complaint deficient for not "alleg[ing] what GAAP standards KPMG violated" (*Underland*, 2011 WL 4017908, at *10), the new complaint has the same defect: it does not allege that KPMG violated any particular GAAP standard, Public Company Accounting Oversight Board ("PCAOB") standard, or generally accepted auditing standard ("GAAS"). The complaint (¶ 69) specifies only one standard relevant to KPMG's work —Statement of Financial Accounting Standards ("FAS") No. 5—but does not allege that KPMG violated FAS No. 5. Instead of alleging that KPMG violated particular standards, the complaint contains only general assertions about KPMG's purported violations of GAAS or GAAP:

- KPMG's conduct "is a violation of PCAOB and [sic] standards" (¶ 67);

- Advanta's financial statements "were not 'in conformity with U.S. generally accepted accounting principles'" (¶ 71); and

- KPMG's statements about Advanta's financial statements and KPMG's audits were "false," "misleading," and "lacked a reasonable basis" (¶¶ 27, 63, 68, 72).

Rather than plead a factual basis for their claim, the allegations against KPMG rely heavily on a declaration of a purported expert, Colin Johns, which plaintiffs attach to, and cite in, their complaint. *Id.* ¶¶ 27, 63-67, 69-72. The declaration quotes several professional standards (Decl. ¶¶ 10, 13-15), but it does not opine that KPMG violated any of those standards (*id.* ¶¶ 18-25). Instead, the Declaration explicitly "assum[es]" the existence of facts that are not pled (and that cannot be true, see *infra* at 8-9), and given those assumptions about hypothetical facts, states

4

that it would be "a reasonable inference" that KPMG violated unspecified standards. *Id.*

In October 2010, the FDIC concluded in its Material Loss Review that "a major cause of Advanta's failure was the fact that it did not develop an adequate contingency plan for dealing with an early amortization event." SAC ¶ 75; see Ex. 3, Executive Summary at 2. Neither the Material Loss Review nor the FDIC orders cited in the complaint (Exs. 4-5) referred to KPMG or its audit report. See also *Underland*, 2011 WL 4017908, at *10 ("The FDIC reports do not conclude that Advanta's financial results were not prepared in conformity with GAAP").

KPMG is sued under § 11, which provides for liability when a registration statement has "an untrue statement of a material fact" or "omit[s]…a material fact required to be stated…or necessary to make the statements…not misleading." 15 U.S.C. § 77k(a); see SAC ¶¶ 86-92.

## ARGUMENT

### I. The Second Amended Complaint Does Not State A Plausible Claim Against KPMG.

A complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility" only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). But when a complaint "stops short of the line between possibility and plausibility of 'entitle[ment] to relief'" (*Twombly*, 550 U.S. at 557)—*i.e.*, where a claim is merely "'conceivable'" and "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct"—it must be dismissed. *Iqbal*, 129 S. Ct. at 1950-51. For many reasons, this complaint, like its predecessor, does not state a plausible claim against KPMG.

### A. The Second Amended Complaint Does Not Satisfy This Court's Standard: It Still Does Not Allege What GAAP Provisions KPMG Supposedly Violated Or What Was False Or Misleading In Its Report.

As noted earlier, this Court held in September that plaintiffs had not stated a claim

against KPMG because they did not allege "what GAAP standards KPMG violated []or how the statements in the audit report were false or misleading at the time they were made." *Underland*, 2011 WL 4017908, at *10. As a result, the Court held that the allegations against KPMG "are entirely conclusory and do not contain factual matter sufficient to support a plausible claim for relief." *Id.* See also *Dutton v. Harris Stratex Networks*, 270 F.R.D. 171, 178 (D. Del. 2010) (dismissing a "'threadbare'" § 11 claim against an auditor, because the complaint did not "allege[] which standards [the auditor] violated, how the statements made in the audit opinion were false or misleading at the time they were made, what deficiencies existed in the performance of the audit negating a reasonable basis for the audit opinion, and what aspects of the audit were negligently performed") (cited in *Underland*, 2011 WL 4017908, at *10 n.116).

The new complaint does not contain the allegations required by this Court and *Dutton*. No facts are pled to show that KPMG did anything wrong or that its audit report was incorrect. Most glaringly, the complaint still does not allege "what GAAP standards KPMG violated." *Underland*, 2011 WL 4017908, at *10. It alleges only that Advanta's financial statements "were not 'in conformity with U.S. generally accepted accounting principles'" (¶ 71) and that KPMG's statements and audits were "false," "misleading," and "lacked a reasonable basis" (¶¶ 27, 63, 68, 72). As before, these allegations are "entirely conclusory and do not contain factual matter sufficient to support a plausible claim for relief." *Underland*, 2011 WL 4017908, at *10. See *Iqbal*, 129 S. Ct. at 1950 (allegations that "are no more than conclusions[] are not entitled to the assumption of truth" and do not state a plausible claim); *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) ("'unsupported conclusions,'" "'unwarranted inferences,'" and "'a legal conclusion couched as a factual allegation'" are not taken as true on a motion to dismiss).

Moreover, although plaintiffs allege "Advanta was not calculating its loan loss allowance as described" in Advanta's 10-K (¶ 47), this Court has already held that this also does not state a

6

claim against KPMG: "alleg[ing] that Advanta did not conform to its disclosed methodology for computing loan loss reserves…is insufficient to show that KPMG's audit report contained misstatements." *Underland*, 2011 WL 4017908, at *10 n.117. As with the previous complaint, "Plaintiffs have not alleged that Advanta's methodology was equivalent to GAAP." *Id.* And because "there is 'no single method of evaluating and setting loan loss reserves'…the Court cannot assume that KPMG's statement is false simply because Advanta deviated from its internal accounting method." *Id.* (quoting *Shapiro v. UJB Fin.*, 964 F.2d 272, 281 (3d Cir. 1992)). Nor have plaintiffs pled a GAAS violation or how the audit was misperformed. They make only the conclusory allegation that KPMG's work was "a violation of PCAOB and [sic] standards." ¶ 67. That says nothing. And even if they had alleged a particular GAAS violation—which they have not—that would not state a claim because they have not alleged a GAAP violation. If the financial statements do not violate GAAP, alleged misstatements about auditing them are not material. *In re Williams Sec. Litig.*, 496 F. Supp. 2d 1195, 1286 (N.D. Okla. 2007) (an untrue statement that an audit complied with generally accepted auditing standards "is not 'material' if the company's financial statements do not materially violate GAAP"), *aff'd*, 558 F.3d 1130 (10th Cir. 2009); 15 U.S.C. § 77k(a) (liability for false statements or omissions of "material" facts).

**B.     Under Third Circuit Law, A Declaration Attached To A Complaint Cannot Be Considered On A Motion To Dismiss; In Any Event, The Declaration Here Is Woefully Deficient.**

Plaintiffs cannot satisfy their obligation to allege "what GAAP standards KPMG violated" (*Underland*, 2011 WL 4017908, at *10) by citing the purported expert declaration of Colin Johns attached to their new complaint. See SAC ¶¶ 27, 63-67, 69-72. That is impermissible. It is well settled that an affidavit attached to a complaint *cannot* be considered in ruling on a motion to dismiss. *Rose v. Bartle*, 871 F.2d 331, 339 n.3 (3d Cir. 1989) (an affidavit attached to a complaint "constitutes a matter outside the pleading," and "if [the District Judge

7

does] not exclude it he [is] required to convert the Rule 12(b)(6) motions in these cases into motions for summary judgment"). Thus, whether plaintiffs have stated a claim against KPMG must be determined based on the complaint's allegations, not on the statements in the declaration.[4] See *DeMarco v. Depotech Corp.*, 149 F. Supp. 2d 1212, 1221-22 (S.D. Cal. 2001).

Even if the declaration could be considered at this stage—and *Rose* prohibits that—it is just as defective as the complaint. First, the declaration does not identify a single GAAP or GAAS standard that KPMG supposedly violated. The declaration quotes several standards (Decl. ¶¶ 10, 13-15), but Mr. Johns does not actually say that KPMG violated any of them. See *id.* ¶¶ 18-25. What is more, Mr. Johns's declaration is filled with *conclusory* allegations. See Mot. to Strike ¶¶ 9-15. And rather than rely on *facts*, his statements rest explicitly on *assumptions* about facts not pled in the complaint. See Decl. ¶¶ 18, 20 ("*Assuming* that the conditions detailed in the…FDIC report of examination were in place as of December 31, 2008…") (emphasis added); *id.* ¶ 21 ("*If* the conditions detailed in the…FDIC report of examination were in place as of December 31, 2008…") (emphasis added). Mr. Johns also engages in unvarnished speculation about the contents of a hypothesized conversation between KPMG and the FDIC. See *id.* ¶ 23. All of this is improper. See *In re Paoli R.R. Yard*, 35 F.3d 717, 742, 763-64 (3d Cir. 1994) ("the expert's opinion must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his or her belief"; an expert opinion based on an "assumption" is not admissible).

It is *certain* that two conditions that Mr. Johns assumed existed as of December 31, 2008—"the impact of the early amortization of the bank's securitization trust" and "the impact of management's change to a 120-day charge-off period" (Decl. ¶ 7(c))—did not occur until *June 2009*, three months *after* KPMG's audit report. The Material Loss Review states that early

---

[4] KPMG has filed a separate motion to strike the purported expert declaration.

amortization occurred "in June 2009." Ex. 3 at 7. See also *Underland*, 2011 WL 4017908, at *2

("In June 2009…the early amortization clause was triggered"). Likewise, Advanta's change to a

120-day charge-off period occurred "[e]ffective June 2009." Ex. 6 at 13-14 (Advanta's 11/9/09

10-Q). Assuming that events that did not occur until June 2009 took place in December 2008 is

hindsight contrary to reality. Securities liability "cannot be imposed on the basis of subsequent

events." *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1330 (3d Cir. 2002). See *Rubke v. Capitol

Bancorp*, 551 F.3d 1156, 1164 (9th Cir. 2009) (§ 11 claims "must" be based on "information

[that] existed at the time the registration statement became effective").

    **C.**    **The Second Amended Complaint Does Not Allege A Plausible Claim Against KPMG For Other Reasons As Well.**

The complaint's allegations against KPMG are deficient for other reasons. *First*, the

allegations are vague and equivocal: citing only the flawed declaration, the complaint alleges that

KPMG "*appears*" to have "ignored significant adverse credit data" that is not identified, in

violation of unspecified professional standards (¶ 67), and "*apparently*" did not "incorporat[e]

the available information" on Advanta's loan loss reserves (¶ 72). (Emphasis added.) These are

"naked assertion[s]" devoid of "further factual enhancement," which at most allege that liability

is a "possibility"—not enough to state a claim. *Twombly*, 550 U.S. at 557. These allegations do

not "allow[] the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. To the extent that the "appears" and "apparently"

allegations amount to pleading on information and belief, allegations based on information and

belief are permitted *only* if the complaint alleges "specific facts in support" of the allegations.

*Carpenters Health & Welfare Fund v. Kia Enters.*, 2009 WL 2152276, at *3 (E.D. Pa. July 15,

2009). Accord *Essex Ins. v. Miles*, 2010 WL 5069871, at *3 (E.D. Pa. Dec. 3, 2010); *State Farm

Mut. v. Ficchi*, 2011 WL 2313203, at *5 (E.D. Pa. June 13, 2011). Neither the complaint nor the

declaration sets forth *any* specific facts to support these allegations. As a result, the "absence of any more specific allegations" means that the allegations about what KPMG appears to have done or apparently did are "merely 'legal conclusions couched as factual allegations,' which under *Twombly* and *Iqbal* cannot be taken as true." *Carpenters*, 2009 WL 2152276, at *3.

       *Second*, even if the FDIC orders and Material Loss Review could be considered (see SAC ¶¶ 5-6, 44, 47, 54-60, 67, 71, 75), they do not support, but rather undercut, a claim as to KPMG: they do not mention KPMG or its audit reports. "The FDIC reports do not conclude that Advanta's financial results were not prepared in conformity with GAAP." *Underland*, 2011 WL 4017908, at *10. *Third*, although the complaint suggests that KPMG should have "reviewed the same data as…the FDIC examiners" (¶ 71), the FDIC did *not* conclude that KPMG did anything wrong; in fact, the Material Loss Review (Ex. 3) and FDIC orders (Exs. 4-5) do not mention KPMG or its audit report. Moreover, plaintiffs do not allege—and cannot allege—that an auditor's duties are the same as a regulator's. "An audit performed in accordance with generally accepted auditing standards *is not intended to, and does not, satisfy a regulator's oversight responsibilities*." *Codification of Statements on Auditing Standards*, AU § 9339.05 (2011) (emphasis added) (Ex. 7). The standards are clearly different—and are higher for the regulator.

## II.    The Second Amended Complaint Must—But Does Not—Allege Subjective Falsity.

### A.    Statements Concerning Loss Reserves Are Opinions.

       The sole basis for the claim against KPMG—that Advanta's financial statements did not comply with GAAP, because its loss reserves were allegedly understated (SAC ¶¶ 5, 45, 67)—involves a matter of opinion. Loss reserves are amounts that a bank sets aside "'based on its expectations about future loan losses.'" *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 701 n.1 (3d Cir. 1996) (Alito, J.). Reserves are "estimates or predictions of the likely collection or liquidation experience of the [company] in the future." *Christidis v. First Pa. Mortg.*, 717 F.2d 96, 100 (3d

Cir. 1983). Thus, whether "a loan reserve is adequate or not" requires a "subjective evaluation." *Underland*, 2011 WL 4017908, at *9. See *Fait v. Regions Fin.*, 655 F.3d 105, 113 (2d Cir. 2011) (loss reserves "reflect management's opinion or judgment about what, if any, portion of amounts due on the loans ultimately might not be collectible," which is "inherently subjective"). Loan loss reserves are "based on managerial guesswork about the future economic fortune" of the loan portfolio. *First Nationwide Bank v. Gelt Funding*, 820 F. Supp. 89, 95 (S.D.N.Y. 1993), *aff'd*, 27 F.3d 763 (2d Cir. 1994). Indeed, "[t]here appears to be no single method of evaluating and setting loan loss reserves"—different banks use different approaches, "no method has proven foolproof," and "[n]o matter what method is used, the economic judgments made in setting loan loss reserves can be validated only at some future date." *Shapiro*, 964 F.2d at 281.[5] Plaintiffs admit that a loss reserve "'represents management's estimate of probable losses'" and is "'inherently subjective as it requires estimates that are susceptible to significant revision as more information becomes available.'" SAC ¶¶ 46, 50 (quoting Advanta's 10-Ks).

Consistent with the cases, accounting principles confirm that setting loss reserves is a matter of opinion requiring a substantial amount of judgment. Reserves are increased when loans are "impaired," and loans are not impaired unless it is "probable"—that is, "likely to occur"— that they will not be repaid in full. FAS No. 5 ¶¶ 3, 8 (Ex. 8); FAS No. 114 ¶¶ 8, 10 (Ex. 9). "Probable is a higher level of likelihood than 'more likely than not.'" EITF Topic No. D-80, *Applic. of FASB Stmnts. 5 and 114 to a Loan Portfolio*, Ex. D-80A, Answ. to Q. 8 (Ex. 10).

---

[5] See also *United States v. Morris*, 80 F.3d 1151, 1163, 1164 (7th Cir. 1996) ("'characterizations of reserves as adequate are necessarily a matter of opinion and belief'"—the "estimation of probable losses in a large loan portfolio...is more an art than a science"); *Belmont Holdings v. SunTrust Banks*, 2010 WL 3545389, at *6 (N.D. Ga. Sept. 10, 2010) ("Whether SunTrust had adequate reserves for its predicted loan losses generally is not a matter of objective fact, but rather a statement of SunTrust's opinion regarding what portion of its loan portfolio would be uncollectable"); *In re Countrywide Fin. Deriv. Litig.*, 554 F. Supp. 2d 1044, 1070 (C.D. Cal. 2008) ("the setting of loan loss reserves involves a great deal of discretion").

Accounting principles recognize that "application of the term probable in practice requires judgment" (FAS No. 114 ¶ 49) and that the "complexity" inherent in determining "expected future cash flows" from loans is "unavoidable" (*id.* ¶ 35). See *id.* ¶ 43 ("expected future cash flows from impaired loans are usually uncertain," and "significant judgment" is required to estimate them); EITF Topic No. D-80, Board of Governors, Fed. Reserve Sys., *Recent Developments Regarding Loan Loss Allowances*, at 3 ("Arriving at an appropriate allowance involves a high degree of management judgment and results in a range of estimated losses"; there is "imprecision inherent in most estimates of expected credit losses") (Ex. 10).

Not only are loss reserves matters of opinion, but they reflect the opinion of the company, which prepares its own financial statements. AU § 110.03 (2011) (Ex. 11); *Bily v. Arthur Young & Co.*, 834 P.2d 745, 749, 762 (Cal. 1992). "A company's management—not the auditor—is responsible for the information contained in its financial statements and the propriety of its underlying accounting policies, including compliance with GAAP." *Dronsejko v. Grant Thornton*, 632 F.3d 658, 663 (10th Cir. 2011). An auditor audits the financial statements and issues a report expressing an opinion on whether the financial statements—taken as a whole—fairly present the company's financial position in accordance with GAAP. AU § 110.01; *Bily*, 834 P.2d at 750. Rendering that opinion requires "complex professional judgment." *Bily*, 834 P.2d at 763. See *Shalala v. Guernsey Mem. Hosp.*, 514 U.S. 87, 100 (1995).

In sum, loan loss reserves are matters of opinion. And KPMG's audit opinion on Advanta's financial statements is one step removed from Advanta's opinions about loss reserves.

**B.    Subjective Falsity Allegations Are Required For Section 11 Claims Based On Statements Of Opinion.**

**1.    *Virginia Bankshares* requires subjective falsity to establish a federal securities claim based on an opinion.**

Section 11 provides for liability when a registration statement "contain[s] an untrue

statement of a material fact or omitted to state a material fact." 15 U.S.C. § 77k(a). And deciding whether an opinion is "an untrue statement of... fact" (*id.*) is governed by *Virginia Bankshares v. Sandberg*, 501 U.S. 1083 (1991), a § 14 case. Section 14, which concerns proxy statements, is similar to § 11: a defendant is liable under § 14 for false or misleading statements (or omissions) of "fact." 17 C.F.R. § 240.14a-9(a). See *In re Donald J. Trump Casino Sec. Litig.*, 7 F.3d 357, 372 n.14 (3d Cir. 1993) (*Virginia Bankshares* is "instructive" in addressing § 11 claims); *Fait*, 655 F.3d at 111 n.4 (same; citing *Trump*).

In *Virginia Bankshares*, corporate directors recommended approval of a merger because, they said, minority shareholders could achieve a "'high'" value and receive a "'fair'" price for their stock. 501 U.S. at 1088. The plaintiff alleged that the directors did not believe these statements, but recommended approval just so they could stay on the board.

The issue was "whether statements of reasons, opinions, or beliefs are statements 'with respect to...material fact[s].'" *Id.* at 1091. The Court observed that the directors' "statements of reasons or beliefs...are factual in two senses: [1] as statements that the directors do act for the reasons given or hold the belief stated and [2] as statements about the subject matter of the reason or belief expressed." *Id.* at 1093. The Court held that *both* must exist for there to be § 14 liability for making a false statement: the plaintiff must establish the defendants' "disbelief, or undisclosed belief or motivation" *and* provide "objective evidence...that the statement also expressly or impliedly asserted something false or misleading about its subject matter." *Id.* at 1095-96. For the first requirement—showing that the statement at issue "misstate[s] the speaker's reasons"—the Court held that "[a] statement of belief may be open to objection only" if it is "a misstatement of the psychological fact of the speaker's belief in what he says." *Id.* at 1095. See *id.* at 1087 ("We hold that knowingly false statements of reasons may be actionable"); *id.* at 1108-09 (Scalia, J., concurring) ("As I understand the Court's opinion, the statement 'In the

13

opinion of the Directors, this is a high value for the shares' would produce liability if in fact it was not a high value *and the directors knew that*. It would not produce liability if in fact it was not a high value but the directors honestly believed otherwise") (emphasis added).

Thus, under *Virginia Bankshares*, "a material misstatement of *opinion* is by its nature a false statement, not about the objective world, but about the defendant's own belief," which "cannot be false at all unless the speaker is knowingly misstating his truly held opinion." *Podany v. Robertson Stephens, Inc.*, 318 F. Supp. 2d 146, 154, *motion to amend denied*, 350 F. Supp. 2d 375 (S.D.N.Y. 2004). See also *In re Credit Suisse First Boston*, 431 F.3d 36, 49 (1st Cir. 2005); *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1120 n.6 (10th Cir. 1997).

The Third Circuit follows these principles. As *Trump* held, opinions "may be actionable misrepresentations if the speaker does not *genuinely* and reasonably believe them." 7 F.3d at 368 (emphasis added). And under *Virginia Bankshares*, statements about the adequacy of loss reserves are actionable only *if* they were knowingly or recklessly false. *Shapiro*, 964 F.2d at 281-83. See also *Underland*, 2011 WL 4017908, at *9 (*Shapiro* held that "plaintiff's claims were not sufficient because they did not allege the defendant *knew* the [statements] were false").

## 2. *Virginia Bankshares*' subjective falsity requirement applies to Section 11 claims based on opinions.

In § 11 cases involving allegedly false opinions, courts around the country have repeatedly applied *Virginia Bankshares* and held that the plaintiff must allege "that the statements were both objectively and subjectively false or misleading" in order to state a claim. *Rubke*, 551 F.3d at 1162 (affirming dismissal of a § 11 claim based on a fairness opinion because the complaint "fails to allege" that the defendants "believed the deal offered…was unfair"). See also *Fait*, 665 F.3d at 110 ("when a plaintiff asserts a claim under section 11…based upon a belief or opinion alleged to have been communicated by a defendant, liability lies only to the

14

extent that the statement was both objectively false and disbelieved by the defendant at the time it was expressed"); *Plumbers' Union v. Nomura Asset Accept. Corp.*, 632 F.3d 762, 775 (1st Cir. 2011) (affirming dismissal of § 11 claims because "[d]efendants are not liable under the securities laws when their opinions…were honestly held when formed but simply turn out later to be inaccurate; nor are they liable only because they could have formed 'better' opinions").

In particular, *Virginia Bankshares'* subjective falsity requirement has been the reason for dismissing § 11 claims based on opinions concerning the adequacy of a bank's loan loss reserves, including most significantly the Second Circuit's recent decision in *Fait*, 655 F.3d at 113 ("Because the complaint does not plausibly allege subjective falsity, it fails to state a claim" under § 11).[6] These cases are consistent with *Shapiro*, which held that statements about the adequacy of loan loss reserves are not actionable under the securities laws unless made knowingly or recklessly—*i.e.*, with subjective falsity. 964 F.2d at 281-83.

Plaintiffs do not allege that KPMG did not truly believe its audit opinion with respect to Advanta's loan loss reserves. Indeed, "Plaintiffs do not contend that KPMG made its false statements with fraudulent intent." SAC ¶ 73; see *id.* ¶¶ 8, 87 ("expressly exclud[ing] and disclaim[ing] any allegation that could be construed as alleging fraud or intentional or reckless misconduct"). Accordingly, the claim against KPMG should be dismissed.

## CONCLUSION

For all of these reasons, the claim against KPMG should be dismissed with prejudice.

---

[6]  See also, *e.g.*, *City of New Orleans Employees' Ret. Sys. v. Private Bancorp*, No. 10 C 6826, at 26 (N.D. Ill. Nov. 3, 2011) (Ex. 12) (statements "regarding the adequacy of loan loss reserves can only be actionable under the Securities Act if it is alleged that defendants did not actually believe that loan loss reserves were adequate and defendants had no reasonable factual basis for that belief"); *Belmont*, 2010 WL 3545389, at *1, 6 ("Plaintiff does not allege that SunTrust did not actually hold the opinion it expressed in its financial statements at the time they became effective").

November 18, 2011

Respectfully submitted,

/s/ Stanley J. Parzen
Stanley J. Parzen
James C. Schroeder
Justin A. McCarty
MAYER BROWN LLP
71 S. Wacker Dr.
Chicago, IL  60606
312-782-0600

Geoffrey A. Kahn
Edward D. Rogers
Ruth S. Uselton
BALLARD SPAHR LLP
1735 Market St., 51st Floor
Philadelphia, PA  19103
215-665-8500

*Attorneys for Defendant KMPG LLP*

16

## CERTIFICATE OF SERVICE

I, Ruth S. Uselton, hereby certify that on November 18, 2011, the above KPMG LLP's Motion to Dismiss The Second Amended Class Action Complaint, with supporting Memorandum of Law and Exhibits, was served upon all counsel of record, identified below, via email by operation of the electronic filing system of the United States District Court for the Eastern District of Pennsylvania.

Jeffrey J. Ciarlanto
Brett David Stecker
Patricia C. Weiser
Robert B. Weiser
THE WEISER LAW FIRM PC
121 N. Wayne Avenue
Suite 100
Wayne, PA 19087

 Geoffrey M. Johnson
SCOTT & SCOTT LLP
33 River Street
Chagrin Falls, OH 44022

Thomas Laughlin
SCOTT & SCOTT LLP
500 Fifth Avenue, 40th Floor
New York, NY 10110

*Attorneys for Plaintiffs.*

Michael L. Kichline
Sarah L. Wyatt
Alexander Bilus
DECHERT LLP
2929 Arch Street
Philadelphia, PA 19104

*Attorneys for Defendnats Denis Alter,*
*William A. Rosoff, Philip M. Brown. David*
*B. Weinstock, Robert S. Blank, Max Botel,*
*Thomas Costello, Dana Becker Dunn,*
*Robert Lumbner, Olaf Olaffson, and*
*Michael Stolper.*

/s/ Ruth S. Uselton
*An attorney for KPMG LLP*