IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|   |   |
|---|---|
| WILLIAM E. UNDERLAND and MARK SCHALLER, *on behalf of themselves and all others similarly situated*, <br>     Plaintiffs, <br>             v. <br><br> DENNIS ALTER, WILLIAM ROSOFF, PHILIP BROWNE, DAVID WEINSTOCK, ROBERT BLANK, MAX BOTEL, THOMAS COSTELLO, DANA BECKER DUNN, RONALD LUBNER, OLAF OLAFSSON, MICHAEL STOPLER, and KPMG LLP, <br>     Defendants. | CIVIL ACTION <br> NO. 10-3621 |

## MEMORANDUM OPINION & ORDER

**RUFE, J.**                                                                                                                                        July 16, 2012

Plaintiffs bring this securities class action on behalf of a putative class of individuals who purchased Advanta Corporation ("Advanta") RediReserve notes between February 29, 2008, and November 28, 2009. These notes were the subject of Registration Statements Advanta filed with the Securities Exchange Commission ("SEC").[1] This is Plaintiffs' Second Amended Complaint. By Memorandum Opinion and Order dated September 9, 2011, the Court dismissed certain claims set forth in Plaintiffs' First Amended Complaint and allowed Plaintiffs to file an amended pleading. In their Second Amended Complaint, Plaintiffs allege that the officers and directors of Advanta ("the

---

[1] 2d Am. Compl. ¶¶ 28, 31-35.

Advanta Defendants")[2] signed Registration Statements containing material misstatements and omissions in order to sell $500 million worth of RediReserve notes, in violation of Sections 11, 12(a)(2), and 15 of the Securities Exchange Act of 1933.[3] The Second Amended Complaint also alleges that KPMG LLP ("KPMG"), the accounting and auditing firm which reviewed the accuracy of and certified Advanta's financial statements, is liable for certifying the false or misleading contents of the Registration Statements.[4]

Both the Advanta Defendants and KPMG move under Federal Rule of Civil Procedure 12(b)(6) to dismiss all counts of the Second Amended Complaint. For the reasons set forth below, both motions are denied.

## I. Background[5]

Advanta was an issuer of credit cards to small businesses.[6] On August 18, 2006, Advanta filed a "shelf" Registration Statement and prospectus with the SEC, indicating Advanta's intent to offer $500 million worth of unsecured debt securities called RediReserve notes.[7] The initial Registration Statement was amended once in 2008, and twice in 2009. The Registration Statements

---

[2] The Advanta Defendants are Dennis Alter, Chairman of the Board and Advanta's CEO; William A. Rosoff, Vice Chairman of the Board and Advanta's President; Philip M. Browne, Advanta's Senior Vice President and Chief Financial Officer; David Weinstock, Advanta's Vice President and Chief Accounting Officer; and directors Max Botel, Thomas Costello, Dana Becker Dunn, Ronald Lubner, Olaf Olafsson, and Michael Stopler.

[3] See 15 U.S.C. § 77k.

[4] 2d Am. Compl. ¶ 27.

[5] Because the Court's September 9, 2011 Memorandum Opinion [Doc. No. 59] discussed the factual background of this litigation at length, the Court will provide only a brief overview herein.

[6] 2d Am. Compl. ¶ 2.

[7] 2d Am. Compl. ¶¶ 4, 29.

assured investors that Advanta was a prudent company in "very strong" financial condition.[8] Advanta's notes were marketed to individual rather than institutional investors, primarily through newspaper advertisements.[9]

The Second Amended Complaint alleges that the Registration Statements contained several misstatements or omissions of material fact. First, Plaintiffs allege that the Advanta Defendants falsely asserted that they were in compliance with capital adequacy requirements.[10] Second, Plaintiffs allege that the Advanta Defendants did not follow their own disclosed method for calculating the adequacy of the loan loss reserve, by failing to adjust for changes in customer behavior driven by repricing and/or the economic downturn; therefore investors were misled regarding the adequacy of Advanta's loan loss reserve and net income.[11] Plaintiffs also allege that Advanta's accounting firm, KPMG, improperly certified that the loan loss reserve calculations accurately reflected Advanta's financial health, ignoring significant adverse credit data in violation of general auditing standards. Finally, Plaintiffs allege that the Advanta Defendants violated their duty to disclose material trends as required by 17 C.F.R. § 229.303 (a)(3)(ii) ("Item 303"), by failing to disclose the fact that Advanta had repriced 68% of its credit card portfolio without regard to the customers' credit histories, causing a significant increase in payment delinquencies.[12]

---

[8] 2d Am. Compl. ¶ 5.

[9] 2d Am. Compl. ¶¶ 4, 40-42.

[10] 2d Am. Compl. ¶¶ 44, 49.

[11] 2d Am. Compl. ¶¶ 45-47, 50.

[12] 2d Am. Compl. ¶¶ 51-52.

**II. Standard of Review**

In reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted, the Court must accept a plaintiff's factual allegations as true and construe the complaint in the light most favorable to the plaintiff.[13] Courts are not, however, bound to accept as true legal conclusions couched as factual allegations,[14] or "accept as true unsupported conclusions and unwarranted inferences."[15] The Complaint must set forth "direct or inferential allegations [for] all the material elements necessary to sustain recovery under some viable legal theory."[16] And it must allege "enough facts to state a claim to relief that is plausible on its face."[17] "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a mere possibility that a defendant has acted unlawfully."[18]

**III. Discussion**

   A. <u>Absence of Genuine Case and Controversy</u>

The Advanta Defendants first argue that there is no genuine case and controversy before this Court, as Plaintiffs lack Article III standing and the case is not ripe for review. The Court disagrees.

The Advanta Defendants argue that Plaintiffs lack Article III standing because they have not

---

[13] Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citing Pinker v. Poche Holdings, 292 F.3d 361, 374, n. 7 (3d Cir. 2002).

[14] Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 564 (2007).

[15] Schuylkill Energy Res., Inc. v. Pa. Power & Light Co., 113 F.3d 405, 417 (3d Cir.), cert. denied, 522 U.S. 977 (1997).

[16] See Twombly, 550 U.S. at 562 (quoting Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1106 (7th Cir. 1984)).

[17] Id. at 570.

[18] Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly 550 U.S. at 556).

4

yet suffered an injury in fact. The Advanta Defendants explain that Plaintiffs may yet recover 100% of their losses through Advanta's Chapter 11 bankruptcy, as the Disclosure Statement approved by the Bankruptcy Court indicates that Plaintiffs and other holders of Retail Notes should recover between 64.4% and 100% under the terms of the reorganization plan. This argument is not persuasive. Plaintiffs have alleged an injury in fact, which occurred when Advanta went into bankruptcy, over two years ago, with approximately $140 million in unpaid RediReserve notes outstanding. The injury alleged is neither speculative nor theoretical.[19] The mere possibility that Advanta may compensate Plaintiffs for this injury through the bankruptcy process does not deny Plaintiffs standing to sue the Advanta Defendants in this Court for the same injury. Were Advanta a co-defendant to this litigation, this Court would not dismiss the claims against the Advanta Defendants simply because Plaintiffs *might,* at some future date, obtain a judgment covering 100% of their losses from Advanta. As Plaintiffs have otherwise adequately pled grounds for holding the Advanta Defendants liable for a genuine injury, Defendants' speculation that Plaintiffs *may* receive partial or full relief from another party in another court at some point in the future does not impair their standing to sue in this Court at this point in time.

The Advanta Defendants also argue that the controversy is not ripe for judicial review, as Plaintiffs may recover all of their alleged losses through Avanta's bankruptcy process. "The function of the ripeness doctrine is to determine whether a party has brought an action prematurely. . . ."[20] The Court must examine whether "the parties [are] in a sufficiently adversarial posture to be able to defend their positions vigorously[,]" whether the facts of the case can be sufficiently

---

[19] In re Schering Plough Corp. Intron/ Temodar Consumer Class Action, 678 F.3d 235, 244-45 (3d Cir. 2012).

[20] Peachlum v. City of York, Pennsylvania, 333 F.3d 429, 433 (3d Cir. 2003) (citation omitted).

developed so that the Court can decide liability conclusively, and whether a party has genuinely been injured.[21] Here, the Court finds that the parties are in an adversarial posture, the case involves the analysis of past Registration Statements, which will allow the Court to decide liability conclusively, and Plaintiffs have alleged a genuine injury. While their recovery from Advanta through the bankruptcy process might ultimately affect the Court's calculation of damages, the pending bankruptcy reorganization does not affect the ripeness of the controversy. Accordingly, the Court finds this dispute is "sufficiently concrete to satisfy the constitutional and prudential requirements of the [ripeness] doctrine."[22]

Finally, the Advanta Defendants ask this Court to exercise its discretion to stay this litigation until the bankruptcy distributions are completed. However, they provide the Court with no information regarding the time frame for the distributions. Accordingly, the request for a stay is denied without prejudice.

B. <u>Failure to State a Claim</u>

Sections 11, 12 and 15 of the Securities Act of 1933, on which Plaintiffs' claims are founded, protect investors by imposing liability on certain participants in a registered security offering when the publicly filed documents used during the offering contain material misstatements or omissions.[23] Sections 11[24] and 12(a)(2)[25] allow purchasers to sue certain parties in a registered

---

[21] <u>Id.</u>

[22] <u>Id.</u>

[23] <u>In re Adams Golf, Inc. Sec. Litig.</u>, 381 F.3d 267, 273 (3d Cir. 2004).

[24] Section 11 provides a right of action to purchasers:

> In case any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not

offering when materially false or misleading statements are included in registration statements and prospectuses.[26] Section 15 imposes derivative liability on one who "controls any person liable under Section 11 or 12."

"Sections 11 and 12(a)(2) are 'Securities Act siblings' with 'roughly parallel elements.'"[27] They "impose upon defendants the duty to disclose any material facts that are necessary to make disclosed material statements, whether mandatory or volunteered, not misleading."[28] When defendants "voluntarily disclose information, they have a duty to disclose additional material facts only to the extent that the volunteered disclosure was misleading as to a material fact."[29] An omitted fact is material if there is a "substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable

---

misleading

15 U.S.C. § 77k(a).

[25] Section 12(a)(2) provides that any defendant who:

> [O]ffers or sells a security. . . by . . . means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission, shall be liable . . . to the person purchasing such security from him . . .

15 U.S.C. 77l(a)(2).

[26] See 15 U.S.C. §§ 77k, 77l(a)(2).

[27] In re Citigroup Inc. Bond Litig., 723 F. Supp. 2d 568, 583 (S.D.N.Y. 2010) (quoting Morgan Stanley, 599 F.3d at 359).

[28] Craftmatic Sec. Litig. v. Kraftsow, 890 F.2d 628, 641 (3d Cir. 1989).

[29] Id. at 641 n.17.

shareholder."[30]

A Section 11 action can be brought only against the issuer, its directors or partners, and accountants who are named as having prepared or certified the registration statement.[31] For those parties, "[l]iability . . . is virtually absolute, even for innocent misstatements."[32]

Thus, to state a *prima facie* case under Section 11, plaintiffs need only allege that they purchased securities pursuant to a registration statement that contained a material misstatement or omission.[33] Similarly, to state a claim under Section 12(a)(2), plaintiffs need only allege that they purchased securities pursuant to a materially false or misleading "prospectus or oral communication."[34] Plaintiffs may also establish a *prima facie* violation of Sections 11 or 12(a)(2) by alleging that "an omitted material fact was required to be included by the securities laws . . . ."[35]

Here, Plaintiffs properly alleged that they acquired securities pursuant to a registration statement, and that the Advanta Defendants and KPMG are among those liable under the Securities

---

[30] Id. at 639 (quotations omitted).

[31] 15 U.S.C. § 77k(a).

[32] Herman & MacLean v. Huddleston, 459 U.S. 375, 382 (1983).

[33] In re Adams Golf, 381 F.3d at 273; see also Herman & MacLean, 459 U.S. at 381–82. Plaintiffs' relatively light burden to show a Section 11 violation stands in sharp contrast to the requirements imposed by the anti-fraud Securities Exchange Act of 1934 (the "1934 Act"), which demands a showing of reasonable reliance and scienter. In re Adams Golf, 381 F.3d at 274 n.5. Pleadings alleging violations of the 1934 Act must also conform to the "stringent" pleading requirements imposed by the Private Securities Litigation Reform Act of 1995. Id.. Because Plaintiffs have explicitly disclaimed any allegation of fraud, their allegations need not meet the heavy burden imposed by the 1934 Act.

[34] 15 U.S.C. § 77l(a)(2). Unlike Section 11, which limits liability to certain parties, liability under Section 12 is broader, and applies to any defendant who offers or sells a security through a written prospectus or oral communication related to a prospectus, by use of some means of interstate commerce or the mails.

[35] In re Adams Golf, 381 F.3d at 277.

Act of 1933.[36]  As such, the only issue presented by the pending motions to dismiss is whether Plaintiffs have sufficiently alleged that the challenged Registration Statements contained material misstatements or omissions, or omitted information required by securities laws and regulations.

A misstatement or omission "' is material if there is a substantial likelihood that a reasonable shareholder would consider it important' in making an investment decision."[37]  Thus, for a misrepresentation or omission to be material, "there must be a substantial likelihood that the disclosure of the omitted fact [or misrepresentation] would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available."[38]  "To be actionable, a statement or omission must have been misleading at the time it was made; liability

---

[36] 15 U.S.C.A. § 77k(a) imposes liability upon:

> (1) every person who signed the registration statement;
>
> (2) every person who was a director of (or person performing similar functions) or partner in the issuer at the time of the filing of the part of the registration statement with respect to which his liability is asserted;
>
> (3) every person who, with his consent, is named in the registration statement as being or about to become a director, person performing similar functions, or partner;
>
> (4) every accountant, engineer, or appraiser, or any person whose profession gives authority to a statement made by him, who has with his consent been named as having prepared or certified any part of the registration statement, or as having prepared or certified any report or valuation which is used in connection with the registration statement, with respect to the statement in such registration statement, report, or valuation, which purports to have been prepared or certified by him; and
>
> (5) every underwriter with respect to such security.

[37] In re Constar Int'l Inc. Sec. Litig., 585 F.3d 774, 783 (3d Cir. 2009) (quoting TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438, 449 (1976)).  Although TSC Industries involved a proxy solicitation dispute (under § 14(a) of the Securities Exchange Act of 1934), the Third Circuit has made the TSC standard applicable to Sections 11 and 12(a)(2) of the 1933 Act.  See In re Donald J. Trump Casino Sec. Litig.- Taj Mahal Litig., 7 F.3d 357, 369 (3d Cir. 1993).

[38] Basic, Inc. v. Levinson, 485 U.S. 224, 231-32 (1988) (quoting TSC Indust., Inc. v. Northway, Inc., 426 U.S. 438, 449 (1976)).

9

cannot be imposed on the basis of subsequent events."[39]  "Materiality is ordinarily an issue left to the factfinder and is therefore not typically a matter for Rule 12(b)(6) dismissal."[40]  However, where information is obviously unimportant and immaterial, the Court may find, as a matter of law, that the allegations fail to state a claim upon which relief may be granted.[41]

### 1. *Statements about the Adequacy of Loan Loss Reserves*

Loan-loss reserves represent management's estimate of what portion of amounts due on loans might not be collectible.[42]  Accordingly, loan loss reserves must be increased when it is probable that loans will not be repaid in full.  While some subjective judgment is required in calculating necessary loan loss reserves, in its registration statements Advanta acknowledges that the calculations must be revised periodically to incorporate factual information that later becomes available.  As in their First Amended Complaint, in the Second Amended Complaint Plaintiffs allege that Advanta disclosed a methodology by which it claimed loan loss reserves were calculated, but did not conform to that methodology.  The disclosed method required them to incorporate, among other things, *current* losses into the loan loss reserve estimation.  As a result of its failure to employ the disclosed methodology, Advanta understated its loan loss reserves.  Because loan loss reserves are subtracted from gross income, the understatement of loan loss reserves also caused Advanta to misrepresent its net income.  In its September 9, 2011 Memorandum Opinion and Order, this Court found that the Plaintiffs adequately pled that the Advanta Defendants approved

---

[39] In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1330 (3d Cir. 2002).

[40] In re Adams Golf, Inc., 381 F.3d at 274 (citing Weiner v. Quaker Oats Co., 129 F.3d 310, 317 (3d Cir. 1997) ("[T]he emphasis on a fact-specific determination of materiality militates against a dismissal on the pleadings.")).

[41] Craftmatic, 890 F.2d at 641.

[42] Fait v. Regions Fin., 655 F.3d 105, 113 (2d Cir. 2011).

Registration Statements which contained material misstatements of fact with regard to loan loss reserves and net income. Defendants have given the Court no grounds to disturb that finding here.

Under 15 U.S.C. § 77k(a)(4), accountants may be held liable for misstatements in registration statements, but only for material misstatements the accountant has prepared or certified.[43] In this case, Plaintiffs allege that accounting firm KPMG violated Section 11 by certifying Advanta's false statements about its loan loss reserves in Advanta's Registration Statements.[44] In a 2009 report, KPMG stated:

> We have audited the accompanying consolidated balance sheets of Advanta Corp. and subsidiaries (the "Company") as of December 31, 2008 and 2007. . . . We conducted our audits in accordance with the standards of the Public Company Accounting Oversight Board (United States). Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the [Company's] financial statements are free of material misstatement. . . . In our opinion, the consolidated financial statements referred to above present fairly, in all material respects, the financial position of the Company as of December 31, 2008 and 2007, and the results of its operations and its cash flows for each of the years in the three-year period ended December 31, 2008, in conformity with U.S. generally accepted accounting principles.[45]

KPMG's certification of Advanta's statements regarding the adequacy of its loan loss reserves would violate Section 11 if Advanta's methodology did not conform to generally accepted accounting principles ("GAAP"). In the Second Amended Complaint, Plaintiffs allege that KPMG certified financial statements about Advanta's loan loss reserves that did not comply with Financial Accounting Standards Board Statement of Financial Accounting Concepts Number 5 ("FASB No. 5"). Specifically, Plaintiffs allege that Advanta failed to consider all material factors ("past and

---

[43] Herman & MacLean, 459 U.S. at 386 n.22.

[44] 2d Am. Compl. ¶¶ 8, 27, 63.

[45] 2d Am. Compl. ¶ 62.

11

present information") when determining necessary loan loss reserves, and KPMG failed to verify that Advanta had used accurate source data, made reasonable assumptions, and accounted for known or knowable factors such as changes in its business and in the industry as a whole. In short, Plaintiffs allege that KPMG certified Advanta's financial statements without verifying that Advanta had considered all relevant internal and external factors and risks.[46] KPMG argues that the loan loss reserve is a purely subjective measure or matter of opinion, but the Third Circuit points out that any techniques used for evaluating and setting loan loss reserves "require quantitative and qualitative analyses of the past and present status of loans."[47]

The Court has already found that Plaintiffs adequately state a claim against Advanta for material misstatements regarding the loan loss reserves. Now, Plaintiffs argue that Advanta's failure to consider certain material factors (including past and present information about loan status) should have been apparent to KPMG during its audit, especially as Advanta failed to comply with its own disclosed formula for determining loan loss reserves. Therefore, it is alleged, KPMG should have been aware of GAAP violations, and its statements endorsing the adequacy of Advanta's loan loss reserves were false, misleading, and/or lacking a reasonable basis.[48]

KPMG argues that Plaintiffs' allegations do not identify specific GAAP violations of which KPMG should have been aware. However, the Court finds that Plaintiffs have adequately alleged that KPMG certified that Advanta's loan loss reserve calculations conformed to GAAP when in fact

---

[46] Plaintiffs note that the FDIC audit supports their allegation, in that the FDIC found that Advanta was ignoring available and material adverse credit data in calculating the necessary loan loss reserve. For example, the FDIC found that Advanta failed to consider changes in Advanta's own lending policies and procedures, as well as general economic trends, and hence Advanta was maintaining an inadequate loan loss allowance.

[47] Shapiro v. UJB Fin. Corp., 964 F.2d 272, 281 (3d Cir. 1992).

[48] In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1428-29 (3d Cir. 1997).

they failed to incorporate past and present adverse credit trends and thus did not comply with FASB No. 5. These allegations may or may not be borne out by factual evidence and expert testimony, but at this stage in the proceedings the Court finds that the Second Amended Complaint sufficiently states a claim against KPMG for approving misleading statements which violated GAAP principles.[49]

### 2. *Statements about Compliance with Capital Adequacy Requirements*

Plaintiffs allege that Advanta falsely reported that it was in compliance with the capital adequacy requirements to which it was subject. In its prior Memorandum Opinion and Order, this Court found that Plaintiffs adequately pled this issue, and Defendants do not provide any grounds to disturb that finding here.

### 3. *Disclosure of Material Trends*

Item 303 creates a duty to include in registration statements "any known trends or uncertainties that have had or that the registrant reasonably expects will have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations."[50] The duty to disclose is triggered when the trend is both known to management *and* is seen as reasonably likely to have a material effect on the company's financial condition.[51]

In the Second Amended Complaint, Plaintiffs allege that the Advanta Defendants failed to disclose material trends in violation of Item 303. Specifically, they allege that Advanta failed to

---

[49] See In re Am. Int'l Grp., Inc. 2008 Sec. Litig., 741 F. Supp. 2d 511, 541 (S.D.N.Y. 2010).

[50] 17 C.F.R. § 229.303(a)(3)(ii).

[51] 17 C.F.R. § 229.303(a)(3)(ii); Litwin v. Blackstone Group, L.P., 634 F.3d 706, 716 (2d Cir. 2011). Defendants argue that Plaintiffs have failed to allege that Defendants had actual knowledge that the repricing scheme led to a rise in delinquencies and charge-offs. That is not relevant to the inquiry. The Court need only examine whether Plaintiffs have alleged that management was aware that the repricing was *reasonably likely* to have a material effect on the company's net income.

disclose that between June 2007 and November 2008 it was repricing the credit lines of approximately 68% of its customers, often without regard to the customer's credit standing or payment history, and raising interest rates as high as 37%.[52] Plaintiffs further allege that this repricing was reasonably likely to have a material impact on the financial condition of the company by causing a significant increase in delinquent payments.[53]

Defendants counter that Advanta did disclose the possibility of repricing. They point to language in the Registration Statements disclosing that Advanta monitors the credit quality of its cardholders and increases or decreases finance charge rates in response to changes in payment history, credit standing, or other factors indicating a risk of future non-payment. In light of these disclosures, Defendants argue, their financial statements were not materially misleading with regard to the repricing of accounts. Plaintiffs point out that while Advanta disclosed the *possibility* that it might modify the pricing on certain accounts in response to information about that the account holders, it failed to disclose that it *had in fact* repriced 68% of its credit accounts (more than 1 million accounts) over a 17-month period, often without regard to the credit quality of the customers. Plaintiffs have sufficiently pled that this omission is material, as a reasonable investor would treat the disclosure of the *possibility* of a problem differently from disclosure of an *existing* problem.[54]

Defendants also argue that Plaintiffs have failed to adequately allege that the repricing was a notable "trend." The Court disagrees. Plaintiffs provide the Court with factual evidence of a

---

[52] 2d Am. Compl. ¶ 54.

[53] The FDIC's February 2008 report stated that the increased finance charges contributed to the acceleration of charge-offs and delinquencies in late 2008 and early 2009. Sec. Am. Compl. ¶ 57.

[54] Berson v. Applied Signal Tech., Inc. 527 F.3d 982, 987 (9th Cir. 2008).

notable trend by alleging that interest rates were raised on 68% of accounts, even on clients with reliable payment histories, and that those rates were raised as high as 37%. A significant increase in interest rates affecting more than two-thirds of all clients is certainly a notable trend, and Defendants have not argued in the motion to dismiss that Advanta's management was unaware of the repricing practices.

As to whether the trend was reasonably likely to have a material effect on the company's financial condition, Advanta itself has acknowledged in its Registration Statements that changes in the terms of business card accounts may "cause account attrition or changes in customer behavior, such as credit card use, payment patterns, and rates of delinquencies and charge-offs . . . ."[55] Plaintiffs allege that there was an actual rise in charge-offs in the wake of repricing, which was apparent to the FDIC when it examined Advanta's charge-off data. The FDIC found that the repricing of accounts resulted in higher minimum payments for customers, making it harder for account holders to make minimum payments or cure delinquencies.[56]

For these reasons, the Court finds that Plaintiffs have adequately pled that Advanta's failure to disclose the repricing scheme, a trend allegedly known to management and likely to have a material effect on the Company's financial position, violated 17 C.F.R § 229.303(a)(3)(ii). The Court also finds that there is a "substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the reasonable shareholder's deliberations."[57] Accordingly, the Court finds that Plaintiffs have adequately pled that Advanta's failure to disclose the change in its pricing practices was a material omission from its registration statements and that

---

[55] March 2009 Amendment at 14; 2008 Amendment at 14.

[56] 2d Am. Comp. ¶ 60.

[57] TSC Indust., 426 U.S. at 439.

federal regulations (Item 303) required its disclosure.

## IV. Conclusion

For the foregoing reasons, the Court will deny Defendants' motions to dismiss. An appropriate order follows.